## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No.: 13-cv-00158-PAB-MJW

PATRICK HARTLEY,

      Plaintiff,

v.

TIME WARNER NY CABLE LLC,

      Defendant.

---

## DEFENDANT TIME WARNER NY CABLE LLC'S MOTION TO COMPEL AND FOR ATTORNEYS' FEES AND INCORPORATED MEMORANDUM OF LAW

---

### I. MOTION AND INTRODUCTION TO MEMORANDUM OF LAW

Pursuant to Rule 37 of the Fed. R. Civ. P., Defendant Time Warner NY Cable LLC ("TNY"), respectfully moves for an Order: (i) compelling immediate, complete and non-evasive responses to TNY's First Interrogatories ("Interrogatories"), (ii) compelling production of responsive documents, and (iii) awarding TNY its attorneys' fees incurred in preparing this motion. As discussed below, and pursuant to D.C. COLO. LCivR 7.1(A), TNY has conferred with Plaintiff about the deficiencies in his discovery responses prior to filing this Motion.

This motion is necessitated by Plaintiff's bad faith refusal to produce responsive documents and fully answer Interrogatories directly relevant to the merits of Plaintiff's claims. For example, after Plaintiff represented in open Court that he is proceeding on a *pro se* basis, TNY obtained documents and information from attorneys with whom Plaintiff consulted demonstrating his representation to the Court was false and, furthermore, that he is withholding documents and information that are responsive to TNY's Requests for Production ("Requests").[1]

---

[1] Plaintiff has since taken the outrageous position in subsequent filings [D.E. 55] that the documents TNY obtained from those attorneys are protected by the attorney-client privilege even though Plaintiff identified those attorneys in his discovery responses as witnesses and did not object to TNY's subpoenas; nor did Plaintiff's attorneys object to TNY's subpoenas on privilege grounds.

Additionally, Plaintiff refused to produce written communications with third parties regarding the merits of his claims, some of which Plaintiff has **admitted** are in his possession and others which Plaintiff has filed with the Court or posted on social networking sites.  Indeed, based on Plaintiff's previous filings with the Court and third-party discovery, Plaintiff has clearly withheld or failed to preserve responsive e-mails and other electronic communications including numerous posts from a Facebook website Plaintiff has created to publicize his lawsuit.  Plaintiff also refuses to verify his responses to TNY's Interrogatories, fully identify witnesses with whom he has communicated regarding this litigation, and identify the methods by which he communicated with those witnesses.  Simply put, Plaintiff is only producing what he prefers to produce, regardless of his legal obligations.

When TNY's counsel attempted to meet and confer with Plaintiff, he was evasive and non-responsive, ultimately refusing to speak by phone, refusing to respond substantively to detailed deficiency letters, and making outrageous, false allegations of spoliation, witness tampering, and obstruction of justice against TNY and its counsel.  Plaintiff is proceeding in bad faith, withholding responsive documents and information, and refusing to cooperate, thereby hampering TNY's efforts to prepare to depose Plaintiff.  Accordingly, TNY respectfully requests that the Court grant this Motion and order Plaintiff to pay TNY's attorneys' fees and costs.

## II.      RELEVANT FACTUAL BACKGROUND

### A.  The Discovery Requests at Issue in This Motion.

On January 23, 2013, Plaintiff filed this action, purporting to assert claims under the Family and Medical Leave Act ("FMLA"), the Americans with Disabilities Act ("ADA"), the Fair Labor Standards Act ("FLSA") and the Colorado Anti-Discrimination Act ("CADA"). [D.E. No. 1.]  Plaintiff seeks damages for, among other things, lost wages, emotional distress, and pain and suffering.  [*Id.*]  On March 4, 2013, TNY served Plaintiff with Interrogatories and

Requests for Production.  (Declaration of Nathan D. Chapman ("Chapman Dec.") ¶ 3 & Exs. 1 &

2.)[2]  In relevant part, TNY sought documents and information related to Plaintiff's claims, his

damages, and his communications with third parties regarding the facts of this case.

