**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 13-cv-00158-PAB-MJW

PATRICK HARTLEY,

    Plaintiff,

v.

TIME WARNER NY CABLE LLC,

    Defendant.

---

**DEFENDANT TIME WARNER NY CABLE LLC'S**
**REPLY IN SUPPORT OF MOTION TO COMPEL AND FOR ATTORNEYS' FEES**

---

## I. INTRODUCTION

Plaintiff Patrick G. Hartley has willfully refused to comply with his discovery obligations throughout this litigation. His outrageous claims to the contrary are flatly refuted by his September 3, 2013 deposition testimony, which **confirms** that Plaintiff was, and is, purposefully and in bad faith withholding responsive documents and information. For example, Plaintiff disclosed for the first time in his deposition the existence of three new e-mail accounts, two of which he created expressly for use in pursuing claims against TNY. Plaintiff has not produced a single e-mail sent from or to those accounts. Further, Plaintiff's text messages, a smattering of which Plaintiff's counsel produced only **after** TNY filed the instant Motion, reveal that several of Plaintiff's fact witnesses sent him e-mails regarding this case, only a few of which have been produced. Plaintiff's testimony also confirms that he is withholding other relevant, discoverable information:

- additional e-mails and Facebook communications regarding this case between Plaintiff and third parties;
- books and records from Plaintiff's side business as a process server; and

- an audio recording of a meeting between Plaintiff and two of TNY's Human Resources representatives.

Plaintiff is withholding these documents in bad faith. Indeed, one of Plaintiff's sworn statements reveals that Plaintiff actively colluded with at least one witness, Christopher McKitrick, in an attempt to shield their communications from discovery. (Transcript of Deposition of Patrick Hartley ("Hartley Tr.") at 187:11-188:11 & Ex. 26.)[1] That is, Plaintiff confirmed in his deposition that he asked Mr. McKitrick to send him a Facebook message related to Plaintiff's claims in this litigation **based on Plaintiff's belief that that there was no way for TNY to discover their Facebook communications without a subpoena**. (*Id.*) Further, Plaintiff's counsel has not and, given Plaintiff's testimony, could not in good faith confirm that all responsive documents have been produced. In fact, Plaintiff's Response to TNY's Motion to Compel only states that Plaintiff is in the "process of further supplementing" his discovery. [D.E. 76 at 2.] Plaintiff, however, has not produced any additional documents since Friday August 30. Without Court intervention, Plaintiff will **never** fully comply with his obligations.

Plaintiff's arguments opposing the instant Motion are further belied by the fact that, rather than fully comply with his discovery obligations, Plaintiff and his counsel are now withholding numerous relevant documents under the guise of a sham privilege log that Plaintiff did not produce until **after the close of discovery in this case**. This "privilege log" disclosed for the first time the existence of additional documents that Plaintiff is improperly withholding and witnesses that Plaintiff has never identified.[2] Incredibly, Plaintiff claims that these documents, which were

---

[1] An authentic duplicate of the transcript of Plaintiff's deposition, along with relevant exhibits, is attached to the Declaration of Nathan D. Chapman ("Chapman Dec.") as composite Exhibit 1.

[2] Plaintiff's counsel also submitted a sham declaration in opposition to TNY's Motion to Compel that is comprised primarily of rank hearsay and improper legal argument. Plaintiff's counsel refused to withdraw this declaration, forcing TNY to file a Motion to Strike with this Reply.

created as early as January 22, 2013—one full year before Plaintiff filed this litigation—and which consist primarily of communications between Plaintiff and non-lawyer third parties, are protected from disclosure by the attorney-client privilege and work product doctrine.[3] Moreover, the few communications on the privilege log that actually do involve attorneys further demonstrate that Plaintiff has been surreptitiously consulting with attorneys throughout these proceedings. Indeed, Plaintiff's purported "*pro se*" status, like his "privilege log," is a sham designed to garner leniency from the Court where none is due.