The following Requests and Interrogatories are at issue in this motion:

- **Request No. 4** – required Plaintiff to produce all documents referring or relating to any relief or damages Plaintiff seeks in this action.

- **Request No. 5** – required Plaintiff to produce all documents reflecting his earnings or receipt of income of any kind from any source from January 1, 2007 to the present.

- **Request No. 9** – required Plaintiff to produce all documents reflecting communications between Plaintiff and any other person regarding the allegations in the Complaint or the subject matter of this litigation.

- **Request No. 18** – required Plaintiff to produce all sworn statements and any other documents sent to, received from, or otherwise exchanged with the individuals referenced in paragraph 18 of his Complaint who are alleged to have provided "sworn statements."

- **Request No. 22** – required Plaintiff to produce all documents he created, maintained, drafted, wrote, or contributed to related to his claims, allegations, or alleged damages.

- **Interrogatory No. 3** – required Plaintiff to identify all persons known or believed to have knowledge or information relevant to his claims or damages and provide a detailed description of that knowledge.

- **Interrogatory No. 4** – required Plaintiff to identify all of his employers from January 1, 2000 to the present and state his dates of employment, positions held, supervisors, compensation, and reasons for leaving.

- **Interrogatory No. 5** – required Plaintiff to identify all sources of income from January 1, 2007 through the present.

- **Interrogatory No. 6** – required Plaintiff to identify all persons with whom he communicated regarding his allegations in this litigation and to describe the substance of each such communication.

  **Interrogatory No. 7** – required Plaintiff to identify all personal e-mail addresses, social networking sites, and/or personal blogs he used maintained, accessed, consulted or posted upon from January 1, 2007 through the present.

## B.  Plaintiff's Discovery Responses are Deficient.

Plaintiff's responses to TNY's initial discovery set were due on April 8, 2013.  Plaintiff

did not respond, object, or seek an extension by that deadline.  (*Id.* ¶ 4.)  On April 10, 2013,

---

[2] Full and complete copies of TNY's discovery requests to Plaintiff are attached as Exhibits 1 & 2 to Chapman Dec.

TNY informed Plaintiff of his failure to timely respond.  (*Id*. ¶ 5 & Ex. 3.)  Plaintiff responded the next day stating that he would provide his responses by the "morning of Monday April 15." (*Id*. ¶ 5 & Ex. 4.)  Plaintiff failed to do so.

Instead, on April 15[th,] Plaintiff filed a Motion and Request for Emergency Hearing re: Spoliation of Evidence ("Spoliation Motion").  The Spoliation Motion contained several text messages between Plaintiff and Christopher McKitrick, a former TNY employee, as well as a sworn statement from Plaintiff indicating that he and Mr. McKitrick would be exchanging e-mails on Facebook.  [D.E. 33 at 12-15.]  Plaintiff has never produced the text messages attached to, or sworn statements referenced in, his Spoliation Motion.

On April 16, 2013, TNY's counsel sent Plaintiff a letter requesting to meet and confer to discuss Plaintiff's failure to respond to the outstanding discovery.  (Chapman Dec. ¶ 6 & Ex. 5.) In that same letter, TNY's counsel reminded Plaintiff of his obligation to preserve relevant electronically stored information.  (*Id.*)

On April 17, 2013, Plaintiff finally e-mailed discovery responses.  (*Id*. ¶ 7 & Exs. 6 & 7.) Plaintiff's responses were woefully inadequate as he asserted various boilerplate objections in his responses without any explanation of the bases for those objections and failed to state whether responsive documents would be produced or whether any documents were being withheld based on his objections.  (*Id.*)  That same day, TNY's counsel participated in a telephone conference with Plaintiff regarding Plaintiff's discovery failures.  (*Id*. ¶ 8.)  During the call, Plaintiff confirmed that he had communications with other individuals regarding this litigation on his computer and cellular phone.  (*Id*.)  TNY's counsel confirmed their conversation in writing the same day and offered to provide Plaintiff with contact information for a vendor who could preserve the evidence contained on his computer and phone.  (*Id*. ¶ 8 & Ex. 8.)  Plaintiff never responded.  (*Id*. ¶ 8.)