Plaintiff's privilege claims must be rejected for four reasons. First, Plaintiff waived all objections based by failing to timely respond to TNY's discovery responses. Second, Plaintiff failed to assert privilege objections to any of TNY's requests for production or third-party subpoenas, two of which were issued to Collin Earl and Dennis Hartley, two of the attorneys listed on Plaintiff's "privilege log." Third, Plaintiff waived his objections by failing to timely provide a privilege log during the discovery period. Fourth, a number of the purportedly "privileged" documents Plaintiff identified in his log were already produced by third parties in response to TNY's subpoenas without objection from Plaintiff.

Plaintiff's work product designations are similarly made in bad faith. First, as a *pro se* Plaintiff at the time the disputed documents were created, Plaintiff cannot shield documents from discovery by invoking the work product doctrine. Second, even if a lawyer was involved with the communications listed on the privilege log, they are written communications with third parties regarding the facts of this case that could not, under any circumstances, be work product.

---

[3] An authentic duplicate of the privilege log TNY's counsel received from Plaintiff's counsel is attached to the Declaration of Nathan D. Chapman ("Chapman Dec.") as Exhibit 2.

Accordingly, the Court should compel Plaintiff to immediately produce the documents listed in his privilege log, along with all other responsive documents and information he is withholding.

Finally, with respect to Plaintiff's responses to TNY's Interrogatories, Plaintiff continues to refuse to provide *any* contact information for almost all of the now **55** witnesses he has identified. This includes, for example, Mr. McKitrick, a former TNY employee from whom Plaintiff submitted a declaration in this action, but who TNY has been unable to locate to notice his deposition. As Plaintiff admitted in his deposition, he is in regular contact with Mr. McKitrick and has been since Plaintiff responded to TNY's discovery requests. Thus, Plaintiff's deliberate misconduct has prejudiced TNY's ability to prepare its case and, importantly, cross examine Mr. McKitrick on the assertions in his declaration and his false accusations of spoliation against TNY. [*See* D.E. 33.] Plaintiff's refusal to provide even the most basic contact information for witnesses he identified is even more outrageous given that he admitted in his deposition that he has been in possession of most, if not all, of this information since he responded to TNY's Interrogatories on April 17, 2013. Further, it puts the lie to Plaintiff's claim in his opposition to the instant motion that he has been operating in good faith "at all times." [D.E. 76 at 5.]

Plaintiff deserves to be sanctioned his misconduct forced TNY to file this motion, impeded its efforts to fully prepare for Plaintiff's deposition, and wasted the parties' and this Court's resources. Plaintiff's and his counsel's subsequent improper issuance of a sham privilege log after the close of discovery further warrants the issuance of sanctions. Accordingly, the Court should compel Plaintiff to supplement his discovery responses, produce the documents and information he is withholding, and award TNY its attorneys' fees and costs incurred in bringing the instant Motion.

## II. ARGUMENT AND CITATION OF AUTHORITY

### A. Plaintiff's Deposition Testimony Proves that He is Improperly Withholding Documents That Should Have Been Produced During Discovery.

1. *E-Mails*.

In his September 3 deposition, Plaintiff disclosed for the first time the existence of three additional e-mail addresses he has used to communicate with third parties regarding this litigation: (Hartley Tr. at 174:21-177:3.) Plaintiff has yet to produce a single e-mail from those accounts despite testifying that he turned over all e-mails to and from those accounts to his counsel. (*Id.*) Ironically, Plaintiff, the proclaimed "*pro se*" litigant, testified that he created the hartley13cv158@gmail.com address specifically for attorney-client communications. Later, however, he admitted that he instructed a non-lawyer third party, Jacqueline Jackson, to e-mail him a statement at that e-mail address for use in this case. (Hartley Tr. at 275:10-276:3 & Ex. 34.) Similarly, Plaintiff testified that he exchanged unproduced e-mails through those accounts with numerous other non-lawyer third parties, **all** of whom Plaintiff has identified as witnesses. This includes what appear to be multiple e-mail exchanges with:

- Sergio Alcala (Hartley Tr. 252:10-256:15.)
- Lisa Thompson (Hartley Tr. 260:20-261:17.)
- Desiree Bethea (Hartley Tr. 264:17-265:8 & Ex. 31 (Ms. Bethea told Plaintiff she was sending him a "long" e-mail (bates stamp HARTLEY250).)
- Hazen Garcia (Hartley Tr. 269:9-20 (Plaintiff admits Mr. Garcia sent him a Facebook message, which is linked to his patrickghartley@gmail.com or his patrickghartley85@gmail.com address; *see also* Hartley Tr.176:12-177:2).)
- Dena Cannon (Hartley Tr. 283:18-285:18 & Ex. 34 (Plaintiff exchanged e-mails with Ms. Cannon containing draft statements for use in this litigation).)
- Suzanne Bolden (Hartley Tr. at 275:1-4 & Ex. 32 (Ms. Bolden asked for Plaintiff's e-mail to send him information related to this case).)
- Kevin Kuhn (Hartley Tr. at 271:7-9 (Plaintiff testified he turned over all e-mails and statements he received from Mr. Kuhn to his attorneys).)

- Chistopher McKitrick (Hartley Tr. at 183:20-22 (Plaintiff testified he has no reason to believe he has not exchanged e-mails with Mr. McKitrick).)

Plaintiff also confirmed that while *pro se*, he exchanged e-mails with several attorneys. While Plaintiff now claims these e-mails are privileged, he concurrently sent some of these same emails to non-attorney third parties. (Hartley Tr. at 246:17-252-9 & Ex. 27.) For example, Plaintiff's privilege log identifies a December 16, 2012 e-mail Plaintiff sent to two non-lawyers, Kurt Pichon and Crystal Smith, along with three attorneys, Collin Earl, Dennis Hartley, and James Davidson. (*Id.*; *see also* Hartley Tr. at 181:2-183:12; Chapman Dec., Ex. 2.) Despite the fact that such communications could not, under any circumstances, be privileged, Plaintiff has never produced them and has now improperly designated those communications as privileged. (*Id.*)

All of these documents are directly relevant to Plaintiff's claims and TNY's defenses and are responsive to Requests for Production Nos. 9, 18, and 22. [*See* D.E. 58 at 10 (collecting cases).] Accordingly, the Court should order Plaintiff to produce all responsive documents immediately.

    2. *Books and Records From Plaintiff's Side Business*.

Plaintiff admitted in his deposition that he pursued his side business of serving process while out on FMLA leave. (Hartley Tr. at 148:13-149:2; 290:17-291:7 & Ex. 42.) For example, while out on FMLA leave on April 25, 2011, Plaintiff served process at 12:10 p.m. (*Id.*; Declaration of Farid Jabbour ("Jabbour Dec.") ¶ 3.) Plaintiff also disclosed for the first time in his deposition additional attorneys on whose behalf he served process (Gordon Shane, Dennis Hartley, and Kruse & Lynch). (Hartley Tr. at 152:23-153:3.) Plaintiff's counsel, however, has refused to turn over the books and records of Plaintiff's process serving business, claiming in his sham declaration that this information is irrelevant to Plaintiff's FMLA claim. (Hartley Tr. at 152:24.); [D.E. 75 ¶ 28.]

Plaintiff's relevance argument is baseless. The books and records of Plaintiff's process serving business, all of which Plaintiff testified he has preserved, go to the heart of Plaintiff's

FMLA claim and his purported damages. (Hartley Tr. at 168:10-169:10.) First, they are relevant to show Plaintiff's income, which he has placed directly at issue in this case. *See, e.g.*, *Johnson v. Kraft Foods North Am., Inc.*, 236 F.R.D. 535, 539 (D. Kan. 2006) (recognizing plaintiff's earnings and income are relevant to damages). Second, TNY is entitled to inquire regarding other instances of Plaintiff's FMLA abuse during his employment with TNY to establish its after-acquired evidence defense. [*See* D.E. 18 at 9.]; (*See also* Jabbour Dec. ¶ 3.) Thus, these documents are directly relevant to Plaintiff's claims, TNY's defenses, and should have been produced months ago in response to TNY's Requests for Production Nos. 4 and 5.