On April 22, 2013, TNY's counsel received a thumb drive from Plaintiff containing various documents. (*Id.* ¶ 9.) The drive contained just a few e-mails, most of which are unrelated to Plaintiff's claims, and just one text message between Plaintiff and Mr. McKitrick. (*Id.*) Plaintiff did not produce any of the screen shots, text messages, affidavits, or Facebook communications referenced in his Spoliation Motion or his previous Court filings. (*Id.*) Similarly, Plaintiff did not produce any documents reflecting communications between him and Mr. McKitrick or Katie Young, another former TNY employee with whom Plaintiff has communicated and obtained a sworn statement from. (*Id.*)

On April 26, 2013, TNY sent Plaintiff a 7-page letter detailing the deficiencies in his discovery responses and requesting that he supplement his discovery by May 6, 2013. (*Id.* ¶ 10 & Ex. 9.) Plaintiff failed to do so.[3] (*Id.* ¶ 11.) In e-mails to Plaintiff on May 6, 7, and 9, 2013, TNY again requested that the parties meet and confer, including a request that Plaintiff participate in a telephone conference. (*Id.* ¶ 11 & Ex. 10.) Plaintiff refused to confer by phone, supplement his production, or provide a substantive response to TNY's counsel's deficiency letter. (*Id.* ¶ 13 & Ex. 12.)

On May 7, 2013, TNY received responses to its third-party subpoenas to Collin Earl, an attorney Plaintiff identified in his Interrogatory responses as a fact witness, and McKinney & Associates ("McKinney"), Mr. Earl's law firm, containing e-mails from Plaintiff's Gmail account regarding his claims in this litigation. (*Id.* ¶ 14 & Ex. 13.) Mr. Earl's and McKinney's production also contained e-mails and invoices related to Plaintiff's service of process on behalf of McKinney's clients, documents which reflect income earned by Plaintiff outside of his employment with TNY. (*Id.* ¶ 15 & Ex. 14.) Plaintiff has not produced any of these responsive

---

[3] Plaintiff's only response to TNY's April 26 letter was to send an e-mail to TNY's counsel containing "cut-and-pasted" text from various e-mail messages between Plaintiff and various recipients. Cutting and pasting text in this manner prevents TNY from seeing any metadata or determining if Plaintiff produced the entirety of the emails at issue. (*Id.* ¶ 12 & Ex. 11.)

documents.

On May 21, 2013, Plaintiff created a Facebook page entitled "Patrick Hartley – From Victim to Advocate." This page contains numerous posts regarding this litigation and purports to offer legal advice to viewers regarding, among other things, the FMLA and the ADA.  (*Id.* ¶ 16.) None of those responsive posts have been produced.  (*Id.* ¶ 16 & Ex. 15.)

On June 3, 2013, TNY received responses to third-party subpoenas to Crystal Smith, a paralegal at the law firm of Dennis Hartley, P.C., who Plaintiff identified as a fact witness.  (*Id.* ¶ 17.)  Ms. Smith's document production contained several additional e-mails regarding this litigation.  (*Id.* ¶ 17 & Ex. 16.)  Plaintiff has never produced these responsive documents.

On June 10, 2013, in response to TNY's Motion to Dismiss Plaintiff's CADA and ADA claims, Plaintiff submitted a copy of a Dismissal and Notice of Rights he purportedly received from the EEOC, another document Plaintiff has never produced in discovery.  [D.E. 49, Ex. A.]