        3. *Plaintiff's August 15 Recording.*

Plaintiff testified that he recorded a meeting with TNY's Human Resources representatives, Farid Jabbour and Linda Williams, which he has turned over to his attorneys. (Hartley Tr. at 25:15-26:1.) Plaintiff has not produced this recording. The Court should compel him to do so.

        **B. <u>Plaintiff Waived his Privilege Claims and His Privilege Log is a Sham.</u>**

On September 10, 2013, after the close of discovery, Plaintiff produced a privilege log identifying 91 documents that he claims are protected from disclosure under the attorney-client privilege and/or work product doctrine. (*See* Chapman Dec., Ex. 2.) **None** of the documents listed in the privilege log are communications between Plaintiff and his counsel, nor are any "work product" of Plaintiff's counsel. Rather, the documents are communications between Plaintiff and third parties, most of whom are non-lawyers. (*Id.*) The privilege log also identifies five witnesses who had not been previously disclosed to TNY (*Id.*)

Plaintiff's attempt to avoid producing these documents with a sham privilege log must be rejected. First, as discussed in TNY's principal brief, it is black-letter law that Plaintiff waived all objections by failing to timely respond to discovery. [*See* D.E. 58 at 8-9.] Second, even if

Plaintiff's discovery responses were timely, Plaintiff never asserted privilege-based objections in his responses **or in response to TNY's subpoenas to several of the individuals (and their law firms) listed on Plaintiff's privilege log**. [D.E. 58-1, Ex. 7.] Thus, Plaintiff's attorney-client privilege and work product objections are waived as a matter of law. *See United States v. Ary*, 518 F.3d 775, 784 (10th Cir. 2008) (collecting cases discussing waiver of attorney-client privilege and work product protection by failing to timely assert privilege). Third, Plaintiff waived any right to assert the attorney-client privilege or work product doctrine when he failed to timely provide a privilege log. *See In re Gibco, Inc.*, 185 F.R.D. 296, 302 (D. Colo. 1997) (failure to timely provide privilege log would result in waiver of work product protection); *Lugosch v. Congel*, No. 1:00-CV0784, 2006 WL 931687, at *16 (N.D.N.Y. Mar. 7, 2006) (noting "[f]ailure to timely provide the privilege log or objection [to a document request] constitutes a waiver").

Even assuming that Plaintiff had not waived all privilege-based objections, as a *pro se* non-attorney Plaintiff **cannot** withhold responsive documents under the work product doctrine. *See Vinton v. Adam Aircraft Indus., Inc.*, 232 F.R.D. 650, 663 (D. Colo. 2005) (holding plaintiff's communications with third parties while proceeding *pro se* not work product and awarding attorneys' fees and costs against plaintiff for claiming work product); *Simmons v. Adams*, No. 1:10-cv-1259, 2013 WL 2995274, at *2 (E.D. Cal. June 14, 2013) ("pro se plaintiff work product" does not exist); *Svete v. Wunderlich*, No. 2:07-CV-156, 2009 WL 1687952, at *1 (S.D. Ohio June 11, 2009) (rejecting *pro se* plaintiff's work product doctrine claim). Here, all of the documents listed on Plaintiff's privilege log were created prior to his counsel's appearance in this case. In fact, **all** of the documents are communications between Plaintiff and third parties that Plaintiff has never before identified as privileged. Thus, Plaintiff's privilege claims with respect to these documents are baseless, and the Court should compel Plaintiff to produce them.

### C. **Plaintiff is Withholding Responsive Witness Contact Information.**

Although Plaintiff identified over 55 individuals as fact witnesses or persons with whom he communicated regarding this litigation, his untimely Interrogatory responses did not include contact information for these individuals and he repeatedly refused to supplement his responses to provide this information during the discovery process. (Hartley Tr. at 46:10-48:4 & Exs. 6-7 (answers to Interrogatories 3 and 6).) Plaintiff testified, however, that since April 2013 he has been in possession of this contact information, including for Mr. McKitrick and Ms. Young, both of whom who have submitted declarations on Plaintiff's behalf. (*See* Hartley Tr. at 191:13-16 (Mr. McKitrick); 195:25-196:11 (Ms. Young).) Plaintiff also testified that there was **no reason he could not have provided that contact information to TNY in April**, further showing that he intentionally withheld this information. (*Id.*)[4] Plaintiff also testified that he has contact information for the following individuals: Meghann Pittman, Shricice Washington, Dena Cannon, Sergio Alcala, Kevin Kuhn, Julie Van Tuil, Stephanie Eddins, Lisa Thompson, and Steve McCarthy (Hartley Tr. 222:19-224:13;240:19-241:8.) Plaintiff continues to refuse to disclose this information.