On June 14, 2013, TNY's counsel made a final attempt to confer with Plaintiff regarding his discovery failures.  (*Id.* ¶ 19 & Ex. 17.)  Plaintiff responded that he would produce additional documents on June 25, 2013, but has failed to do so.  (*Id.* ¶ 20 & Ex. 18.)

In addition to the foregoing deficiencies, Plaintiff has not produced any documents to support his damages claim (currently in excess of $1.8 million) and he has continued to refuse to state whether he is withholding any additional documents based on his objections or otherwise. The documents Plaintiff has failed to produce, and potentially many more that he has withheld or failed to preserve, are directly responsive to TNY's Requests No. 4, 5, 9, 18, 22.

**C.  Plaintiff's Untimely and Unverified Interrogatory Responses Are Also Deficient.**

Plaintiff's responses to TNY's Interrogatories asserted boilerplate general and specific objections with no explanation of the bases for the objections.  (*Id.* ¶ 7 & Ex. 6.)  Further, Plaintiff's "substantive" responses have myriad shortcomings including, for example, Plaintiff's

response to Interrogatory No. 7, which identified only his TNY e-mail address. (*Id.*) Plaintiff failed to identify his Gmail address, personal Facebook page, or the Facebook page he created to publicize this litigation, despite being asked to identify all personal e-mail addresses, social networking sites, and/or personal blogs. (*Id.*)

Plaintiff also failed to provide contact information for the individuals identified in his responses to Interrogatories No. 3, 4, and 6 who are not current employees of TNY despite being asked to provide "present or last known residence or business address and residence and business telephone numbers, including area code." (*Id.* ¶ 7 & Ex. 6.) Thus, in response to Interrogatory No. 6, Plaintiff listed eleven individuals (without contact information) and did not identify the substance of his communications with five of those individuals. (*Id.*) Similarly, in response to Interrogatory No. 5, Plaintiff failed to fully identify all of his sources of income from January 1, 2007 through the present and did not identify any of the individuals and entities from whom he has earned income as a private process server. (*Id.*) When TNY requested that Plaintiff cure these deficiencies, Plaintiff refused. (*Id.* ¶¶ 10-13, 19-20.)

### III.    ARGUMENT AND CITATION OF AUTHORITY.

#### A.   The Applicable Legal Standard.

"[P]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). A matter need not be admissible at trial in order to be discoverable, but instead is discoverable if "reasonably calculated to lead to the discovery of admissible evidence." *Id.* Where a party refuses to respond to discovery or provides incomplete or evasive responses, the Court may compel the party resisting discovery to respond. *See* Fed. R. Civ. P. 37(a); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 954 (10th Cir. 2002) (where party unfairly avoids discovery, recourse is motion to compel under Rule 37). These rules apply with equal force to *pro se* litigants. *See*, *e.g.*, *Klein-*

*Becker USA, LLC v. Englert*, 711 F.3d 1153, 1159-60 (10th Cir. 2013) (affirming default judgment against *pro se* defendant who failed to respond to discovery and comply with court orders); *Witherspoon v. Roadway Exp., Inc.*, 142 F.R.D. 492, 493 (D. Kan. 1992) (dismissing claims of *pro se* plaintiff who failed to respond to discovery and comply with order).

The moving party bears the initial burden of proof on a motion to compel. *Echostar Comm. Corp. v. News Corp.*, 180 F.R.D. 391, 394 (D. Colo. 1998). Once the moving party has met its minimal threshold to establish that the discovery sought is relevant under Rule 26(b), "the party resisting the discovery has the burden to establish the lack of relevancy by demonstrating that the requested discovery (1) does not come within the scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Rezaq v. Nalley*, 264 F.R.D. 653, 656 (D. Colo. 2010). This burden "cannot be satisfied by asserting a boilerplate objection to discovery without providing concrete substantiation." *E.E.O.C. v. Outback Steakhouse of FL, Inc.*, 251 F.R.D. 603, 608 (D. Colo. 2008). Furthermore, the assertion of such objections constitutes waiver of the resisting party's right to object. *Cartel Asset Mgmt. v. Ocwen Fin. Corp.*, No. 01-CV-01644-REB-CBS, 2010 WL 502721, at *8 (D. Colo. Feb. 8, 2010) (non-specific, boilerplate objections to discovery requests waived); *see also* Fed. R. Civ. P. 33(b)(4) & 34(b)(2)(C).