Plaintiff's bad faith is clear. Even after TNY's counsel repeatedly attempted to confer with Plaintiff regarding these issues, filed the instant motion, and took Plaintiff's deposition, Plaintiff refused to provide even the most basic contact information regarding these witnesses.

### D. **Sanctions Against Plaintiff Are Warranted Based on His Bad Faith Conduct.**

Plaintiff's claim of *pro se* status does not excuse his misconduct. Even *pro se* plaintiffs must participate in discovery in good faith. *See Vinton*, 232 F.R.D. at 663 (awarding costs and fees against *pro se* plaintiff after finding his positions not "substantially justified"); *see also McNeil v.*

---

[4] Plaintiff's actions have prejudiced TNY because TNY lacks current contact information for Mr. McKitrick, resulting in TNY making several unsuccessful attempts to locate Mr. McKitrick to subpoena his deposition. (Chapman Dec. ¶ 5.) Accordingly, Plaintiff must be compelled to provide Mr. McKitrick's contact information, along with all other withheld contact information.

*U.S.*, 508 U.S. 106, 113 (1993); *Watkis v. Payless Show Source. Inc.*, 174 F.R.D. 113, 118 (M.D. Fla. 1997). Where, as here, *pro se* plaintiffs abuse the discovery process, the Court has discretion to impose sanctions for discovery misconduct. *See Vinton*, 232 F.R.D. at 663; *Deuty v. Hewlett-Packard*, 2011 WL 834197 at * 6-7 (D. Colo. Mar. 4, 2011) (sanctioning *pro se* plaintiff).

It is undisputed that Plaintiff purposefully refused to produce documents, withheld responsive information, and colluded with Mr. McKitrick in an attempt to shield their communications from discovery. Even after TNY filed instant Motion and Plaintiff obtained counsel, he has continued to withhold responsive documents and information, exacerbating his misconduct by submitting an untimely, sham privilege log. Plaintiff's misconduct is deliberate and in bad faith, justifying an award of TNY's attorneys' fees and costs associated with this Motion.

## IV. CONCLUSION

For the reasons set forth above, TNY respectfully requests that the Court enter an order: (i) compelling immediate and complete responses to TNY's Interrogatories and Requests for Production of Documents, including all documents identified in this Motion and listed on Plaintiff's purported "privilege log"; and (ii) awarding TNY its attorneys' fees and costs associated with preparing, filing and prosecuting this Motion.

Respectfully submitted, this 13th day of September, 2013.

| s/ *Nathan D. Chapman* | |
|---|---|
| Nathan D. Chapman | Josh A. Marks |
| Paul G. Sherman | BERG HILL GREENLEAF & RUSCITTI LLP |
| WARGO & FRENCH LLP | 1712 Pearl Street |
| 999 Peachtree Street, NE | Boulder, CO 80302 |
| 26th Floor | Tel: (303) 402-1600 |
| Atlanta, Georgia 30309 | Fax: (303) 402-1601 |
| Tel: (404) 853-1500 | Email: jam@bhgrlaw.com |
| Fax: (404) 853-1501 | |
| Email: nchapman@wargofrench.com | *Attorneys for Defendant Time Warner NY Cable* |
| psherman@wargofrench.com | *LLC* |

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2013, a true and correct copy of the foregoing **TIME WARNER NY CABLE LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL AND FOR ATTORNEYS' FEES** was e-served upon the following via ECF/PACER:

Walker G. Harman , Jr.
THE HARMAN FIRM, P.C.
200 West 57th Street, Suite 900
New York, NY 10123

    s/ *Nathan D. Chapman*
    Nathan D. Chapman