### B. Plaintiff Has Waived Any Objections to TNY's Discovery Requests By Failing to Timely Respond to The Requests.

A party has 30 days after service of discovery requests to answer and object. Fed. R. Civ. P. 33(b)(2) & 34(b)(2)(A). If the responding party fails to do so, any untimely objections are waived even for pro se plaintiffs. Fed. R. Civ. P. 33(b)(4); *Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D. Colo. 2000) (objections to discovery requests waived when not timely asserted);*Duhall v. Lennar Family of Builders*, No. 07–cv–00040, 2008 WL 4457874, at *5 (D.

8

Colo. Oct. 1, 2008) (*pro se* plaintiff's untimely objections waived as matter of law).

Plaintiff's responses and objections to TNY's Interrogatories and Requests were due on April 8, 2013, but Plaintiff did not respond or object until April 17, nine days after his deadline. To the extent Plaintiff is withholding any documents or information based on his objections, those objections are waived and Plaintiff must supplement his responses without objection. *Id.*

### C. TNY's Requests for Production Seek Documents and Information That Are Directly Relevant to Plaintiff's Claims and TNY's Defenses.

#### 1. *Documents Regarding Plaintiff's Damages and Earnings Information Are Relevant and Discoverable.*

It is indisputable that the documents sought in TNY's Requests No. 4 and 5, reflecting Plaintiff's damages, income, and earnings, are relevant and discoverable. These documents are necessary to allow TNY to analyze Plaintiff's damages claims, determine whether Plaintiff has failed to mitigate his damages, and determine whether he has received additional income that may be relevant to his claims or Defendant's affirmative defenses. *See, e.g.*, *E.E.O.C. v. Dillon Cos.,* No. 09–cv–02237, 2010 WL 2612678, at *1 (D. Colo. June 29, 2010) (collecting cases and ordering production of plaintiff's tax returns); *Johnson v. Kraft Foods North Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006) (recognizing plaintiff's earnings and income are relevant to damages); *Garrett v. Sprint PCS*, No. 00–2583, 2002 WL 181364, at * 3 (D. Kan. Jan. 31, 2002) (ordering discovery of plaintiff's past employment records in lost wages case).

Plaintiff, however, refused to produce documents responsive to these Requests. Based on documents TNY has obtained from McKinney, it is clear that Plaintiff is withholding documents and information reflecting income he earned as a private process server. (Chapman Dec. ¶ 15 & Ex. 14.) These documents, along with all other documents in Plaintiff's possession that reflect his earnings and income information from January 1, 2007 through the present, or upon which he intends to rely to support his damages claim, are responsive and must be produced.

9

2.   *The Documents Sought in Requests No. 9, 18, and 22, Reflecting
Communications, Statements, and Other Information Regarding Plaintiff's
Claims in This Litigation, Are Relevant and Discoverable.*

In employment discrimination cases where, as here, the plaintiff seeks damages for

emotional distress, documents, information, and social networking content that are related to the

plaintiff's emotions, feelings or mental state are relevant and discoverable.  *Moore v. Miller*, No.

10-cv-651, 2013 WL 2456114, at *2 (D. Colo. June 6, 2013) (compelling production of

employment discrimination plaintiff's Facebook activity "because [plaintiff's] writing may be

relevant to his claims of discrimination as well as to his claims of emotional distress"); *see also*

*Mailhoit v. Home Depot U.S.A., Inc.* 285 F.R.D. 566, 572 (C.D. Ca. 2012) (ordering plaintiff to

produce communications which in any way refer to plaintiff's employment with defendant or

pending lawsuit); *EEOC v. Simply Storage Mgmt., LLC*, 270 F.R.D. 430, 436 (S.D. Ind. 2010)

(ordering production of social networking content); *Thompson v. Autoliv Asp, Inc.*, No. 09-CV-

01375-PMP-VCF, 2012 WL 2342928, at *5 (D. Nev. June 20, 2012) (same); *Held v. Ferrellgas,

Inc.*, No. 10–2393, 2011 WL 3896513, at *1 (D. Kan. Aug. 31, 2011) (same); *Mackelprang v.

Fid. Natl. Title Agency of Nev., Inc.*, No. 2:06-cv-00788, 2007 WL 119149, at *8 (D. Nev. Jan. 9,

2007) (ordering production of discrimination plaintiff's social networking e-mails regarding

subject matter of litigation).

Plaintiff's filings with the Court, his social media activity, and third-party discovery

establish that Plaintiff is withholding discoverable documents that are responsive to Requests 9,

18, and 22.  First, Plaintiff has obtained affidavits from Mr. McKitrick and Ms. Young, both of

whom are former employees of TNY.  [D.E. Nos. 3, 4.]  Plaintiff, however, failed to produce

these affidavits, drafts of the affidavits, or any other written communications between Plaintiff

and these former employees regarding their affidavits or this case (including, for example, the

communications with Mr. McKitrick that Plaintiff referenced in sworn Court filings).  [D.E. 33.]

10

Second, TNY obtained e-mail correspondence from non-parties Crystal Smith and Collin Earl that they exchanged with Plaintiff regarding the subject matter of this lawsuit, e-mails that Plaintiff did not produce.  Included among this correspondence was an e-mail from Plaintiff to Mr. Earl requesting that he review a document that appears to be Plaintiff's Complaint.[4]  (*See* Chapman Dec. ¶ 14 & Ex. 13.)  Plaintiff, therefore, is either withholding these e-mails or has failed to preserve them for this litigation.  Furthermore, because Plaintiff has refused to provide substantive responses to TNY's conferral letters, TNY cannot determine whether there are other communications between Plaintiff and third parties that he may have withheld or destroyed.

Third, Plaintiff has established a Facebook page dedicated to publicizing this litigation, in which he states that he is "[f]ighting for the legal rights of [his] fellow Colorado workers." (Chapman Dec. ¶ 16 & Ex. 15 (emphasis in original).  Plaintiff's Facebook page purports to offer legal advice regarding various FMLA and ADA issues, such as the statute of limitations on FMLA claims.  (*Id.*)  Plaintiff also has used this forum to make generalized accusations of unethical behavior against TNY.  (*Id*.)  Plaintiff has not produced any of these posts or any related communications, all of which are clearly responsive to Requests 9, 18, and 22, as they may provide insight into Plaintiff's mental state, contain admissions by Plaintiff, or identify witnesses.

Finally, on June 10, 2013, Plaintiff filed a copy of a Dismissal and Notice of Rights that he purports to have received from the EEOC.  [D.E. 49, Ex. A.]  Plaintiff claims this document is relevant to his purported ADA claim, yet he has never produced it.

Based on the foregoing, Plaintiff has withheld or failed to preserve documents from numerous sources that are directly responsive to TNY's Requests.  That Plaintiff has included some of these documents in Court filings does not absolve him of his obligation to produce them

---

[4] Plaintiff subsequently represented to the Court that he was proceeding *pro se* and that he was not being assisted by an attorney. [D.E. 44 (Transcript) at 25-29.]

in discovery.  *See Pham*, 193 F.R.D. at 663 (references to information disclosed in litigation held insufficient).  Accordingly, TNY requests that the Court compel Plaintiff to: (1) identify all responsive documents (including electronically stored information) in his possession or control; (2) produce any additional responsive documents; and (3) confirm in writing whether any responsive documents have been destroyed or are being withheld based on Plaintiff's untimely objections.  *See Cook v. Rockwell Intern. Corp.*, 161 F.R.D. 103, 104 (D. Colo. 1995) (requiring plaintiffs to produce documents and to log withheld documents).

    **D. Plaintiff's Responses to TNY's Interrogatories Are Incomplete and Must Be Supplemented.**

       1. *Plaintiff Must Supplement His Responses to Interrogatories No. 3 and 6 to Provide Contact Information for Each Witness and Describe Their Knowledge.*

    There is no dispute that the information sought by Interrogatories No. 3 (all persons known to Plaintiff to have information about his claims or damages) and 6 (all persons with whom Plaintiff communicated regarding his allegations in the Complaint) is relevant and discoverable.  *See Duhall*, 2008 WL 4457874, at *2 (compelling *pro se* discrimination plaintiff to provide complete contact information for witnesses and describe nature of each witness's knowledge); *Grant v. Target Corporation*, 281 F.RD. 299, 308-09 (S.D. Ohio 2012) (same).

    In response to Interrogatory No. 3, Plaintiff provided the names of 44 individuals, but failed to provide contact information for each identified individual or a "detailed description" of the relevant information he believes each of the identified individuals possesses.  (*Id.* Ex. 6 at 3-8.)  Similarly, in response to Interrogatory No. 6, Plaintiff listed 11 individuals, but again failed to provide any contact information or identify the substance of his communications with them. (*Id.* Ex. 6 at 10.)   Plaintiff should be ordered to supplement his responses to these Interrogatories. *Duhall*, 2008 WL 4457874, at *2.

2. *Plaintiff Must Supplement His Responses to Interrogatories No. 4 and 5 to Fully Identify His Prior Employers and His Sources of Income.*

Plaintiff has placed his past employment and other sources of income at issue in this litigation by seeking damages in the form of lost wages. [D.E. 15 ¶ 60]; *Dillon Cos.*, 2010 WL 2612678, at *1; *Garrett*, 2002 WL 181364, at * 3 (discrimination plaintiff seeking lost wages puts past employment experience at issue); *Grant*, 281 F.R.D. at 311 (holding other sources of income relevant "to [plaintiff's] lost wage claim and [to be] discoverable information."); *Schmidt v. Metro. Util. Dist.*, No. 06CV12, 2007 WL 2156270, at *4 (D. Neb. July 26, 2007) (ordering discrimination plaintiff to identify other sources of income).

In Interrogatories No. 4 and 5, TNY asked Plaintiff to identify his prior employers and all sources of income. (Chapman Dec. ¶ 3 & Ex. 1.) Plaintiff's response to Interrogatory No. 4 directed TNY to his response to Interrogatory No. 5 for a "list of past employers and reasons for termination." (Chapman Dec. Ex. 6 at 8.) In his response to Interrogatory No. 5, however, Plaintiff merely provided a list of past and present employers (as well as Plaintiff's base salary level). Plaintiff did not identify the business address or telephone number of each identified entity, his direct supervisors, or the dates of his employment. (*Id.* Ex. 6 at 8-9.) In addition, while Plaintiff indicated that he earned income as a "Private Process Server (Contract Labor/$55)," he did not identify the individuals or entities to whom he has rendered such services. (*Id.* Ex. 6 at 8.) Without appropriate contact information for the individuals and entities listed in response to Interrogatories 4 and 5, TNY cannot issue appropriate subpoenas or fully evaluate Plaintiff's damages claims. Accordingly, Plaintiff should be ordered to supplement his response to TNY's Interrogatories 4 and 5.

3. *Plaintiff Should be Compelled to Supplement His Response to Interrogatory No. 7 and List All of His Personal E-mail Addresses and Social Networking Sites.*

As set forth above, Plaintiff's e-mails and social networking activity are relevant and

discoverable because it may provide insight into Plaintiff's mental state, contain admissions by Plaintiff that are relevant to TNY's defenses, or identify additional witnesses. *See Moore*, 2013 WL 2456114, at \*2; *Held*, 2011 WL 3896513, at \*1; *see also Reid v. Ingerman Smith LLP*, No. CV-2-12-0307, 2012 WL 6720752, at \*2 (E.D.N.Y. Dec. 27, 2012) (social networking information relevant to plaintiff's emotional distress claim and identification of potential witnesses); *Sourdiff v. Texas Roadhouse Holdings, LLC*, No. 10-CV-0408, 2011 WL 7560647, at \*1 (N.D.N.Y. 2011) (social networking information relevant to "plaintiff's emotional or mental state . . . employment, this litigation, and the injuries and damages claimed."); *Glazer v. Fireman's Fund Ins. Co.*, No. 11-CV-4374, 2012 WL 1197167, at \*1-3 (S.D.N.Y. 2012) (social networking information relevant to plaintiff's "work performance, relationships with co-workers . . . [and] emotional state . . ."). This is particularly true where, as here, Plaintiff has regularly engaged in email correspondence and social media activity directly related to his claims.

### D. The Court Should Compel Plaintiff to Verify His Interrogatory Responses.

To satisfy Rule 33(b)(3), a party must submit a statement, under oath, swearing that the answers given in response to the Interrogatories are true and correct. Fed. R. Civ. P. 33(b)(3); *Shell v. Henderson*, No. 09-CV-00309-MSK-KMT, 2013 WL 1302141, at \*5 (D. Colo. Mar. 14, 2013) (faulting *pro se* litigant for failing to comply with Rule 33(b)(3)). Despite repeated requests that Plaintiff verify his Interrogatories, Plaintiff has refused to do so. Accordingly, Plaintiff should be required to provide the required signed oath to his Interrogatory responses.

### E. The Court Should Award TNY Its Attorneys' Fees.

Plaintiff's continuing discovery misconduct is unjustified and there are no circumstances that make an award of TNY's attorneys' fees unjust. Fed. R. Civ. P. 37(a)(5)(A)(ii-iii). Plaintiff has unreasonably refused to provide basic information regarding the bases of his claims and alleged damages or to engage in meaningful conferrals with TNY's counsel. Plaintiff's bad faith

conduct has necessitated this motion, and the Court should award TNY its reasonable attorneys' fees and costs associated with this motion. *Duhall*, 2008 WL 4457874, at *5 (awarding attorneys' fees against *pro se* plaintiff).

## IV.   CONCLUSION

For the reasons set forth above, TNY requests that the Court enter an order: (i) compelling complete, sworn responses to TNY's Interrogatories; (ii) compelling production of all responsive documents; and (iii) awarding attorneys' fees and costs associated with preparing, filing and prosecuting this motion.

Respectfully submitted, this 3rd day of July, 2013.

_s/ Nathan D. Chapman_
Nathan D. Chapman
Paul G. Sherman
WARGO & FRENCH LLP
999 Peachtree Street, NE, 26th Floor
Atlanta, Georgia 30309
Tel: (404) 853-1500
Fax: (404) 853-1501
Email: nchapman@wargofrench.com
        psherman@wargofrench.com

Josh A. Marks
BERG HILL GREENLEAF & RUSCITTI LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600
Fax: (303) 402-1601
Email: jam@bhgrlaw.com

*Attorneys for Defendant Time Warner NY Cable LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on July 3, 2013, a true and correct copy of this DEFENDANT TIME

WARNER NY CABLE LLC'S MOTION TO COMPEL AND FOR ATTORNEYS' FEES AND

INCORPORATED MEMORANDUM OF LAW was e-served upon the following via

ECF/PACER, and United States mail:

> Patrick G. Hartley
> 3930 Hickory Hill Drive
> Colorado Springs, CO 80906

I further certify that copies of all unreported decisions cited in the foregoing were

provided to Plaintiff by United States mail.


   *s/ Nathan D. Chapman*
   Nathan D. Chapman