**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 13-cv-00158-RM-MJW

PATRICK HARTLEY,

     Plaintiff,

v.

TIME WARNER NY CABLE LLC,

     Defendant.

---

DECLARATION OF NATHAN D. CHAPMAN IN SUPPORT OF
DEFENDANT TIME WARNER NY CABLE LLC'S REPLY IN SUPPORT
OF MOTION TO COMPEL AND FOR ATTORNEYS' FEES

---

I, Nathan D. Chapman, hereby declare and state as follows:

1. I am over the age of 18 and competent to give this Declaration.

2. I am counsel of record for Defendant Time Warner NY Cable LLC ("Defendant" or "TNY") in the above-captioned matter and this Declaration is made based on my personal knowledge and a review of my files.

3. On September 3, 2013, TNY took the deposition of Plaintiff Patrick Hartley. An authentic duplicate of the relevant excerpts of that transcript and portions of the relevant exhibits cited in Defendant's Reply in Support of Motion to Compel and for Attorneys' Fees ("Motion to Compel") are attached hereto as composite **Exhibit 1**.

4. On September 10, 2013, I received an e-mail from Plaintiff's counsel containing a privilege log. Authentic duplicates of Plaintiff's counsel's e-mail and privilege log are attached hereto as composite **Exhibit 2**.

1

5.   In an attempt to investigate the statements and allegations made by Christopher

McKitrick and Plaintiff in this litigation [D.E. 33.] and to further explore Mr. McKitrick's

knowledge regarding the claims and defenses at issue in this litigation, TNY has attempted on

multiple occasions to serve Mr. McKitrick with a subpoena to sit for a deposition.  Specifically,

TNY attempted, through a private process server, to serve Mr. McKitrick at his last known

address and last known place of employment on June 18, 25, and 26, 2013.  All of these attempts

were unsuccessful.  Further, TNY has also been unable to reach Mr. McKitrick by telephone

because the last known contact number for him is no longer in service.

I declare under penalty of perjury under the laws of the United States of America that the

foregoing is true and correct.

Dated: September 13, 2013, at Atlanta, Georgia.

NATHAN D. CHAPMAN

# EXHIBIT 1

1              UNITED STATES DISTRICT COURT
2              FOR THE DISTRICT OF COLORADO
3     Case No. 13-CV-158
4     -------------------------------------------------
5     VIDEO DEPOSITION OF PATRICK G. HARTLEY
6                       September 3, 2013
7     -------------------------------------------------
8     PATRICK G. HARTLEY, individually and on behalf of
      others similarly situated,
9
      Plaintiffs,
10
      vs.
11
      TIME WARNER CABLE NY, LLC d/b/a TIME WARNER
12    CABLE, et al.,
13    Defendants.
14    -------------------------------------------------
15    APPEARANCES:
16         THE HARMAN FIRM
                By Walker G. Harman, Jr., Esq.
17                   200 West 57th Street, Suite 900
                     New York, New York 10019
18                     Appearing on behalf of Plaintiffs.
19         WARGO & FRENCH LLP
                By Nathan D. Chapman, Esq.
20                   999 Peachtree Street, N.E., 26th Floor
                     Atlanta, Georgia 30309
21                     Appearing on behalf of Defendants.
22
23         Also Present:  Farid Jabbour
24                        Linda Williams
25                        Nick Borgia, CLVS

1    defendant.

2            Q    Okay.

3                 And the audio recordings you said you

4    reviewed, which ones were those?

5            A    The severance meeting with Farid Jabbour.

6            Q    And you have not produced that to us in this

7    case yet; is that right?

8            A    I have produced that.

9            Q    You have produced the severance meeting?

10   Well, hold on.

11                What date did that take place?

12           A    February 13, 2012.   January 13.

13           Q    And --

14           A    Excuse me.

15           Q    I am sorry.  I did not mean to cut you off.

16                It is my understanding that you also

17   recorded the meeting that you had with Mr. Jabbour on

18   August 15; is that correct?

19           A    When we were being severanced.

20           Q    Did you have a meeting with Mr. Jabbour on

21   August 15?

22           A    Yes, and Ms. Williams.

23           Q    Okay.  And it is my understanding that you

24   recorded that conversation?

25           A    That's correct.

1          Q     And have you turned that recording over to

2    your attorneys yet?

3          A     Yes, I have.

4                MR. CHAPMAN:  Okay.  We will need to get a

5    copy of that.  It has not been produced.

6                MR. HARMAN:  I am going to ask that you

7    follw up in writing with all of your additional

8    requests.

9                MR. CHAPMAN:  We will be happy to do that.

10   I am just asking you right now.

11               MR. HARMAN:  I will take it under

12   advisement.

13         Q     (BY MR. CHAPMAN)  Are there any other

14   recordings that you have made while you were at Time

15   Warner Cable that you have not turned over to your

16   attorneys?

17         A     No.

18         Q     What is your highest level of education?

19         A     High school.

20         Q     Where did you go to high school?

21         A     Cheyenne Mountain High school.

22         Q     Is that in Colorado Springs?

23         A     Yes.

24         Q     So you don't have any degrees?

25         A     No, I do not.

Page 46

1    to begin taking calls at the beginning of your shift.

2              In order to do so, I would have to arrive 15

3    minutes early on average in order to load the

4    applications and programs necessary for me to begin

5    taking calls at the start of my shift.  I was not

6    compensated for that time.

7         Q    And you were aware of those facts prior to

8    January 2013, right?

9         A    Correct.

10             (Exhibit 6 marked.)

11        Q    (BY MR. CHAPMAN)  Mr. Hartley, I am going to

12   hand you what has been marked as Exhibit 6.  These are

13   interrogatories that we sent you on or around March 4,

14   2013.

15             Do you recall receiving those?

16        A    Yes, I do.

17        Q    And you provided us with some responses to

18   our questions, right?

19        A    Yes, I did.

20        Q    Okay.  Do you remember what day you did

21   that?

22        A    April 17, 2013.

23             (Exhibit 7 marked.)

24        Q    (BY MR. CHAPMAN)  I am going to hand you what

25   has been marked as Exhibit 7.  I have just attached the

Page 47

1   cover e-mail that I received from you, along with the

2   interrogatory responses we received.

3        Is that the e-mail that you are referring to

4   that you sent on April 17, 2013?

5        A    Yes.

6        Q    If you look, attached to the e-mail there

7   are what appear to be your responses to the

8   interrogatories we sent you; is that right?

9        A    Yes.

10       Q    Okay.  And when you sent them, you reviewed

11  them carefully before you sent them, right?

12       A    To the best of my ability.

13       Q    But did you, to the best of your ability,

14  review them carefully?

15       A    Yes.

16       Q    Okay.  And you made sure the information in

17  them was true and accurate, right?

18       A    Yes, to the best of my ability.

19       Q    And that remains -- the information in these

20  remains true and accurate today, correct?

21       MR. HARMAN:  Objection.  Do not answer the

22  question to the extent it will reveal attorney-client

23  communication.

24       MR. CHAPMAN:  You can answer.

25       A    Can you repeat the question?

Page 48

1    Q    The information that you provided to us in

2    this document remains true and correct to the best of

3    your knowledge until today?

4    A    Yes.

5    Q    Okay.  If you will turn with me to the -- I

6    am sorry, these are not numbered, but the answer that

7    you provided to us in interrogatory 2.  There is a

8    computation of damages there.  And then if you will turn

9    on the next page, it says, number 11, it says FSLA

10   violation.

11         Do you see that?

12   A    Yes.

13   Q    It says, Unpaid work.  Discovery time stamp

14   versus key stroke login.  It says, Mr. Hartley is

15   expected to start taking calls the minute his shift

16   starts.  However, loading the computer and necessary

17   system takes seven to ten minutes to load causing Mr.

18   Hartley to begin work early without proper compensation

19   for the time needed to be able to take calls and perform

20   daily job duties.

21         Did I read that correctly?

22   A    Yes.

23   Q    So at the time that you submitted this it

24   took you seven to ten minutes to perform those pre-shift

25   activities that you are alleging in this case?

Page 148

1    home recuperating, correct?

2          A      Correct.

3          Q      Okay.

4                 Was there anything that you did while you

5    were on FMLA leave other than stay at your house and

6    recuperate?

7          A      A lot of my stress came from Time Warner

8    Cable.  So to remove myself from there, friends would

9    come over.  I would go see a movie or something if I

10   was feeling anxious just to get out of my head.

11         Q      Anything else?

12         A      Not that I can recall.

13         Q      All of the times that you took FMLA you were

14   unable to work; is that right?

15         A      I was unable to perform the job duties at

16   Time Warner Cable, yes.

17         Q      Were there any other job duties that you

18   were able to perform during that time?

19         A      If I had -- as a process server, if I had

20   work that needed, that was going to be done later or

21   after, I would do it.

22         Q      What do you mean later or after?

23         A      If I had papers to serve, either later that

24   day or at the request of an attorney for an emergency

25   service, I may have done that.  During those instances

Page 149

1   either one of my roommates or a friend would drive me

2   simply to not inhibit the legal process.

3       Q    All right.

4            So you have specific recollection of serving

5   process while you were on FMLA leave?

6       A    No, I do not.

7       Q    What is that?

8       A    No, I do not.

9       Q    Okay.

10      A    It may have happened.  I don't know.

11      Q    All right.  Have you read Time Warner

12  Cable's FMLA policy?

13      A    I have.

14      Q    And if you were serving process while you

15  were on FMLA leave, why couldn't you have gone to work

16  at Time Warner Cable?

17      A    Because Time Warner Cable was the cause of

18  my anxiety.  It was a dirty work environment, which is

19  different than being in a car with the windows down.

20      Q    It is a dirty work environment?

21      A    Correct.

22      Q    What is dirty about Time Warner Cable's work

23  environment?

24      A    It is constantly dusty, and it would

25  aggravate my sinuses and sinus infections.

Page 152

1          Q    Okay.  Anyone else?

2          A    Kruse & Lynch.

3          Q    How do you spell Kruse?

4          A    K-r-u-s-e.

5          Q    And Lynch, all right.  Who else?

6          A    I don't recall any others.

7          Q    How about Gasper Law Group?

8          A    I don't know if that was in the last three

9    years.

10          Q    Okay.  How about Dennis Hartley, PC?

11          A    I don't recall.

12          Q    Do you recall serving process at any time

13    for Dennis Hartley, PC?

14          A    Yes.

15          Q    All right.  When was the last time you did

16    that?

17          A    I don't recall.

18          Q    All right.

19               Do you remember serving process at any time

20    for Gasper Law Group?

21          A    Yes.

22          Q    Are there any law firms that you can recall

23    serving process for at any time?

24          A    Gordon Shane.

25          Q    How do you spell that?

Page 153

1      A    G-o-r-d-o-n S-h-a-n-e.

2      Q    Anyone else?

3      A    Not that I can remember, no.

4      Q    When you serve process, do you that under

5   your own name or do you have a business?

6      A    I do it under my own name.

7      Q    You don't have an LLC or a corporation?

8      A    No.

9      Q    Where are the books and records of your

10   business kept?

11      A    I don't keep records.

12      Q    You don't keep records?

13      A    Not really, no.

14      Q    Okay.  And so how do you know how much tax

15   to pay on the money that you earn from serving process?

16          MR. HARMAN:  Objection.

17      A    I have never received a 1099 from anyone.

18      Q    Have you ever paid taxes on any of the

19   income that you have received from serving process?

20      A    I don't recall.

21      Q    Other than potentially serving process and

22   recuperating at your home and maybe going to see a

23   movie, are there any other activities that you engaged

24   in while you were on FMLA leave?

25      A    I think I went to the zoo once on

Page 174

1     Q     It says $29,443; is that right?

2     A     Yes.  Yes.

3     Q     If you will turn with me back three pages to

4  the page that bears Bates label TWC003082.  Let me know

5  when you are there.

6     A     Yes.

7     Q     And is that a copy of the W-2 that you

8  submitted to the IRS for your 2010 tax returns?

9     A     Yes.

10    Q     So if you turn back to the first page of

11  your 2010 tax returns at TWC003080, you did not report

12  any income from process serving during 2010 did you?

13    A     No, I did not.  I did not receive any

14  1099s.

15    Q     You are still engaged in the business of

16  process serving?

17    A     When they call me.

18    Q     Okay.  You are not turning down those calls,

19  right?

20    A     No.

21    Q     Do you maintain any personal e-mail

22  accounts?

23    A     Yes.

24    Q     What are those?

25    A     Patrickghartley@Gmail.com?

Page 175

```
 1          Q     Okay.  Is that the only one?
 2          A     That is the only one that I use.
 3          Q     All right.  Have you ever created any other
 4    personal e-mail accounts that you do not use?
 5          A     Yes.
 6          Q     What are those?
 7          A     Patrickghartley85@Gmail.com?
 8          Q     Anything else?
 9          A     No.
10          Q     All right.
11          A     Not that I can recall.
12          Q     And so you do not maintain a Gmail address
13    of Hartley13CV158@gmail.com?
14          A     That was created for attorney-client
15    communication.
16          Q     And have you ever told anyone else to send
17    you an e-mail at that address besides your attorneys?
18          A     I don't remember.
19          Q     It is possible that you could have?
20          A     I don't know.
21          Q     Okay.  Did you also create a Gmail address
22    called PatrickVTWC@gmail.com?
23          A     Yes, I did.  I do not use it though.
24          Q     Have you ever checked that?
25          A     I don't recall.
```

Page 176

1       Q     Have you made a search of that e-mail

2    address for anything related to this case?

3       A     I don't remember.

4       Q     Okay.  And have you made a search of the

5    Hartley13CV158@gmail.com e-mail address for any

6    nonprivileged e-mails related to this litigation?

7       A     Yes.

8       Q     Have you turned those over to Time Warner

9    Cable?

10      A     I don't know.  I provided everything to my

11   attorney.

12      Q     Okay.  You have a Facebook account, right?

13      A     Yes.

14      Q     And do you have multiple Facebook pages?

15      A     Yes, I do.

16      Q     What are those Facebook pages?

17      A     I don't know what their screen names are.

18   I don't know what their web addresses are.  One is

19   associated with Patrickghartley@gmail, and one is

20   associated with Patrickghartley85@gmail.com.

21      Q     Okay.  The primary one that you use on a

22   day-to-day basis, which e-mail address is that

23   associated with?

24      A     85.

25      Q     Okay.  So Patrickghartley85@Gmail.com is the

Page 177

```
 1    one that is associated with the Facebook page that you

 2    use day to day?

 3         A    Yes.

 4         Q    All right.  And you have also created a

 5    Facebook page that is dedicated to your fight against

 6    Time Warner Cable; is that right?

 7         A    No.

 8         Q    No.  Okay.

 9              Do you have a Facebook page that you have

10    captioned as Your Employer is Not Above the Law?

11         A    Yes.

12         Q    Okay.  What is the purpose of that Facebook

13    page?

14         A    To let people know they have rights under

15    the law.

16         Q    And you are not an attorney, right?

17         A    I am not an attorney.

18         Q    And so people have sent you e-mails at

19    the -- how would you style -- how do you refer to your

20    website or your Facebook site that is dedicated to

21    letting people know their rights?

22              MR. HARMAN:  Objection.

23         A    Can you repeat the question?

24         Q    (BY MR. CHAPMAN)  I just want to know how you

25    refer to that specific Facebook page so I know what to
```

Page 181

1      Q      What is the Twitter account?

2      A      Pat or it is at Patrick4victims with the

3   number 4.

4      Q      What is the significance of Patrick4victims?

5      A      I am for victims' rights.

6      Q      In what way are you advocating for victims'

7   rights?

8      A      Employees who -- employees who are targeted

9   by their corporations, by their employer.

10     Q      So what are you doing specifically to

11  advocate for them?

12     A      I think it is important to know what the

13  rights are, providing links to the laws themselves.

14     Q      Okay.  So you are not offering legal advice,

15  are you?

16     A      No.

17     Q      And at the outset -- strike that.

18            Have you reviewed -- I know you have not

19  opened up the Patrickghartley85@gmail.com e-mail

20  address, but have you gone through all of the other

21  e-mail addresses to make a review to make sure that all

22  of the information regarding this litigation has been

23  preserved?

24     A      Yes.

25     Q      All right.  You have turned all of that

Page 182

```
1    information over to your attorneys?

2         A    Yes.

3         Q    All right.  Do you know somebody with an

4    e-mail address of Xkonlegal@hotmail.com?

5         A    Yes.

6         Q    Who is that?

7         A    That is Kurt Pichon.

8         Q    How do you spell that name?

9         A    K-u-r-t P-i-c-h-o-n.

10        Q    Who is Mr. Pichon?

11        A    A friend.

12        Q    All right.  Have you discussed this case

13   with Mr. Pichon?

14        A    Yes.

15        Q    And you have sent and received e-mails from

16   him?

17        A    I don't remember.

18        Q    Okay.  You still have in your possession any

19   e-mails that you would have sent him regarding this

20   case, right?

21        A    Yes.

22        Q    And you still have in your possession any

23   e-mails you would have received from him regarding this

24   case?

25        A    I don't think he has ever responded.
```

Page 183

1       Q      Did Mr. Pichon ever work at Time Warner

2   Cable?

3       A      No.

4       Q      What is the substance of your communication

5   with Mr. Pichon?

6       A      Keeping him abreast of pleadings and

7   filings.

8       Q      Why are you keeping him abreast of the

9   pleadings and filings?

10      A      He is a friend of mine.

11      Q      Is he a lawyer?

12      A      No.

13      Q      What is the significance of Xkonlegal, if

14  you know?

15      A      I don't know his business.

16      Q      You have exchanged some e-mails with

17  Christopher McKitrick regarding your claims in this

18  litigation, correct?

19      A      I do not remember.

20      Q      Do you have a reason to believe that you

21  haven't exchanged e-mails with him?

22      A      No.

23      Q      And you are aware that there were no e-mails

24  between and you Mr. McKitrick that have been produced,

25  right?

Page 187

1          A     I don't remember.

2          Q     Okay.  And did you review any notes or

3     anything like that in preparing this statement?

4          A     I don't remember.

5          Q     All right.  If there were notes, you would

6     have preserved those, right?

7          A     Yes.

8          Q     And you would have turned those over to your

9     attorney?

10         A     Yes.

11         Q     All right.  And about three quarters of the

12    way down it says, Patrick, about the third or fourth,

13    the fourth one it says Patrick:  Oh, Chris, thank you

14    for telling me.  Can you send me a message on Facebook

15    detailing this?

16         A     He never did.

17         Q     Okay.  And he asks, can't they track that?

18    He said that, right?

19         A     Yes.

20         Q     And you said, Well, actually when it comes

21    to Facebook you don't have permission to give out

22    private messages.  If they want information from a

23    social media site, they have to subpoena the special

24    media site.  If someone sends you a private message,

25    only you and that person are authorized to view that

Page 188

1   message.  They would have to subpoena them to get access

2   to authorize users on their network.

3              You said that, right?

4        A    Yes.

5        Q    So it was your belief that if McKitrick sent

6   you an e-mail on Facebook there was no way that the

7   company could get that without a subpoena, correct?

8              MR. HARMAN:  Objection.

9        Q    (BY MR. CHAPMAN)  That was your belief at the

10  time, right?

11       A    At the time.

12       Q    Since January 23, 2013 have you deleted

13  e-mail from any of your e-mail accounts?

14       A    Yes, nothing related to this case though.

15  Mostly junk mail.

16       Q    When was the last time you talked to Mr.

17  McKitrick?

18       A    A couple of days ago.

19       Q    What number did you call him at?

20       A    I don't know.

21       Q    Do you have your cell phone with you?

22       A    I do not.

23       Q    What is that?

24       A    I do not.

25       Q    You don't have your cell phone with you?

Page 191

1    with him?

2         A    That I retained counsel and that he should

3    contact them.

4         Q    Okay.  And so you instructed Mr. McKitrick

5    to reach out to your lawyers?

6         A    Correct.  I did not instruct him.  I said,

7    if you want to, call him.

8         Q    What else did you all talk about?

9         A    I don't remember.

10        Q    When was the last time that you talked to

11   Mr. McKitrick prior to that?

12        A    I don't remember.

13        Q    An is it safe to say that around April of

14   2013 you would have had Mr. Kitrick's cell phone in your

15   cell phone, correct?

16        A    Yes.

17        Q    You would have known his number, right?

18        A    Yes.  Can we take a break?

19        Q    Sure.

20             THE VIDEOGRAPHER:  We are off the record at

21   3:17.

22             (Recess was taken.)

23             THE VIDEOGRAPHER:  We are back on the record

24   at 3:27.

25        Q    (BY MR. CHAPMAN)  Mr. Hartley, we just took a

Page 222

1   with connecting her to Unum to set up her FMLA.

2        Q    And do you know if she was successful in

3   obtaining FMLA?

4        A    I don't.

5        Q    What did you do specifically to assist her

6   in contacting Unum?

7        A    She was crying in the call center one day

8   and in severe pain, and she needed to leave but she was

9   scared for her attendance.  So because I have been in

10  the supervisory position as an intern, I advised her of

11  her FMLA rights and gave her the number to call Unum.

12       Q    And anything beyond that that you did to

13  assist Ms. Pittman?

14       A    No.

15       Q    Okay.  I may have asked you this.

16            When is the last time that you talked to

17  her?

18       A    I do not remember.

19       Q    Right.  And have you obtained any statements

20  from Ms. Pittman?

21       A    No.

22       Q    You have her contact information?

23       A    Yes.

24       Q    And you have Ms. Washington's contact

25  information?

Page 223

1          A     Yes.

2          Q     And Ms. Lowder's contact information?

3          A     I do not.

4          Q     You don't.  Dena Cannon's contact

5     information?

6          A     Yes.

7          Q     Sergio Alcala's contact information?

8          A     Yes.

9          Q     Kevin Kuhn's contact information?

10         A     Yes.

11         Q     Gary Pullen's contact information?

12         A     No.

13         Q     All right.  Juli Van Tuil's contact

14    information?

15         A     Yes.

16         Q     Stephanie Eddins' contact information?

17         A     Yes.

18         Q     Linda Evans' contact information?

19         A     No.

20         Q     Amanda Parise's contact information?

21         A     No.

22         Q     All right.

23         A     Other than her e-mail address.

24         Q     And for those individuals that we have gone

25    through, is there anybody that we have just talked about

Page 224

1    so far that is on your list here in Exhibit 7 whose

2    contact information you obtained after April 17, 2013?

3        A    I don't remember.

4        Q    Okay.  You have had most of these folks

5    contact information for a few years, right?

6        A    I don't know.

7        Q    Okay.

8             Who is Lisa Thompson?

9        A    She was a contracted employee of Time

10   Warner Cable, and she worked as an administrative

11   assistant to Megan McGowen.

12       Q    And you have her contact information, right?

13       A    I have her e-mail address, I think.

14       Q    Okay.  And what knowledge do you believe

15   Ms. Thompson may have regarding your claims in this

16   litigation?

17       A    I don't know.

18       Q    When was the last time you talked to

19   Ms. Thompson?

20       A    I don't remember.

21       Q    Have you obtained a written statement from

22   Ms. Thompson?

23       A    Yes.

24       Q    You have turned that over to your attorneys?

25       A    Yes.

Page 240

```
 1        Q    Okay.  So he left before your employment
 2   ended?
 3        A    Correct.
 4        Q    All right.  And why did you list him as a
 5   witness?
 6        A    His experiences.
 7        Q    Which ones?
 8        A    I don't know.
 9        Q    All right.  Have you had any -- when is the
10   last time you talked to him?
11        A    I don't remember.
12        Q    Do you have his contact information?
13        A    I do not.
14        Q    All right.  And have you obtained any
15   written statements from him?
16        A    No.
17        Q    Who is Steve McCarthy?
18        A    Former employ yes of Time Warner Cable.
19        Q    And what was Mr. McCarthy's at Time Warner
20   Cable?
21        A    Same as mine, business member support.
22        Q    Why did you list him as a witness?
23        A    I don't remember.
24        Q    Did you discuss your claims with him?
25        A    Yes, that I felt retaliated against for
```

Page 241

1    FMLA.

2         Q    All right.  And anything else?

3         A    I don't remember.

4         Q    Have you obtained and any written statements

5    from him?

6         A    No.

7         Q    Do you have his contact information?

8         A    I think so.

9         Q    Okay.

10        A    I don't remember.

11        Q    And as of April 2013 you would have had his

12   contact information, right?

13        A    I don't remember.

14        Q    All right.  And I may have asked you this.

15   I apologize if I have.

16             When is the last time you talked to Mr.

17   McCarthy?

18        A    I don't remember.

19        Q    Okay.  Who is Jennifer Jones?

20        A    Former employee of the defendant.

21        Q    She also worked in business class with you?

22        A    Yes.

23        Q    And what knowledge do you believe she has

24   about your claims in this litigation?

25        A    Her personal experiences.

Page 246

1        A     Can you repeat or rephrase it?

2        Q     You have not talked to Mr. Davidson since

3    before you initiated this litigation; is that right?

4        A     I reached out to him and asked him for

5    representation.

6        Q     But that was the only communication that you

7    had with Mr. Davidson, was your request for

8    representation?

9        A     Correct.

10             MR. CHAPMAN:  I have to get copies.  Let us

11   go off the record.

12             THE VIDEOGRAPHER:  We are off the record at

13   4:29.

14             (Recess was taken.)

15             THE VIDEOGRAPHER:  We are back on the record

16   at 4:33.

17             (Exhibit 27 marked.)

18        Q     (BY MR. CHAPMAN)  I am going to hand you what

19   has been marked as Exhibit 27.  It is four or five

20   documents that we subpoenaed from Mr. Earl's firm,

21   McKinney & Associates.

22             Have you seen these e-mails before?

23        A     Yes.

24        Q     Okay.  And let us just walk through them.

25   The first e-mail you sent to Mr. Earl on October 3,

Page 247

1    2012; is that right?

2         A    Yes.

3         Q    Okay.  And you still have a copy of that

4    e-mail in your e-mail account?

5         A    Yes.

6         Q    All right.  The second e-mail you e-mailed

7    to Mr. Earl on December 10, 2012 and there was an

8    attachment to that called FMLA complaint.

9              Do you see that?

10        A    Yes.

11        Q    And do you still have a copy of that

12   document on your computer?

13        A    Yes.

14        Q    All right.  That is still saved in your

15   Gmail system?

16        A    Yes.

17        Q    All right.  So you would be able to produce

18   that, correct?

19        A    Yes.

20        Q    All right.  Turn to the next one.  It is

21   from you to a number of recipients on December 16, 2012.

22   And you sent this to Xkonlegal@hotmail.com; is that

23   right?

24        A    Yes.

25        Q    That is Mr. Pichon?

Page 248

1        A     Yes.

2        Q     And you sent it to

3    dennis.hartley@hartleylaw.com?

4        A     Yes.

5        Q     Is that your father's e-mail address?

6        A     Yes.

7        Q     And you sent to Mr. Earl and Mr. Davidson;

8    is that right?

9        A     Yes.

10        Q     And you were soliciting feedback from those

11   individuals?

12        A     I don't remember.

13        Q     Well, when you said, Hi, any thoughts or

14   suggestions would be appreciated, were you soliciting

15   their input on your complaint, correct?

16        A     Yes.

17        Q     Did you receive any feedback from them on

18   your complaint?

19            MR. HARMAN:  Objection.  I will instruct you

20   not to answer to the extent that it will reveal

21   attorney-client communications.

22        A     I don't remember.

23        Q     (BY MR. CHAPMAN)  Okay.  And did you receive

24   any assistance from any individual in drafting your

25   complaint?

Page 249

1      A    No.

2      Q    And you had the opportunity to seek legal

3   counsel before you filed that complaint, correct?

4      A    Yes.

5      Q    And you attempted to obtain legal counsel

6   before you filed the complaint, right?

7      A    Yes.

8      Q    And you have this e-mail saved in your

9   e-mail accounts with the attachment, correct?

10     A    I don't know.

11     Q    Okay.  Any reason to think that you would

12  have deleted this?

13     A    No.

14     Q    All right.  Did you make any specific

15  efforts to preserve this e-mail?

16     A    I didn't delete anything.

17     Q    All right.  So it should not be a problem to

18  produce it, right?

19     A    I don't know.

20     Q    Okay.  Will you agree to go back and check?

21          MR. HARMAN:  I will take your request under

22  advisement.

23          MR. CHAPMAN:  Okay.

24     Q    (BY MR. CHAPMAN)  The next one is December

25  27, 2012 to Collin Earl and it is entitled, "Patrick's

Page 250

1   complaint."  You said it is only six pages, with a

2   smiley face.

3         What was the purpose of that e-mail?

4      A   To try and see if he would be interested in

5   representing me.

6      Q   Did you ever ask him to represent you?

7      A   Uh-huh.

8      Q   Is that a yes?

9      A   Yes.

10     Q   And, again, there was an attachment to that

11   called FMLA complaint.

12         And do you have a Word version of that

13   document you?

14     A   Yes.

15     Q   And you have retained a copy of that e-mail?

16     A   I produced everything to my attorney.

17     Q   Okay.  The next e-mail is January 7, 2013 to

18   Mr. Earl.

19         Do you see that?

20     A   Yes.

21     Q   It says, Please read for me, thanks is the

22   subject line.  Do you see that?

23     A   Yes.

24     Q   And you wrote that, right?

25     A   Yes.

Page 251

```
 1          Q     And there was an attachment to that as well,
 2   correct?
 3          A     Yes.
 4          Q     It said FMLA complaint, right?
 5          A     Yes.
 6          Q     And you still have a copy of this e-mail?
 7          A     I don't know.
 8          Q     You say Collin, I am getting ready to move
 9   forward by this weekend and would like your thoughts on
10   what I have.  Thanks, man.
11          A     He never responded.
12          Q     He never responded?
13          A     No.
14          Q     Did Mr. Earl ever respond to any of your
15   e-mails?
16          A     No.
17          Q     Did you ever call him and ask him why he did
18   not respond to your e-mails?
19          A     No.
20          Q     Do you know what kind of lawyer Mr. Earl is?
21          A     I don't.
22          Q     And then the final e-mail there is from you
23   to Mr. Davidson, Mr. Earl, Crystal Smith and your
24   father; is that right?
25          A     Year.
```

Page 252

1      Q     And there was an attachment to that,

2  correct?

3      A     Yes.

4      Q     And that was the opposition to class

5  certification that we filed in this litigation?

6      A     Yes.

7      Q     And you still have a copy of that e-mail,

8  right?

9      A     Yes.

10          (Exhibit 28 marked.)

11      Q    (BY MR. CHAPMAN)  I am going to hand you what

12  has been marked as Exhibit 28.  I will represent to you

13  this is another set of text messages that was produced

14  to us on Monday of last week.

15          Have you seen this document before?

16      A     Yes.

17      Q     Is this an e-mail exchange between you and

18  Mr. Sergio Alcala?

19      A     Yes.

20      Q     That started on November 11, 2012; is that

21  right?

22      A     Yes.

23      Q     Do you see it at the top there?

24      A     Yes.

25      Q     Is that a screen shot from your cell phone?

Page 253

1        A    Yes.

2        Q    All right.   The blue is?

3        A    Me.

4        Q    The blue bullets on the right side of the

5   document are your statements, right?

6        A    Yes.

7        Q    And the statements on the left side of the

8   document in the white bubbles are Mr. Alcala's

9   statements, right?

10       A    Yes.

11       Q    And he says on November 11, 2012, Hey, at

12   work so can't talk much about you know what.   Thanks for

13   the template you sent.   I have been working on it since

14   this morning.   Give me your e-mail again so I can send

15   it hopefully by tonight.

16            Then you responded with

17   Patrickghartley@gmail.com.

18            Did I read that right?

19       A    Yes.

20       Q    So you and Mr. Alcala exchanged some e-mails

21   regarding a template that you sent him, right?

22       A    Yes.

23       Q    And what was the template that you sent him?

24       A    A sworn statement.

25       Q    So you retained those e-mails, correct?

Page 254

1        A      Yes.   They have been produced to my
2    counsel.
3        Q      All right.   And all of those e-mails came
4    from the Patrickghartley@gmail.com?
5        A      To the best of my knowledge, yes.
6        Q      And you received the e-mails from Mr. Alcala
7    at that address?
8        A      Yes.
9        Q      Okay.   If you will turn, keep going back,
10   there is a Bates label in the bottom right-hand side
11   that says Hartley197.   Let me know when you are at that
12   page.
13       A      I am there.
14       Q      Okay.   This appears percent to be a
15   continuation of text messages and, correct me if I am
16   wrong, but these text messages it says June 15 at 12:56
17   p.m.
18              Does that mean June 15 of 2013?
19       A      Yes.
20       Q      Okay.   So you have one on June 15 at 12:56
21   p.m. and one on June 27 at 3:01 p.m. and one on July 19
22   at 3:24 p.m.
23              Is that what you have on the page that you
24   are looking at?
25       A      Yes.

Page 255

1    Q    All right.  You said, I got your second one.

2  It is perfect.

3          What did you mean by that?

4    A    He sent me a draft of his statement.

5    Q    All right.  And then you responded to him in

6  an e-mail, right?

7    A    Correct.

8    Q    All right.  Then you asked him again, did

9  you get the e-mail?

10   A    Yes.

11   Q    All right.  And then at the bottom you are

12  asking him if he went by another name while he was

13  working at TWC, right?

14   A    Correct.

15   Q    And when he provided you with his EID, what

16  system were you using to look up his name?

17   A    Employee Lookup Tool.

18   Q    And what is the name of that Employee Lookup

19  Tool?

20   A    Employee Lookup Tool.

21   Q    That is the actual proper name?

22   A    Yes.  I think it is Employee Lookup Tool

23  2.0.

24   Q    It allows you to put in somebody's employee

25  ID?

Page 256

1    A    You can search by name, employee ID, sales

2  ID, phone ID, tech number.

3    Q    Okay.  And does that provide you with access

4  to that individual's contact information?

5    A    Not personal, no.

6    Q    Why were you looking up Mr. Alcala's

7  employee ID number?

8    A    Just random curiosity.

9    Q    The e-mails that you referenced on that page

10  of this exhibit, you have preserved those as well,

11  correct?

12    A    I provided everything to counsel.

13    Q    All right.  Do you know if those e-mails

14  specifically have been preserved?

15    A    I don't know.

16    Q    If you look at the previous page, Mr. Alcala

17  says, I am re-sending another version of it because I

18  had forgotten a few more incidents.  I will be setting

19  (sic) more periodically since I am pulling my old notes.

20         Have you ever seen a copy of those notes?

21    A    I have not.

22    Q    You asked Mr. Alcala to put -- strike that.

23         What did you ask Mr. Alcala to put in his

24  declaration?

25    A    His experience.

Page 260

1        A     Correct.

2        Q     I understand that you represented to the

3   court and to us throughout this litigation that you have

4   been proceeding pro se, right?

5        A     Right.

6        Q     And when you filed this litigation, did you

7   intend to file it as a class action?

8        A     I didn't know how, but yes.

9        Q     Okay.  And do you recall that there was a

10  scheduling conference with Judge Watanabe, right?

11       A     Yes.

12       Q     At that scheduling conference you

13  represented to him that you were not proceeding on a

14  class basis, right?

15       A     I do not remember.

16       Q     Okay.  Have you reviewed the transcript from

17  that hearing?

18       A     Not recently.

19       Q     Have you reviewed it ever?

20       A     Yes.

21             (Exhibit 30 marked.)

22       Q     (BY MR. CHAPMAN)  I am going to hand you what

23  has been marked as Exhibit 30.  I will represent to you

24  that these again are text messages or what appears to be

25  text messages that we received from your attorneys last

Page 261

1    Monday.

2              Is this a series of text messages between

3    you and Lisa Thompson?

4        A    Yes.

5        Q    Is that the same Lisa Thompson that we

6    discussed earlier that you listed in your interrogatory

7    responses as a potential witness?

8        A    Yes.

9        Q    Okay.  You exchanged some e-mails with

10   Ms. Thompson, correct?

11       A    Yes.

12       Q    All right.  And that was at the

13   Patrickghartley@gmail.com account?

14       A    Yes.

15       Q    And those have all been turned over to your

16   attorneys, right?

17       A    Yes.

18       Q    If you will turn with me to the second page.

19   Ms. Thompson says, And I am going to send it to

20   corporate as well.  Do you know who that would be for

21   this region and for TWC in general?

22             Do you remember receiving that?

23       A    Yes.

24       Q    And then you responded with the next four or

25   five blocks; is that right?

Page 264

```
 1        Q    Okay.  If you had, you would have turned

 2   those over to your lawyers, right?

 3        A    Yes.

 4        Q    The same thing with e-mails, right?

 5        A    Yes.

 6        Q    Do you believe that Ms. Laster has any

 7   knowledge of your claims in this litigation?

 8        A    I don't know.

 9        Q    Who is Desiree Bethea?

10        A    A former employee of Time Warner Cable.

11        Q    Have you discussed your claims with her via

12   text messages?

13        A    I don't remember.

14        Q    Have you discussed your claims with her via

15   e-mail?

16        A    I don't remember.

17             (Exhibit 31 marked.)

18        Q    (BY MR. CHAPMAN)  I am going to hand you what

19   has been marked as Exhibit 31.

20             Have you seen that document before?

21        A    Yes.

22        Q    Okay.  And is this a text message exchange

23   between you and Desiree Bethea?

24        A    Yes.

25        Q    Again, your statements are on the right-hand
```

Page 265

1    side in blue, correct?

2         A    Yes.

3         Q    And her statements are on the bubbles on the

4    left-hand side, right?

5         A    Yes.

6         Q    And you were soliciting her to join in this

7    litigation, right?

8         A    Correct.

9         Q    If you will turn to the second page, there

10   is a message on June 7 at 5:27 p.m. that says, Because I

11   am trying to make a point publicly that management is

12   scared of me.

13             What did you mean by that?

14        A    I don't know.

15        Q    Okay.  Isn't it true, Mr. Hartley, that this

16   litigation is all about you getting revenge on the

17   company?

18        A    No.  I thoroughly enjoyed working for Time

19   Warner Cable.

20        Q    But you wanted to make a point that Time

21   Warner Cable's management is scared of you?

22        A    I wanted to make a point that breaking the

23   law is not acceptable.

24        Q    That is not what you wrote to Ms. Bethea,

25   was it?

Page 269

1      A    Yes.

2      Q    Did you ask Ms. Durham for a statement?

3      A    I don't remember.

4      Q    How about Ms. Williams?

5      A    I don't remember.

6      Q    Okay.  But if you have gotten statements

7    from them, you would have preserved those?

8      A    And given them to my attorney.

9      Q    And who is Hazen Garcia?

10     A    I do not even know.

11     Q    Any reason why would you have been texting

12   with someone named Hazen Garcia?

13     A    He sent me a message on Facebook.

14     Q    All right.  You have exchanged texts with

15   Mr. Garcia as well, correct?

16     A    I don't remember.

17     Q    But if you did, you would have turned those

18   over to your attorneys?

19     A    Correct.

20     Q    Same thing with e-mails?

21     A    Correct.

22     Q    Who is Jennifer Staley?

23     A    An employee of Time Warner Cable.

24     Q    Currently?

25     A    I don't know.

Page 271

1      Q    Okay.  Have you exchanged messages with
2  Kevin Koon, correct?
3      A    I don't remember.
4      Q    You have got some statements from Mr. Koon,
5  right?
6      A    Yes.
7      Q    You provided all of all of the e-mails and
8  statements you received from Mr. Koon to your attorneys?
9      A    Yes.
10     Q    And all of the individuals with whom you
11  have exchanged text messages, you have turned over those
12  text messages to your attorneys?
13     A    Yes.
14     Q    You have all of the phone numbers and
15  contact information for those individuals, right?
16     A    I don't know.
17     Q    When you talked about Sharese Washington
18  before.  Have you exchanged any test messages with her
19  regarding your claims?
20     A    I don't remember.
21     Q    And you have turned those over to your
22  attorneys if you have, right?
23     A    Yes.
24     Q    Did you exchange any e-mails with her
25  regarding your claims?

Page 275

1      Q    If you have any e-mails with Ms. Bolden, you
2   would preserve those and have turned them over to your
3   attorneys, correct?
4      A    Yes.
5      Q    All right.  You indicated before that the
6   Hartley13CV158@gmail.com address was created exclusively
7   for attorney communications regarding the case, right?
8      A    I may have misspoken.  Anything sent to
9   that e-mail address has been produced to my attorney.
10          (Exhibit 33 marked.)
11      Q   (BY MR. CHAPMAN)  Okay.  I am going to hand
12   you what has been marked as Exhibit 33.  Again, these
13   are a series of text messages that were produced by your
14   attorneys last week.
15          Do you recognize this as a series of text
16   messages between and you somebody named Jacqueline
17   Jackson?
18      A    Yes.
19      Q    Is Ms. Jackson one of the individuals that
20   you listed in your interrogatory responses as a witness?
21      A    I don't remember.  Let me check.
22      Q    Let me check too because I do not remember.
23   Hold on.  I will withdraw the question so you don't have
24   to look.  It does not appear that she is.
25          So if you exchanged any e-mails with

Page 276

1    Ms. Jackson, you would have searched your accounts and

2    provided those to your attorneys, correct?

3        A    Correct.

4        Q    And you were soliciting Ms. Jackson to join

5    this litigation, correct?

6        A    Yes.

7        Q    If you had exchanged -- strike that.  I

8    already asked you that.

9             Who is Evonna Bijou?

10       A    That is a drag queen out of Pueblo who is a

11   former employee of Time Warner Cable.

12       Q    Okay.  And when you say "drag queen," is

13   that a man or a woman?

14       A    That is a man.

15       Q    Okay.  So did you exchange texts with Evonna

16   Bijou regarding your claims in this litigation?

17       A    I do not remember.

18       Q    But if you, you turned them over to your

19   attorneys.

20       A    Yes.

21       Q    The same with e-mails?

22       A    Yes.

23       Q    Who is Kenneth McFale?

24       A    An employee of Time Warner Cable.

25       Q    Currently?

Page 283

1      Q    Have you discussed your claims in this

2   litigation with her?

3      A    I cannot error.

4      Q    And Sally Frisbee, have you asked her for a

5   statement?

6      A    I cannot remember.

7      Q    Okay.  Have you discussed your claims in

8   this litigation with Ms. Frisbee?

9      A    I cannot remember.

10     Q    Okay.  I believe we discussed Ms. Cannon

11  before who was listed on your written interrogatory

12  responses.

13          Have you exchanged text messages with her?

14     A    Yes.

15     Q    And you have exchanged text messages with

16  her about your claims in this litigation?

17     A    I cannot remember.

18          (Exhibit 34 marked.)

19     Q    (BY MR. CHAPMAN)  I am going to hand you what

20  has been marked as Exhibit 34.  Mr. Hartley, I will

21  represent to you again that these are text messages that

22  we received from your attorneys last week.

23          Have you seen these before?

24     A    Yes.

25     Q    Okay.  And these are text messages that you

Page 284

1   exchanged with Dena Cannon, correct?

2        A    Yes.

3        Q    If you will turn to the page that is labeled

4   Hartley141 and let me know when you are there, that

5   would be great.

6        A    Yes.

7        Q    And on July 30, at 6:36 p.m. -- that is this

8   year, correct?

9        A    Yes.

10       Q    Okay.  It says, Hey, saw Sharese Washington

11   today and she signed those TWC time papers you left for

12   me, and I gave her a copy of my declaration so she can

13   write her own.  I told her to friend you so she can keep

14   in touch, but I have her signed paperwork.  Sergio will

15   be home tonight and we will both, we will have both

16   here.  Do you want to come pick them up tomorrow or can

17   I fax them somewhere?

18            Do you remember getting that e-mail from

19   Ms. Cannon?

20       A    Yes.

21       Q    What paperwork did you leave for her?

22       A    I don't remember.

23       Q    You don't remember what paperwork you left

24   for Ms. -- strike that.

25       A    Anything produced by them has been given to

Page 285

1    my attorney.

2         Q    Do you know what she is referring to when

3    she said TW time papers?

4         A    I don't.

5         Q    Did you go pick up some documents from

6    Ms. Cannon after that?

7         A    Yes.

8         Q    And you preserved those, correct?

9         A    Yes.  They have been provided to my

10   attorney.

11        Q    Okay.  Have you received a declaration from

12   Ms. Washington?

13        A    I don't remember.

14        Q    So any text messages or e-mails that you

15   exchanged with Ms. Cannon regarding your claims in this

16   litigation would have been produced to your attorneys,

17   correct?

18        A    Yes.

19        Q    All right.  Other than the individuals we

20   have discussed today, is there anyone else that you have

21   communicated with about your claims in this

22   litigation -- strike that.

23             Have you communicated with anybody else

24   besides the individuals we have talked about today

25   regarding your claims in this litigation?

Page 290

1      A     Yes.

2            (Exhibit 41 marked.)

3      Q     (BY MR. CHAPMAN)   All right.   I am going to

4   hand you what has been marked as Exhibit 41.

5            Is that your signature above where it says

6   Patrick G. Hartley, process server?

7      A     Yes.

8      Q     And you signed that on December 22, 2009?

9      A     Yes.

10     Q     And it says that on December 11 at 3:50 p.m.

11  you were serving process, correct?

12     A     Yes.

13     Q     And that was true when you signed that

14  document?

15     A     To the best of my knowledge, yes.

16           (Exhibit 42 marked.)

17     Q     (BY MR. CHAPMAN)   I am going to hand you what

18  has been marked as Exhibit 42.

19           Is that your signature on the document?

20     A     Yes.

21     Q     And you signed that document on the 26th of

22  April 2011, correct?

23     A     Yes.

24     Q     It says that you were serving process on

25  April 25, 2011 at 12:10 p.m.; is that correct?

Page 291

1       A    Yes.

2       Q    That is what you were doing at that date and

3   time, correct?

4       A    To the best of my knowledge.

5       Q    You would not have submitted a document

6   under oath that was incorrect, right?

7       A    Correct.

8            (Exhibit 43 marked.)

9       Q    (BY MR. CHAPMAN)  Mr. Hartley, I am going to

10  hand you what has been marked as Exhibit 43.

11           Have you seen that document before?

12      A    Yes.

13      Q    And you signed that on April 26, 2011?

14      A    Yes.

15      Q    And it attests that on April 25, 2011 at

16  12:33 p.m. you were serving process, correct?

17      A    Yes.

18           MR. CHAPMAN:  That is all the questions that

19  I have at this time.

20           Mr. Harman, do you have anything?

21           MR. HARMAN:  No.

22           MR. CHAPMAN:  I will leave this deposition

23  opening pending receipt of additional documents and to

24  the extent that there is additional -- to the extent the

25  court grants the motion to amend, we will come back and



IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00158-PAB-MJW

PATRICK G. HARTLEY, *et al.*

    Plaintiff,

v.

TIME WARNER NY CABLE LLC,

    Defendant.

---

### DEFENDANT TIME WARNER NY CABLE LLC'S
### FIRST SET OF INTERROGATORIES TO PLAINTIFF PATRICK G. HARTLEY

---

    Defendant Time Warner NY Cable LLC, pursuant to Fed. R. Civ. P. 33, hereby serves on Plaintiff Patrick G. Hartley the following First Set of Interrogatories (the "Interrogatories") to be answered separately and fully in writing, under oath, within the time required by law. These Interrogatories are intended to be continuing in nature and any additional responsive information that Plaintiff may discover subsequent to Plaintiff's original responses should be supplemented timely in accordance with the Federal Rules of Civil Procedure.

### DEFINITIONS

    1.    "Hartley," "you," and "your" shall mean or refer to Plaintiff Patrick G. Hartley and his agents, employees, representatives, attorneys and anyone acting on your behalf.

    2.    "Defendant" shall mean or refer to Defendant Time Warner NY Cable LLC and its agents, employees, representatives, directors, officers, partners, corporate parent, subsidiaries, or affiliates, and attorneys or any predecessor company or entity.

3.     The terms "Communication" and "Communicate" mean any exchange or transmission of information, whether oral, written, via electronic mail or by other means, between or among two or more Persons and includes, but is not limited to, written, oral, telephonic, electronic mail, or any other inquiry, representation, discussion, meeting, letter correspondence, memorandum, note, newsletter, telegram, advertisement, speech, conversation, conference, e-mail or computer-generated message or any other Document, which refers to any such communication.

4.     "Complaint" shall mean or refer to the original Complaint you filed against Defendant on or about January 23, 2013, in the United States District Court for the District of Colorado.

5.     "Document" shall have the broadest possible meaning under the Federal Rules of Civil Procedure and mean or refer to, without limitation, any written or graphic matter or other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including, but not limited to, any printed, written, recorded, taped, electronic, graphic, or other tangible matter from whatever source, however produced or reproduced, whether in draft or otherwise, whether sent or received or neither, including the original, all amendments and addenda and any non-identical copy (whether different from the original because of notes made on or attached to such copy or otherwise) of any and all writings, correspondence, letters, telegrams, telex communications, cables, notes, notations, papers, newsletters, memoranda, inter-office communications, electronic mail, releases, agreements, contracts, books, pamphlets, studies, minutes of meetings, recordings or other memorials or any type of personal or telephone conversations, meetings or conferences (including, but not limited

2

to, telephone bills and long distance charge slips), reports, analyses, evaluations, estimates, projections, forecasts, receipts, statements, accounts, books of account, diaries, calendars, desk pads, appointment books, stenographer's notebooks, transcripts, ledgers, registers, worksheets, journals, statistical records, cost sheets, summaries, lists, tabulations, digests, canceled or unconcealed checks or drafts, vouchers, charge slips, invoices, purchase orders, hotel charges, accountant's reports, financial statements, newspapers, periodical or magazine materials, and any material underlying, supporting or used in the preparation of any Documents.   The term "Document" also means any and all electronically stored information ("ESI"), computer records, data and information of whatever kind whether printed out or stored on or retrievable from any floppy diskette, compact diskette, magnetic tape, optical or magnetic-optical disk, hard drive or rapid access memory, including without limitation, all back-up copies, undeleted data, and dormant or remnant files.

6.     "Health Care Provider" shall mean or refer to, without limitation, any hospital, clinic, hospice, physician, doctor, dentist, psychiatrist, psychologist, chiropractor, general practitioner, nurse, physician's assistant, medical clinic, social worker, counselor, or therapist.

7.     "Health Condition" shall mean or refer to, without limitation, any physical, emotional, psychological or psychiatric condition, disease, disorder, illness, impairment, injury, malady, or symptom.

8.     "Identify" shall mean and require you to:

a.     With respect to a natural person, provide his or her: (i) full name; (ii) present or last known residence or business address and residence and business telephone numbers, including area code; and (iii) present or last known employer, position, or title

3

and job description.

b.      With respect to a Document, (i) to provide a description of the Document; (ii) to state the identity of the person(s) who authored or prepared it; (iii) in the case of an agreement or contract, to state the identity of the signatory parties; (iv) to state the identity of the addressee(s) and the recipient(s), if any, of the original Document and any copy thereof; (v) to state the title thereof, if any, and a description of the general nature of its subject matter; (vi) to state the date on the Document, or if none, the approximate date of its preparation; (vii) to state the present location of any and all copies of the Document; and (viii) to state the identity of the person(s) who now have custody, control, or possession of the Document or copies thereof.

c.      With respect to an oral communication, provide: (i) the type of communication; (ii) the time, date and place of communication; (iii) the identity of all persons speaking and all persons present at the time of the communication; (iv) the approximate length of the communication; (v) the substance of the communication; (vi) the identity of all Documents that are referred to, concern or otherwise relate to the communication; and (vii) if all copies of the Document have been destroyed, the names and current addresses of the person or persons authorizing the destruction of the Document and the date the Document was destroyed.

9.      "Person" or "persons" shall mean or refer to all entities, including, but not limited to, all individuals, associations, companies, partnerships, joint ventures, corporations, and governmental bodies.

10.     The terms "relate to" or "related to" or "relating to" mean having any relationship OR connection to, concerning, being connected to, commenting on, responding to, containing, evidencing, showing, memorializing, describing, analyzing, reflecting, pertaining to, comprising, constituting, or otherwise establishing any reasonable, logical, or causal connection.

11.     The term "evidence" means in any way evidencing, supporting, demonstrating, embodying, representing, exemplifying, signifying, constituting, consisting of, comprising, being the equivalent or equal to, or establishing any reasonable, logical or causal connection to the stated matter, fact, or thing.

12.     The term "support or refute" means in any way supporting, confirming, verifying, proving, refuting, negating, denying, rebutting, contradicting, or challenging the stated matter, fact, or thing.

13.     The term "sent" means transmitted in any way including without limitation, hand delivery, mail, fax, courier, dropping off at a designated location, electronic transmission, or any other method by which information is communicated between one Person or entity and another.

14.     The term "received" means obtained in any way; including without limitation, hand delivery, mail, fax, courier, picking up at a designated location, electronic transmission, or any method by which information is communicated between one Person or entity and another.

## INSTRUCTIONS

1.     These instructions are subject to the definitions set forth in the preceding "Definitions" section.

2.     In providing the requested information, you are directed to provide all information you have or that is reasonably available to you including information in the possession, custody,

or control of your consultants, experts, advisors, employees, agents, associates, partners, independent contractors, associates, representatives, or present or former attorneys and their consultants or investigators. If your response to any Interrogatory is that the information is not possessed or reasonably available to you, please describe in detail the efforts you made to locate or obtain the information, together with its likely source. If any portion of any Interrogatory refers to information or Documents that you are aware of but that are not within your possession, identify each Person in possession of the information and each Document in a manner sufficient to describe such Documents for the purpose of preparing and serving a proper subpoena duces tecum and identify the name, telephone number, and address of the Person last known by you to have been in possession, custody, or control of such Documents.

3.    In these Interrogatories, Defendant seeks discovery of your computer data. Accordingly, Defendant respectfully demands that you preserve all of your electronic data related to the subject matter of these Interrogatories and maintain the layout and configuration of your computer systems until you and Defendant reach a complete agreement and understanding regarding the preservation of electronic data. You are prohibited from initiating or performing any activity that would or might result in the loss of electronic data, e.g., data compression rotation, destruction, erasure of data, either on-line or off-line, de-fragmenting any hard drives, or purging any directories related to the subject of this litigation. This notice applies to any computers within your custody or control and the custody and control of your employees, agents, and independent contractors and includes servers, personal computers, mini computers, laptop computers, notebook computers, palm computers, personal digital computers, main frames, or other equipment. You are also directed to maintain your electronic data storage devices and

media and all activity logs whether made by you, your employees, agents, independent contractors, vendors, or other Persons.

4.    To the extent an Interrogatory answer, Document Request response, or document production includes a reference to, or the production of, responsive ESI or hard copy documents, such responsive Documents should be produced as follows. Hard copy Documents must be produced in static PDF (portable data file) format clearly delineating where each Document begins and ends. Responsive ESI must be produced in searchable (not standard) PDF format. If the native ESI is converted from its native format to searchable PDF, it must be produced such that the original pagination formatting is maintained allowing the reviewer to determine where each Document begins and ends. Emails must be produced with their attachments and in a manner that maintains the parent-child relationship for email chains. With respect to responsive tangible items, once they are identified, inspection can be arranged at a mutually agreeable date and time.

5.    You are to respond to all requests with all information which you have or which is reasonably available to you, including information in the possession, custody or control of your attorneys, investigators, agents, associates, partners or representatives. If your response to any request is that the information is not possessed or reasonably available to you, please describe in detail the efforts you made to locate or obtain the information, together with its likely source.

6.    If you limit, withhold or object to providing any information for any reason of privilege, relevancy or otherwise, please describe in detail (1) the legal or procedural basis for your action, (2) the nature and extent of the limitation or withholding of the information or item, and (3) any legal authority for your action or limitation, so as to permit judicial evaluation of and

7

ruling upon the propriety of your action or limitation. Also, state the identity of the Document by providing: (1) all persons preparing and receiving such Document(s); (2) the date of such Document(s); and (3) the general subject matter of such Document(s).

7.      To the extent you elect to produce Documents rather than or in addition to responding to the Interrogatories, you are to follow the Instructions set out in Defendant's First Request for Production of Documents to Plaintiff Patrick G. Hartley, served concurrently herewith. In addition, please provide in a narrative answer any supplementary facts or information that cannot be ascertained or derived from the records and that are necessary to make your response to the Interrogatory complete and not misleading.

8.      If any Document identified in your response to any Interrogatory has been destroyed, describe the contents of the Document, the date of its destruction, and the name of the Person who authorized its destruction.

9.      Any pronoun should be construed as singular or plural and is included in the masculine, feminine or neuter to the extent necessary or appropriate to render the Interrogatory as broad and inclusive as reasonably possible.

10.     The use of the present tense includes the past tense, and the use of the past tense includes the present tense, so as to be inclusive of any information that may otherwise be excluded.

11.     These Interrogatories shall be deemed continuing in nature so that you or any Person(s) acting on your behalf shall file amended, additional or supplemental answers should different or more current information come to your attention, rendering any prior answers incomplete or inaccurate.

12.     The terms "or" and "and" are to be read in the conjunctive and disjunctive wherever they appear, and neither of these words is to be interpreted so as to limit the scope of these Interrogatories.

13.     Unless indicated otherwise, the Interrogatories below seek information from January 1, 2007, through present.

## INTERROGATORIES

1.     Identify all persons who supplied information or otherwise participated in the answering of these Interrogatories, and for each person identified, describe the nature of the participation or information provided.

2.   .   State the total amount of damages you are seeking in this case, including how those alleged damages were calculated.  Your response should include, without limitation, an itemized statement of the total amount of back pay, front pay, benefits, compensatory damages (including any purported damages for emotional distress, pain and suffering, medical and rehabilitation expenses), liquidated damages, special damages, attorneys' fees, costs, punitive damages, and any other amounts you are seeking to recover from Defendant in this case, if any, including a description of how you calculated each item of alleged damages.  ·

3.     Please identify any and all persons who are known or believed by you to have any knowledge or information which is relevant, directly or indirectly, to the claims or damages asserted in your Complaint or that you intend to assert in this action, and for each such individual, please provide a detailed description of the relevant information they possess.

4.     Identify all of your employers (whether on a full-time, part-time or contract basis) from January 1, 2000 to the present and with respect to each employer please state the dates of

9

your employment, positions held by you at each employer, your direct supervisors, your compensation, and the reason you are no longer employed by the employer.

5.     Identify all of your sources of income from January 1, 2007 through present, including, but not limited to, compensation you earned as an employee, independent contractor, principal, business owner, service provider, and/or income earned from real estate, stocks, bonds, exchange traded funds, annuities, mutual funds, interest bearing accounts, investments, or any other source.

6.     Identify all Persons with whom you have Communicated with regarding your allegations in the Complaint and the substance of each such Communication.

7.     Identify any and all personal email addresses, social networking sites (with associated user name or identification), and/or personal blogs you have used, maintained, accessed, consulted, or posted from January 1, 2007 through the present, including, but not limited to, personal e-mail accounts (*e.g.*, AOL, G-Mail, Yahoo, Hotmail, or any other private or public e-mail account), Facebook, Twitter, Myspace, Tumblr, or other similar social networking, file-sharing, social media, or similar sites, chat-rooms, or blogs whereby individuals Communicate with each other via digital means.

8.     Identify any and all Health Care Providers who have treated you for any physical or mental Health Condition from January 1, 2007 through the present and state the treatment each such Health Care Provider provided to you and the dates such treatment was provided.

9.     If you or any representative of yours has obtained or is aware of any written or recorded statement concerning, touching upon or relating to any fact or issue in this case, as to each such statement please state:  the name, address and telephone number of the person who

10

gave the statement; whether the statement was written, recorded or stenographically preserved; the date and place the statement was made; the name, address and telephone number of each person present when the statement was made; and the name, address, and telephone number of each person who has possession, custody or control of the original or any reproduction thereof.

10.     If to your knowledge, information, or belief there exists any diary, journal, notes, correspondence or other similar Document reflecting or containing observations or recollections relating to any fact or issue in this lawsuit, which Document is not fully identified elsewhere in your responses to these Interrogatories, please identify as to each such Document the author, the type of Document, when it was prepared, and the name, address, and telephone number of each person who presently has possession, custody or control of the original or any reproduction thereof.

11.     If you have previously been a party to any other lawsuit, charge, or claim to a local, state, or federal administrative agency at any time during the period of January 1, 2000 through the present, identify the following: the date and file number of each suit, charge or claim; the name by which you were then known; the court or agency in which it was brought; the names of all other parties; the proper designation of the suit or charge; whether you were the plaintiff or defendant, charging or charged party; the nature of such suit, charge, or claim; and the disposition of each such suit, charge, or claim.

12.     Identify every employee, agent, or representative of Defendant who you allege to have discriminated against you on the basis of your exercise of rights under the Family and Medical Leave Act, your sexual orientation, or any other protected characteristic.

13.    Identify and describe in detail all facts that form the basis for your claim that Defendant discriminated against you on the basis of your exercise of rights under the Family and Medical Leave Act ("FMLA"), your sexual orientation, or any other protected characteristic.

14.    Identify all compensation, pay raises, promotions, or any other benefit or opportunity for advancement that Defendant denied to you upon which you are relying for the claims asserted in the Complaint.

15.    Identify all Communications between you, your supervisors, and/or any other member of management in which you complained about Jason Cross, Keron Singh, or any other employee, representative, or agent of Defendant, and identify all Persons to whom you directed any such Communications or who participated in or witnessed any identified Communications.

16.    Identify and describe in detail all facts that form the basis for your claim that Defendant violated the Americans with Disabilities Act ("ADA"), as alleged in paragraph 28 of the Complaint.

17.    Identify and describe in detail all facts that form the basis for your claim that Defendant violated the Fair Labor Standards Act ("FLSA"), as alleged in paragraph 29 of the Complaint.

18.    Please identify and describe in detail any oral or written Communication(s) which supports, refutes, or relates to the claims asserted in your Complaint, and all witnesses to each Communication.

Respectfully submitted, this 4th day of March, 2013.

BERG HILL GREENLEAF & RUSCITTI LLP

s/ Josh A. Marks

Josh A. Marks
1712 Pearl Street
Boulder, CO 80302
Phone: (303) 402-1600
Fax: (303) 402-1601
Email: jam@bhgrlaw.com

*Attorneys for Defendant*
*Time Warner NY Cable LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of March 2013, I served the foregoing **DEFENDANT TIME WARNER NY CABLE LLC'S FIRST SET OF INTERROGATORIES TO PLAINTIFF PATRICK G. HARTLEY** to the following e-mail address,

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO  80906
patrickghartley@gmail.com

s/ Cheryl Stasiak
_____
Cheryl Stasiak

14

## Chapman, Nathan

| | |
|---|---|
| **From:** | Patrick Hartley <patrickghartley@gmail.com> |
| **Sent:** | Wednesday, April 17, 2013 12:50 PM |
| **To:** | Chapman, Nathan; Sherman, Paul; Josh A. Marks |
| **Subject:** | Correspondence Response /Answer Interrogatories Request for Production/Plaintiff's first request for production and interrogatories |
| **Attachments:** | PLAINTIFFS PRESERVATION OF EVIDENCE LETTER.doc; Plaintiffs First set of interrogatories.doc; Exhibit B - Plaintiffs Interrogatories.docx; Response to Interrogatories.docx; Response to request for production.docx; Plaintiffs Request for Documents.pages; Exhibit A Plaintiff 033113 Discovery Index.pdf |

Gentlemen,

Please consider this my response to Mr. Chapman's correspondance. If you wish to speak with me further, please contact me at any time today before 3PM Mountain Time.

My apologies for the delay. The answers and My first set of interrogatories and requests were delayed by the discovery of the spoliation of evidence. I am sending you my Answers for your First Set of Interrogatories and Requests for production of documents today. Additionally, do not instruct, request, demand, or force and employee or authorized representative to delete information relevant to this case as it is assumed once my complaint was filed with the Colorado Civil Rights Division on that you would make every effort to preserve the evidence.

In *Wm. T. Thompson Co. v. GeneralNutrition Corp.*, 593 F. Supp. 1443. 1450 (C.D. CAL 1984) the court held that even without a specific request for the documents, when a party knows or reasonably should know that a document will become important to a lawsuit, that party has a duty not to destroy that document.

Please locate and send me the email that Mr. McKitrick stated he received from an attorney. This email has also been requested in Plaintiff's request for production of documents.

Please find attached:

Plaintiff's Preservation Demand Letter
Plaintiff's Answers to Defendants First Set of Interrogatories
Plaintiff's Answers to Defendants First Set of Request for Production
Plaintiff's First set of Interrogatories on Defendant
Plaintiff's First Set of Request for Production on Defendant.
Plaintiff's Exhibit A and B for Plaintiff's First Set of Interrogatories.

If you wish to speak with me, i am available tomorrow April 18

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-964-6101
patrickghartley@gmail.com



EXHIBIT
Hartley
7
9-3-13

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 13-cv-00158-PAB-MJW

PATRICK G. HARTLEY, et al.

      Plaintiff(s),

v.

TIME WARNER NY CABLE LLC,

      Defendant(s).

**PLAINTIFF PATRICK G. HARTLEY'S ANSWERS TO DEFENDANT TIME WARNER NY CABLEL LLC'S INTEROGATORRIES**

---

1.     Patrick G. Hartley's (hereinafter "Hartley" or "Plaintiff") answers to Defendants' Interrogatories are made to the best of Hartley's present knowledge, information, and belief. Hartley, however, is continuing his discovery and investigation into the law and facts at issue in this action. Accordingly, these answers are at all times subject to such additional or different information that discovery or further investigation may disclose, and while based on the present state of Hartley's recollection, is subject to refreshing of such recollection. Hartley reserves the right to amend, modify or supplement these answers as he deems appropriate, and to make any use of, or to introduce at any hearing and at trial, information responsive to Defendants' Interrogatories but discovered subsequent to the date of these answers, including, but not limited to, any such information or documents obtained in discovery and in Hartley's investigation of this matter.

2.     Hartley will respond to each particular Interrogatory as he understands and interprets them. If Defendants subsequently assert an interpretation of an Interrogatory that differs from that of Hartley, he reserves the right to change and/or supplement his objections and/or responses.

3.     Hartley reserves all objections he could assert in any subsequent proceeding in or trial of this or any other action whatsoever concerning the competency, relevance, materiality, privilege or admissibility of Hartley's answers herein and any information provided in response to Defendants' Interrogatories.

4.      This Preliminary Statement is incorporated by reference into each and every answer below, as though set forth in full therein.

## GENERAL OBJECTIONS

1.      Each interrogatory is answered subject to the General Objections set forth below. The objections form a part of each answer, and are set forth in this manner in order to avoid the duplication of restating them. The General Objections may also be specifically referred to in the answer to certain interrogatories for purposes of clarity. However, if they fail specifically to incorporate any reference to the General Objections, such is not a waiver of the General Objection with respect to each interrogatory.

2.      Hartley objects to the Interrogatories to the extent they call for the disclosure of information, protected by the attorney-client privilege, the work-product doctrine, judicial privilege or any other privilege, protection, or immunity applicable under governing law. Hartley also objects to the provision of documents or information otherwise prepared in anticipation of litigation, or for trial. Hartley will not provide such information in response to Defendant's Interrogatories, and any inadvertent disclosure thereof shall not be deemed a waiver of any privilege or of any work product doctrine that may attach to such information.

3.      Hartley objects to the Interrogatories to the extent that they are vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence

4.      Hartley objects to the Interrogatories to the extent they seek identification of documents or items not currently in Hartley's possession, custody or control, or refer to persons, items, entities or events not known to Hartley, on the grounds that such Interrogatories seek to require more of Hartley than any obligation imposed by law, would subject Hartley to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose on Hartley an obligation to investigate or discover information or materials from third parties or services who are equally accessible to Defendants.

5.      Hartley objects to the Interrogatories to the extent that they seek information in the possession or control of other parties and/or such information is a matter of public knowledge.

6.      Hartley objects to all Interrogatories to the extent that they are vague or ambiguous as to temporal scope and/or geographic locations.

7.      Plaintiff responds to each of the Interrogatories based upon information and documentation available as of the date hereof and reserves the right to supplement and amend his response.

## HARTLEY'S ANSWERS TO DEFENDANTS INTERROGATORRIES

### 1. Answer 1:

I, Patrick Hartley, supplied all information used in answering these interrogatories. I have used my documentation, statements and emails from other class members, State and Federal law and rule books, resources like google.com and bing.com to research laws.

### 2. Answer 2:

Hartley reserves the right to amend the damages as discovery is still ongoing.

1. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i) - Retaliation Denial of Promotion Tier 1 Supervisor   2/28/12 through estimated start of trial September 2013 Before Compensation Analysis for Supervisor Position: Salary at time: $31,137.60/12months x19months= $49,301.20  Bonus Average:  $1,000.00/month x19 Months = $19,000 Total: $68,301.20 x 2 = $136,602.40.

2. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i)- Retaliation Denial of Promotion Tier 3 Supervisor   9/14/12 through estimated start of trial September 2013 Before Compensation Analysis for Supervisor Position: Salary at time: $32,383.10 Bonus Average: $1,200.00/month x12 Months = $12,000 Total: $44,383.10 x 2 = $88,766.20

3. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i)- Retaliation Demotion 9/16/12 through estimated start of tiral September 2013: Salary at time: $32,383.10. Bonus Average: $1,200.00/month Total: $46,786.10 x 2 = $93,572.20

4. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i) - Retaliation Corrective Action Preventing Internal Job transfer for 6 months ending on 8/6/13 with severance commencing place 8/16/13. 2/6/13 through estimated trial start date of September 2013: Salary at time: $37,444.10/12monthsx7months = $21,842.39.  Bonus Average:  $700/year   Total: $21,842.39 x 2 = $$43,684.78

5. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i)- Retaliation Denial of Promotion Supervisor Outbound 3/6/13 through estimated start of trial September 2013: Salary: $37,444.58/12months x 6 months x 2 = $37,444.58

6. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i)- Unpaid Leave due to episodes of Anxiety - 21 Days x $148.32 = $3,114.72 x 2 = $6,229.44

7. SOEDA CADA Violation - Denial of Promotion 2/28/12 - $10,000.00

8. FSLA Violation 29 U.S.C. § 255(a) and 29 U.S.C. § 216(b) - Unnecessary Delay on Earned Minimum Raises (Level 4 and Level 5) at $0.75 each level = $1.50 x 4160 Hours (2 Years) = $6,240.00 x 2 = $12,480.00

9. FMLA 29 U.S.C. § 2617 (a)(1)(A)(i) Retaliation Loss of Income Demotion 9/16/12 - $7,200.00/year x 2 = $14,400.00

10. ADA - The Civil Rights Act of 1991 (42 U.S.C. §1981a) under an employer of more than 500+ employees for compensatory damages - $300,000.00

11. FSLA Violation 29 U.S.C. § 255(a) and 29 U.S.C. § 216(b) – Unpaid work. Discovery(Time Stamp vs. Keystroke login) from Defendant will be needed to identify the exact damages. Mr. Hartley is expected to start taking calls the minute his shift starts; however, loading the computer and necessary systems take 7-10 minutes to load, causing Mr. Hartley to begin work early without proper compensation for this time needed to be able to take calls and perform daily job duties.

11. Total Estimated Pre Trial Damages: $748,179.60

### 3. **Answer 3:**

Plaintiff provides the following list of persons who may have discoverable information that the Plaintiff may use to support his allegations. The list is based upon information available to Plaintiff and discovery completed to date. Plaintiff's investigation is ongoing and reserves the right to supplement the list below if and when additional individuals are identified. All contact with Defendant's current and former employees should be made through and with Plaintiff.

1. Valeria Eply c/o Defendant's Counsel. Ms. Eply may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

2. Larz Wagoner. Mr. Wagoner is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations.

3. Jason Cross c/o Defendant's counsel. Mr. Cross may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

4.  Megan Mc Gowen c/o Defendant's counsel.  Mrs. Mc Gowen may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

5.  Christopher McKitrick c/o Defendant's counsel.  Mr. McKitrick may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

6.  Linda Williams c/o Defendant's counsel.  Mrs. Williams may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

7. Scott Danford c/o Defendant's counsel.  Mr. Danford may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.  He may also have relevant information regarding the employment policies and practices of the Defendant.

8. Wayne Buchanan c/o Defendant's counsel.  Mr. Buchanan may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

9. Diane Weissenfluh c/o Defendant's counsel.  Mrs. Weissenfluh may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

10. Amanda Parise c/o Defendant's counsel.  Ms. Parise may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.  He may also have relevant information regarding the employment policies and practices of the Defendant.

11. Tammy Kibler c/o Defendant's counsel.  Ms. Kibler may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.  He may also have relevant information regarding the employment policies and practices of the Defendant.

12.   Farid Jabbour c/o Defendant's counsel.   Mr. Jabbour may have information concerning Plaintiff's employment, job performance, job duties, ob assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

13. Linda Evans c/o Defendant's counsel.  Mrs. Evans may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.   She may also have relevant information regarding the employment policies and practices of the Defendant.

14.   Jeff VanHook c/o Defendant's counsel.  Mr. VanHook may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

15. Steven Chavez c/o Colorado Civil Rights Division.  Mr. Chavez may have information concerning what steps were taken to investigate Plaintiff's charge of discrimination.

16. Manuel Gonzales c/o Colorado Civil Rights Division.  Mr. Gonzales may have information concerning what steps were taken to investigate Plaintiff's charge of discrimination.

17. Katie Young.  Mrs. Young is a former employee of Defendant and may have information concerning retaliation and discrimination by Defendant supporting Plaintiffs allegations.

18. Stephanie Eddins. Mrs. Eddins is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations.

19.   Julie Van Tuil c/o Defendant's counsel.  Ms. Van Tuil may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations.

20. Gary Pullen. Mr. Pullen is a former employee of Defendant and may have information concerning actions by Defendant made unlawful by the FMLA, ADA, CADA, SOEDA, and FLSA.

21. Kevin Kuhn. Mr. Kuhn is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

22.  Sergio Alcala.  Mr. Alcala is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

23.  Dena Cannon.  Ms. Cannon is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

24.  Debbie Lowder c/o Defendant's counsel.  Mrs. Lowder may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations.

25. Shricice Washington.  Ms. Washington is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

26.  Meghan Pittman.  Ms. Pittman is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

27.  Lisa Thompson.  Ms. Thompson is a former contractor employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

28.  Therese Powers c/o Defendant's counsel.  Ms. Powers may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

29.  Isabel Cordova c/o Defendant's counsel.  Ms. Cordova may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

30.  Connie Romaine c/o Defendant's counsel.  Ms. Romaine may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

31. Christine Naze c/o Defendant's counsel. Ms. Naze may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.  He may also have relevant information regarding the employment policies and practices of the Defendant.

32. Keron Singh c/o Defendant's counsel. Mr. Singh may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.  He may also have relevant information regarding the employment policies and practices of the Defendant.

33.   James McEwen c/o Defendant's counsel.   Mr. McEwen may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

34.   Jeff Smith c/o Defendant's counsel.   Mr. Smith may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.   He may also have relevant information regarding the employment policies and practices of the Defendant.

35.   Benjamin Martin c/o Defendant's counsel.   Mr. Martin may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

36.   Cassandra Allen c/o Defendant's counsel.   Ms. Allen may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

37.   Sue Otto c/o Defendant's counsel.   Ms. ottomay have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.   He may also have relevant information regarding the employment policies and practices of the Defendant.

38.   Michele Roth c/o Defendant's counsel.   Ms. Roth may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation.   He may also have relevant information regarding the employment policies and practices of the Defendant.

39.   Becky Strickland, former HR Manager for Defendant.   Ms. Strickland may have information concerning Plaintiff's employment, job performance, job duties, job assignments, work schedule, requests for leave, and compensation. He may also have relevant information regarding the employment policies and practices of the Defendant.

40.   Patricia Marchewka c/o Defendant's counsel.   Ms. Marchewka may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

41.   William Zeller c/o Defendant's counsel.   Mr. Zeller may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

42. Steve McCarthy c/o Defendant's counsel. Mr. McCarthy may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

43. Jennifer Jones. Ms. Jones is a former employee of Defendant and may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

30. Tamera Lucero c/o Defendant's counsel. Ms. Lucero may have information concerning actions in direct violation of relevant statutes supporting Plaintiff's allegations

44. Any other witnesses identified through discovery that may have information that is relevant to the claims in this action.

4. **Answer 4:**

Hartley objects to Question 4 to the extent that it is vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence. Please see answer 5 for list of past employers and reasons for termination.

5. **Answer 5:**

1. Hartley objects to Question 5 to the extent that it is vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence.

2. Sprint Retail Sales Consultant ($10/Hour)
   a. Position Closed/Downsizing of Staff/Received Unemployment

3. ATT Retail Sales Consultant ($11/Hour)
   a. Relocated to Colorado after Father had a Stroke

4. Patrick Hartley – Private Process Server(Contract Labor/$55 )
   a. Began private process service to supplement income

5. Spring Communication – ATT 3rd Party Retail Sales Consultant(Minimum Wage)
   a. I Left because I decided to focus on my Process Serving

6. PRC – Inbound Sales ($10/hour)
   a. Found a better job and moved to Time Warner Cable.

7. Time Warner Cable ($18.54/Hour)
   a. Plaintiff is presently employed by Defendant and in fear of
      termination for participating in protected activities. Additionally,
      Plaintiff is already been advised by Defendant that his employment
      will be terminated effective 8/16/13, as Defendants are relocating
      his position to Texas.

## 6. **Answer 6:**

Hartley objects to Question 6 to the extent that they are vague, ambiguous, overly broad,
oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in
this lawsuit or reasonably calculated to lead to the discovery of admissible evidence

1. Michael Castrillo – Friend/Roommate
2. Nicole Davis – Friend/Roommate
3. LeeAnn Woods-Lineman - Friend
4. Stephen Peters – Domestic Partner
5. James Davidson – Attorney, Kept abreast of Filings
   a. Mr. Davidson has neither participated in the drafting of any part of
      this action nor represented himself as an attorney in this action.
6. Collin Earl – Attorney, Kept abreast of pleadings and filings
   a. Mr. Earl has neither participated in the drafting of any part of this
      action nor represented himself as an attorney in this action. Mr.
      Earl was kind enough to educate me on what needs to go into a civil
      complaint specifically that it had to include Jurisdiction and Venue,
      Allegations, Cause for Action, and Claim for Relief.
7. Dennis Hartley – Father/Attorney, Kept abreast of pleadings and filings
   a. My father has neither participated in the drafting of any part of this
      action nor represented himself as an attorney in this action.
      Frustratingly, my father has also declined to provide any legal
      advice or opinions on this matter in the interest of preserving the
      legal process. Additionally, he has stated that he has no knowledge
      of the laws and subjects relating to the allegations in my complaint
      and would not be able to provide adequate representation even if he
      was able to do so.
8. Stephen "Kurt" Pichon – Friend, kept abreast of Filings
9. Crystal Smith – Paralegal, assisted with formatting
10. Amanda Gordon – Friend/Paralegal
11. Deborah Coonts – Mother – kept abreast of the Filings

## 7. **Answer 7:**

1. Hartley objects to Question 7 to the extent that they are vague, ambiguous, overly broad,
   oppressive, unduly burdensome, and/or seek information that is not relevant to the issues
   in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence.

2. Hartley objects to Question 7 to the extent that they seek information in the possession or control of other parties and/or such information is a matter of public knowledge.

3. Hartley objects to Question 7 to the extent they seek identification of documents or items not currently in Hartley's possession, custody or control, or refer to persons, items, entities or events not known to Hartley, on the grounds that such Interrogatories seek to require more of Hartley than any obligation imposed by law, would subject Hartley to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose on Hartley an obligation to investigate or discover information or materials from third parties or services who are equally accessible to Defendants.

4. Email
   a. patrick.hartley@twcable.com
5. Chat Rooms/Instant Messengers
   a. Office Communicator (aka Jabber) -- used by all TWC Employees

## 8. **Answer 8:**

Hartley acknowledges that Defendants already subpoenaed Mr. Hartley's medical records. Dates and contact information for the items below can be located in the medical records subpoenaed by Defendant. This action is about Employees Utilizing their Federal and State rights and Defendants participation in prohibited activities under Federal and State Statutes. Details of Medical History are labeled as CONFIDENTIAL and/or RESTRICTD ACCESS. Plaintiff also asserts that the specifics of his medical history is irrelevant because FMLA and Short Term Disability Certifications already suffice as evidence supporting Plaintiff's need to use his Federal and State rights.

1. Dr. Stephen Barrick
   a. FMLA Certification
      i. Certification for:
         1. Chronic Sinus Infections
         2. Hemorrhoids
         3. Anxiety
   b. Treatment for:
      i. Chronic Sinus Infections
         1. Treatment includes:
            a. Medications
            b. Referral - Surgery in February 2011
      ii. Hemorrhoids
         1. Treatment includes:
            a. Medications
            b. Surgery in February 2012
      iii. Anxiety
         1. Treatment includes:

         a.  Medication

         b.  Seeing a Therapist

2. By Referral by Dr. Barrick: Dr. Baron Knox

    a.  Short Term Disability Certification

    b.  Treatment for:

        i.  Chronic Sinus Infections

           1.  Treatment includes:

               a.  Surgery in February 2011 – Dr. Barton Knox

               b.  Consult for additional Surgery for Septum issue

3. Colorado Springs Health Partners

    a.  Treatment for:

        i.  Seen for Burnt Hand Injury

        ii.  Hemorrhoids

           1.  Treatment includes:

               a.  Medication to Treat Burn

               b.  Medication to treat hemorrhoids

4. Dr. Wayne Pattillo

    a.  Treatment for:

        i.  Anxiety

           1.  Treatment includes:

               a.  Monthly Therapy Appointments

5. By Referral by Dr. Barrick: North Springs Surgical Associates: William G. Lechuga Jr., MD

    a.  Treatment for:

        i.  Hemorrhoids

        ii.  Short Term Disability

           1.  Treatment includes:

               a.  Surgery to remove left hemorrhoid

## 9. **Answer 9:**

1. Hartley objects to Question 9 to the extent that they are vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence

2. Hartley objects to Question 9 to the extent they seek identification of documents or items not currently in Hartley's possession, custody or control, or refer to persons, items, entities or events not known to Hartley, on the grounds that such Interrogatories seek to require more of Hartley than any obligation imposed by law, would subject Hartley to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose on Hartley an obligation to investigate or discover information or materials from third parties or services who are equally accessible to Defendants.

3. I, Patrick G. Hartley, Pro Se Plaintiff, have in my possession written and recorded statements. Please reference attached Discovery Index, Exhibit A. I can be reached at 719-200-8241 or 719-964-6101.   My address is 3930 Hickory Hill Drive, Colorado Springs, CO 80906. .

4. Current employees can be contacted through Defendant.   Other Contacts will be provided as needed.

10. **Answer 10:**

   1. Hartley objects to Question 10 to the extent they seek identification of documents or items not currently in Hartley's possession, custody or control, or refer to persons, items, entities or events not known to Hartley, on the grounds that such Interrogatories seek to require more of Hartley than any obligation imposed by law, would subject Hartley to unreasonable and undue annoyance, oppression, burden, and expense, and would seek to impose on Hartley an obligation to investigate or discover information or materials from third parties or services who are equally accessible to Defendants.

   2. Plaintiff refers Defendant to Exhibit A.

11. **Answer 11**:

   1. Hartley objects to Question 11 to the extent that they are vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence

   2. Plaintiff has filed Administrative Complaints with Defendant and with the Colorado Civil Rights Division.   Plaintiff was involved in a wage garnishment case, Case No.: 2012C24924. As the garnishment was entered through Defendant, Defendant should have this information already. Plaintiff refers to Exhibit A.

12. **Answer 12**:

   a. Jason Cross – Reference Exhibit A
   b. Keron Singh – Reference Exhibit A
   c. Diane Weissenflugh – Reference Exhibit A
   d. Anyone else who represents the Defendant that may have had knowledge of my allegations in this action.

13. **Answer 13**:

    1.   Please see attached Exhibit B

14. **Answer 14:**

    1.   Please see attached Exhibit B

15. **Answer 15:**

    1.   Please see attached Exhibit B

16. **Answer 16:**

    1.   Please see attached Exhibit B

17. **Answer 17:**

    1.   Please see attached Exhibit B

18. **Answer 18:**

    1.   Hartley objects to Question 18 to the extent that they are vague, ambiguous, overly broad, oppressive, unduly burdensome, and/or seek information that is not relevant to the issues in this lawsuit or reasonably calculated to lead to the discovery of admissible evidence.

    2.   Please see attached Exhibit A


**ATTACHMENTS: EXHIBITS A & B**

    1.   Discovery Index
    2.   Protected Activity vs. Retaliation

Respectfully submitted this _____ day of April, 2013.

/s/ Patrick G. Hartley

Patrick G. Hartley, Pro Se Litigant

3930 Hickory Hill Drive

Colorado Springs, CO 80906

719-200-8241

719-964-6101

patrickghartley@gmail.com

**Plaintiff's Response to Defendant's Interrogatories, paragraphs 13, 14, 15, 16, and 17.**

I, Patrick G. Hartley, swear under oath that the information below is true and correct to the best of my knowledge.

1. Plaintiff began employment with Defendant on 8/31/2009

2. PROTECTED ACTIVITY On or around May, 2010, Plaintiff burnt his had very badly. When he came to work, he informed Defendants Manager James McEwen.  James violated Plaintiffs ADA rights and advised the Plaintiff to go back to work, that "you have another hand, don't you?" Defendants Supervisor Christopher McKitrick witnessed this interaction.

3. PROTECTED ACTIVITY Plaintiff became eligible for FMLA on or about 9/1/2010.

4. PROTECTED ACTIVITY Plaintiff has utilized his right to unpaid leave under FMLA for his person health conditions and has remained correctly certified ever since.

5. RETALIATION Plaintiff experienced discriminatory comments by Defendants HR Generalist in July of 2011.  Jason Cross stated, "That's gay" when talking about professionalism while working in a supervisor position.

6. Plaintiff applied for 1 of 3 available supervisor positions between 8/1/11 through 12/1/11

7. Plaintiff was given a hard time about his application process by Defendants HR Generalist, Jason Cross

8. RETALIATION Plaintiff had been told by Defendant's Managers Keron Singh and James McEwen that his use of FMLA was being watched on or around June, 2011.

9. PROTECTED ACTIVITY Plaintiff reported retaliation and discrimination to Defendants HR Manager, Becky Strickland on 9/21/2011

10. RETALIATION Between 8/1/11 through 12/8/11, Defendants denied Plaintiff a Supervisor position and promoted 3 other candidates that were not similarly situated and had not participated in protected activities.

11. PROTECTED ACTIVITY Plaintiff reported unlawful discrimination by Defendants HR Generalist Jason Cross and Management with Defendants VP of Human Resources, Linda Williams on 12/8/11.

12. Plaintiff applied for a supervisor position on 12/9/11 as instructed to do so by Linda Williams to apply again.

13. ▓PROTECTED ACTIVITY▓ Plaintiff reported FLSA violation in delaying an earned pay raise with Defendants Manager Keron Singh

14. ▌RETALIATION▌Defendants HR Generalist, Jason Cross, interviewed Plaintiff on 1/6/12, a position for which the Plaintiff was not selected

15. ▌RETALIATION▌Defendants Manager Keron Singh made a comment to Plaintiff on 1/25/2012, "… I was just giving you a hard time about your hours"

16. ▓PROTECTED ACTIVITY▓Plaintiff filed complaint of discrimination and retaliation with Defendant's GVP Human Resources Michele Roth and Pat Berry 1/31/2012

17. ▓PROTECTED ACTIVITY▓ Plaintiff filed complaint of discrimination and retaliation with Defendant's Director of Employee Relations, Jeff VanHook. Mr. VanHook verified the statements of discrimination

18. ▓PROTECTED ACTIVITY▓5/16/12 - Defendants notified of complaint with CCRD

19. ▌RETALIATION▌9/14/12 - Applied and Interviewed for Supervisor position, but Demoted to "Lower Job Grade Vacancy"

20. ▓PROTECTED ACTIVITY▓Plaintiff received his EEOC "Right to Sue"

21. ▓PROTECTED ACTIVITY▓1/23/13 - Filed 13-CV-158

22. ▌RETALIATION▌2/6/13 – Defendants Supervisor Cassandra Allen and Defendants HR Generalist Tammy Kibler issued corrective action on the Plaintiff preventing internal job transfer for 6 months

23. ▌RETALIATION▌2/12/13 – Defendants notified Plaintiff of Severance, as Plaintiff's position is being relocated to Texas effective 8/16/13

24. ▌RETALIATION▌3/6/13 - Denied Supervisor Position

Patrick G. Hartley, Pro Se Litigant
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-964-6101
patrickghartley@gmail.com



## STATEMENT OF PATRICK G. HARTLEY, PLAINTIFF

I, Patrick G. Hartley, being duly sworn, dispose that to the best of my knowledge and ability, I verify that the following conversation happened between myself, Patrick G. Hartley, and Defendants Supervisor, Christopher McKitrick around 330 PM on April 13, 2013 outside at the bottom of the southwest stairs located at Time Warner Cable, 2221 E Bijou, Colorado Springs, CO 80909.

Patrick: hey man, hows it going?

Chris: good, how have you been?

Patrick: good, so whats been going on with you?

Chris: not much, what about you?

Patrick:  well, I've entered litigation against Time Warner Cable and I submitted your affidavit in the record.

Chris:  cool. i'm glad you kept doing this.  they told me to delete stuff about you.

Patrick: what? care to elaborate?

Chris:  i got an email telling me to delete all the information from my desktop about you.

Patrick:  oh my god, really?  what did it say?

Chris:  it told me to delete all the information from my desktop about "Patrick Hartley"

Patrick:  did you delete the information?

Chris: yes, from the desktop, but i saved it on the network drive.

Patrick:  oh chris, thank you for telling me.  can you send me a message on Facebook detailing this?

Chris:  can't they track that?

Patrick:  well, actually, when it comes to Facebook, you don't have permission to give out private messages.  if they want information from a social media site, they have to subpoena the special media site.  if someone send you a private message, only you and that person are authorized to view that message.  they'd have to subpoena them to get access to authorized users on their network.

Chris:  oh well i'll do that then.  Jason's been trying to get me to resign.

Patrick: really? how so?

Chris: he's been offering me paid time off to resign, up to 3 weeks.

Patrick: ha, that's hilarious. so he's been trying to get you to quit?

Chris: ya. he's such a fucking asshole, i hate Jason.

Patrick: man, i totally understand. that's why i brought this case, because of people like him. so do you still have the email? when did they send it?

Chris: i'm gonna have to check, it was about 4-5 weeks ago.

Patrick: wow, ok, well, cool, i gotta get back to work. if you can find that email and message me on facebook or wherever.

Chris: well cool man, keep me posted

Patrick: for sure man, i appreciate you coming forward and telling me this information, i'm gonna go document this. thanks again

Chris: sure thing, anything i can do to help you know i'm here for ya.

Patrick: Thanks

I, Patrick G. Hartley, swear that the above conversation is true and correct to the best of my knowledge and ability.

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-864-6101

Scribed and sworn before me on this __15__ day of April, 2013 by the affiant personally known to me.

Notary Public: _Anna H William_

My Commission Expires: _Feb. 22, 2017_

HARTLEY27

**Collin Earl**

| | |
|---|---|
| From: | patrick hartley [patrickghartley@gmail.com] |
| Sent: | Wednesday, October 03, 2012 5:44 PM |
| To: | Collin Earl |
| Subject: | Fwd: Rebuttal - Patrick Hartley - 8/14/2012 |
| Attachments: | Exhibit List.docx; Part 1 Rebuttal Patrick Hartley 08142012.pdf; Part 2 Rebuttal Patrick Hartley 08142012.pdf; Part 3 Rebuttal Patrick Hartley 08142012.pdf; Part 4 Rebuttal Patrick Hartley 08142012.pdf; Part 5 Rebuttal Patrick Hartley 08142012.pdf |

Collin,

Here is a copy of the rebuttal I submitted. This is what the director used to determine his no cause decision.

Enjoy!

Patrick Hartley
---------- Forwarded message ----------
From: "patrick hartley" <patrickghartley@gmail.com>
Date: Aug 14, 2012 4:41 PM
Subject: Rebuttal - Patrick Hartley - 8/14/2012
To: "Gonzales, Manuel" <Manuel.Gonzales@dora.state.co.us>
Cc: <Linda.williams@twcable.com>, <Greg.drake@twcable.com>, <gregdrake@twcable.com>

Mr. Gonzales,

Thank you so much for your courtesy extension. Please find attached my rebuttal along with all exhibits, 1-23. I have broken the Response down to five parts. They are ordered in the correct order.

Thank you for you attention in this matter,

Respectfully,

Patrick Hartley
719-200-8241



CONFIDENTIAL

1

TWC002515

**Collin Earl**

| | |
|---|---|
| From: | patrick hartley [patrickghartley@gmail.com] |
| Sent: | Monday, December 10, 2012 7:28 AM |
| To: | Collin Earl |
| Subject: | complaint |
| Attachments: | FMLA COMPLAINT 120912.doc |

let me know what you think of this.

Thanks,

Patrick Hartley

CONFIDENTIAL

1

TWC002509

**Collin Earl**

| | |
|---|---|
| From: | patrick hartley {patrickghartley@gmail.com] |
| Sent: | Sunday, December 16, 2012 12:04 PM |
| To: | xkonlegal@hotmail.com; dennis.hartley@hartleyslaw.com; Collin Earl; James Davidson |
| Subject: | Revised Complaint |
| Attachments: | FMLA COMPLAINT 120912.doc |

Hi,

Any thoughts or suggestions would be appreciated!

Patrick Hartley

CONFIDENTIAL

TWC002508

**Collin Earl**

From:          Patrick Hartley [patrickghartley@gmail.com]
Sent:          Thursday, December 27, 2012 8:14 PM
To:            Collin Earl
Subject:       Patrick's Complaint
Attachments:   FMLA COMPLAINT 120912.doc

Its only 6 pages :)

CONFIDENTIAL

12

TWC002485

**Collin Earl**

| | |
|---|---|
| From: | Patrick Hartley [patrickghartley@gmail.com] |
| Sent: | Monday, January 07, 2013 7:46 PM |
| To: | Collin Earl |
| Subject: | Please Read for me. Thanks |
| Attachments: | FMLA COMPLAINT 120912.doc |

Colin,

i'm getting ready to move forward by this weekend and would like your thoughts on what i have.  thanks man.

**CONFIDENTIAL**

11

**TWC002484**

Collin Earl

From:           Patrick Hartley [patrickghartley@gmail.com]
Sent:           Monday, April 22, 2013 10:26 AM
To:             James Davidson; Collin Earl; Crystal Smith; dennis.hartley@hartleyslaw.com
Subject:        Courtesy Copy
Attachments:    Hartley - Opposition to Class Cert.pdf

Hello Everyone,

Please find attached a courtesy copy of a court filing where you have been named in the pleading.

Thanks,

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-964-6101
patrickghartley@gmail.com

The information contained in this email communication is privileged and confidential. The information is intended only for use of the person or entity named above. If the reader of this message is not the intended recipient, any dissemination, distribution of copying of this communication is prohibited. If you have received this communication in error, please immediately notify me by telephone or e-mail.

1

CONFIDENTIAL



Desiree Bethea

 ok cool...thanx

And ill be helpful, trust.

 what is your work schedule or your days off?

Im off Monday's and tuesday. Im still waiting to hearback on the supervisor thing

 oh ok.....well maybe we can make a lunch date

For sure!

Any documentation or papers or anything like that thst you have, get it all together.

 ok I will



EXHIBIT
Hartley
31
7-3-13   mw



Desiree Bethea

 ok I will

 Thanx pimp daddy patty :)

Fo shizzy!

un at 5:07 PM

because i'm trying to make a point publically

that management is scared of me :)

 Oh ok lol

Really scared. James keron jeff and megan have defrended me

 Oh wow.... well they should be scared

Indeed



Desiree Bethea

Indeed

If you want to email me a summart of how twc handled your disabilities and health issues, how they failed to comply with federal and state law, im happy to put your story in the public record.



What's your e-mail addy? Cause it's gonna be long....

Sent from Colorado Springs

Patrickghartley@gmail.com

───── Jun 7 at 8,28 PM ─────

there are some interesting articles on my facebook page... www.facebook.com/patrickforvictims

───── Jul 17 at 17,48 PM ─────

Whats your number?

Sent 1 17 at 7.24/8 DM





☐ Suzanne Bolden

May 19 at 9 53 PM


hey, hit me up......I got fired last week

Oh no! What was the reason?


call avoidance.....said I was tellen the customers the system was down and to call back


and they said system wasn't down

Oh lord.

Retardid.

Were u on fmla?




yes, but I wasn't out on fmla..but I had an active case

Ya I figured. They dont like us fmla

 



Suzanne Bolden

You can also email me stuff you think might be relevant. Patrickghartley@gmail.com

 i need to find out who those 5 people r

 will do....

Is linda murry still there?

 i only facts, and a conversation via email between me and megan...and u can have it...

 yes...

 but u know that it..she complained to us but never would take it to upper management, or deny it, her, connie romain and Debbie venus





Suzanne Bolden

conversation..again from her nor megan has the real issue been addressed.......and how is telling the customer the system is down due to outage and not ts a 0....



u do what u want with the info...its all urs, keep me posted...thanks

That letter isnt even a determination. Its an interview summary that doesnt address what theyre doing to investigate your issue.



exactly, but there is a final determination that she sent

Can I get that too?



I sent it to ya in an email as an attachment, I'll see if I can copy and paste

write a message





🔲 Suzanne Bolden

attachment, I'll see it I can copy
and paste

Oh. Ok. Got it.

The email doesnt have the
attachment for the final decision.
Can you copy and paste it for me?
Sorry.

 yep

 on its on its way...and again, they
said they said I had aad during csg
downtime so I should've ts, we don't
ts when there is an outage and qa
said because there wasn't a popup...
it wouldn't be a popup if there was
an email sent from bridge with a list
of cities...but there ya go

───── Jul 23 at 10:19 AM ─────

 Hey my court hearing is july 31st at
8am and want u to come pn my behal





☐ Dena M. Cannon

Jan 25, 201  a  11:07 PM



Hey there Patrick, as you may know, My hubby Sergio no longer works for Time Warner Cable.......He now works for Direct TV. They unfairly fired him, but no worries......He is much happier and is even paid more with way more respect than what TWC was giving him. Anyways, with his new job he now has the ability to hook people up with friends and family deals with Directv. Can you help pass the word around for us with your contacts and neighbors.....
.Through his friends & family deal people get 140 channels for 19.99/mo with free install, no equipment to buy and no start up fees. Plus 10$ off the best monthly rate through his promo. Its pretty cool. If anyone is interested they must call: 1-877-343-2008 and give them his Employee ID: 457095
Hey, Thanks for helping. He does get commission for everyone that signs up and we can definitely use it since I am still disabled with severe



EXHIBIT
Hartley
34
9-3-13  ML



🖳 Dena M. Cannon

Its just very hard right now and lots of things are going on. I do want to get you my statement about stupid TWC.....lets try and re-plan something ok.



3:) call me 719-622-1111

n 30 at 12 27 PM

if its easier for you, you can just write me an email. patrickghartley@gmail.com



Its hard for me to write because Im on narcotics all the time. It takes forever.

lol. curse and a blessing.. lol



Im literally going through kidney failure.



and constant pain.





Dena M. Cannon

code 309.28.  I add that just in case.



Also, there is a thunder/lightening storm moving though making lights flicker on and off......power may go out...so if you try and call and its busy then just try again K.

do you have a printer?



I do, I have a fax machine as well.... if you can fax to me or email it then I can sign the statement that way.

whats ur email?



Fax number is 719-574-6233



faeryvengence@gmail.com

check your inbox





 Arent you off in a few hours anyways ??

 Hope your last few hours are better.....pissy callers are always a nuisance.....lol. I remember those days.....and funny enough, I actually miss working.

i am off i na few hours.. i get off at 530.

my car is broken so my boyfriend is having to pick me up and take me to and from work.

 shit, sorry. I know how that is.

oh well.. lol

i'm almost done redoing it







≡        👥   🖥   🌐         ⓘ

📱 Dena M. Cannon

> i'm almost done redoing it

 K...How do you want me to get it back to you ?

> fax it... jsut the 2 pages by themselvess, no cover letter. i'm the one at the fax machine

 Did you re-send it to me email?

> just re-sent it.

> print it out, sign it, keep the origional in a safe place and fax it to me at 719-457-4707

 K...reading it now.

 on # 6.....can you add that I had no previous write ups before that to my knowledge... so there was no

Write a message        



📱 Dena M. Cannon

Id follow up with an email. Lots of other people have been signing.

I have a conference call in the morning. Ill follow up as well



Ok. He sent me something. ...but I'm not sure what.

Thats probably it.

Aug 12 at 8:11 AM



Hey, the message I got from Brian Moss was this : Legal Retainer.doc-Patrick.htm
191K   View   Download



I reviewed it, but cant print right now because I have no blk ink and no-where to go and no-way to get ink since Sergio has car. But I gonna try to get the main apartment to print it and fax for me since I sent it to my email and I

## AFFIDAVIT OF SERVICE

State of Colorado                    County of El Paso

EFILED Document
CO El Paso County District Court 4D
Filing Date: Apr 26 2011  1:13PM MDT
Filing ID: 37246833
Review Clerk: Rachael Maestas

Case No.: II CV 2022  Div 19

I, Patrick G Hartley, being duly sworn, depose and say that on April 25, 2011 at 12:10 PM, I served a true and correct copy of **Summons; Complaint & Civil Cover Sheet** upon Cindy, Admin 2, Counter 9.  Service was completed at the Colorado Department of Revenue, Motor Vehicle Division, located at 1881 Pierce Street, Entrance A, Counter 9, Lakewood Colorado 80214.

I am 18 years or more and am not interested in, nor a part to, this case.

Patrick G. Hartley
Process Server
Delivered, A Courier and Process Service
1749 S. 8th Street, Suite 5
Colorado Springs, CO  80905
(719) 200-8241

STATE OF COLORADO    }
                     } ss
COUNTY OF EL PASO    }

      Subscribed and sworn to before me on the 26th day of April, 2011 by the affiant who is personally known to me.

Notary Public
My Commission Expires: 12/10/2013

EXHIBIT
Hartley
42
09-3-13  mh

TWC003114

# EXHIBIT 2

## Chapman, Nathan

| | |
|---|---|
| **From:** | Brian Moss <bmoss@theharmanfirm.com> |
| **Sent:** | Tuesday, September 10, 2013 7:01 PM |
| **To:** | Chapman, Nathan; Josh A. Marks (jam@bhgrlaw.com); Sherman, Paul |
| **Cc:** | Walker G. Harman, Jr.; Lucas Larson; Cheryl D. Stasiak; Hanaë Boughdad |
| **Subject:** | Re: Privilege Log |
| **Attachments:** | Privilege Log.pdf |

Please confirm receipt.  Thanks.

Brian M. Moss
Attorney at Law
THE HARMAN FIRM, PC
200 West 57th Street | Suite 900 | New York NY 10019
t 212.425.2600 | f 212.202.3926
bmoss@theharmanfirm.com

www.theharmanfirm.com

This message and any attached file are intended only for the person or entity to which they are addressed, and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this message or the information herein by anyone other than the intended recipient, or an agent thereof, is prohibited. If you have received this message in error, please notify us immediately.

On Tue, Sep 10, 2013 at 6:57 PM, Brian Moss <bmoss@theharmanfirm.com> wrote:
Kindly see attached.  Thank you.

Best,
Brian

Brian M. Moss
Attorney at Law
THE HARMAN FIRM, PC
200 West 57th Street | Suite 900 | New York NY 10019
t 212.425.2600 | f 212.202.3926
bmoss@theharmanfirm.com

www.theharmanfirm.com

This message and any attached file are intended only for the person or entity to which they are addressed, and may contain information that is privileged, confidential, or otherwise protected from disclosure. Dissemination, distribution, or copying of this message or the information herein by anyone other than the intended recipient, or an agent thereof, is prohibited. If you have received this message in error, please notify us immediately.

# PRIVILEGE LOG

## Hartley v Time Warner NY Cable LLC
### Case No.: 13-cv-00158-PAB-MJW

| Date | Document Type | Author(s) | Recipient(s) | Description | Privilege(s) Claimed/Basis for Withholding |
|---|---|---|---|---|---|
| 07/15/2013 9:50 a.m. | E-mail | Patrick Hartley | V. Roberts | Contact information, FLSA | Attorney-client privilege, Work product |
| 07/14/2013 1:32 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Motion to continue and response to motion to compel | Work product |
| 07/09/2013 8:53 a.m. | E-mail | Patrick Hartley | Robert Hill | Admissions | Work product |
| 07/07/2013 8:49 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Admissions | Work product |
| 06/30/2013 3:38 p.m. | E-mail | Patrick Hartley | Dena Cannon | Declaration of Dena | Work product |
| 06/30/2013 3:16 p.m. | E-mail | Patrick Hartley | Dena Cannon | Declaration of Dena | Work product |
| 06/30/2013 2:43 p.m. | E-mail | Patrick Hartley | Dena Cannon | Declaration of Dena | Work product |
| 06/21/2013 4:56 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Update on the case | Work product |
| 06/21/2013 3:54 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Update on the case | Work product |
| 06/21/2013 2:59 p.m. | E-mail | Crystal Smith-Ogle | Patrick Hartley | Update on the case | Work product |

| Date/Time | Type | From | To | Description | Privilege |
|---|---|---|---|---|---|
| 06/21/2013 1:23 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Motion letter to court | Work product |
| 06/21/2013 8:31 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Letter to judge | Work product |
| 06/21/2013 8:16 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Plaintiff response to TNY letter | Work product |
| 06/14/2013 12:58 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Update on the case | Work product |
| 06/14/2013 8:18 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Consent decree | Work product |
| 06/13/2013 3:59 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Draft joint status | Work product |
| 06/13/2013 3:13 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Joint status draft | Work product |
| 06/12/2013 9:58 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Update | Work product |
| 06/12/2013 3:32 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Consent decree | Work product |
| 06/09/2013 10:53 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Response to motion to dismiss | Work product |
| 06/09/2013 10:30 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |
| 06/09/2013 10:14 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |
| 06/09/2013 9:11 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |
| 06/09/2013 9:11 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |

| Date/Time | Type | From | To | Subject | Privilege |
|---|---|---|---|---|---|
| 06/09/2013 5:21 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Status report | Work product |
| 06/09/2013 5:19 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Status report | Work product |
| 06/09/2013 5:17 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Status update request | Work product |
| 06/09/2013 4:43 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Consent decree | Work product |
| 06/09/2013 3:32 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 3:18 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 2:42 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 2:19 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 1:59 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 1:46 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Status update request | Work product |
| 06/09/2013 12:09 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |
| 06/09/2013 12:09 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Motion for review | Work product |
| 06/09/2013 11:15 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Motion to compel | Work product |
| 06/09/2013 11:12 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |

3

| | | | | | |
|---|---|---|---|---|---|
| 06/09/2013 10:37 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Motion to compel | Work product |
| 06/01/2013 11:18 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Response to motion to dismiss | Work product |
| 05/22/2013 7:26 p.m. | E-mail | Patrick Hartley | Michael Castrillo | TWC Hartley response to First RFP TWC Hartley response to First Roggs | Work product |
| 05/20/2013 4:25 p.m. | E-mail | Crystal Smith-Ogle | Patrick Hartley | Update on the case | Work product |
| 04/08/2013 5:43 p.m. | E-mail | James Davidson | Patrick Hartley | Request for conference call | Work product |
| 04/08/2013 1:58 p.m. | E-mail | Patrick Hartley | James Davidson | Request for conference call | Work product |
| 04/07/2013 11:21 a.m. | E-mail | Patrick Hartley | James Davidson | Summary of the case | Work product |
| 04/07/2013 5:54 a.m. | E-mail | James Davidson | Patrick Hartley | Summary of the case | Work product |
| 03/24/2013 12:42 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Motion for class action | Work product |
| 03/12/2013 8:29 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Supervisor intern | Work product |
| 02/06/2013 2:41 p.m. | E-mail | Patrick Hartley | Julia Vendeland | Supervisor intern | Work product |
| 02/06/2013 2:40 p.m. | E-mail | Julia Vendeland | Julia Vendeland, Patrick Hartley | Supervisor intern | Work product |

4

| Date | Type | From | To | Subject | Privilege |
|---|---|---|---|---|---|
| 01/23/2013 3:41 p.m. | E-mail | Patrick Hartley | Julia Vendeland | Supervisor intern | Work product |
| 01/23/2013 12:02 a.m. | E-mail | Patrick Hartley | Michael Castrillo | Supervisor intern | Work product |
| 01/22/2013 3:53 p.m. | E-mail | Michael Castrillo | Patrick Hartley | Complaint | Work product |
| 01/16/2013 2:58 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Complaint | Work product |
| 01/16/2013 1:17 p.m. | E-mail | Crystal Smith-Ogle | Patrick Hartley | Complaint | Work product |
| 01/11/2013 12:34 p.m. | E-mail | Patrick Hartley | Crystal Smith-Ogle | Complaint | Work product |
| 01/11/2013 12:30 p.m. | E-mail | Crystal Smith-Ogle | Patrick Hartley | Complaint | Work product |
| 01/11/2013 12:29 p.m. | E-mail | Patrick Hartley | Crystal Smith-Ogle | Complaint | Work product |
| 01/07/2013 7:13 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 01/07/2013 7:13 p.m. | E-mail | Patrick Hartley | Michael Castrillo | Complaint | Work product |
| 01/04/2013 4:21 p.m. | E-mail | Patrick Hartley | Crystal Smith-Ogle | Complaint | Work product |
| 01/04/2013 3:35 p.m. | E-mail | Crystal Smith-Ogle | Patrick Hartley | Complaint | Work product |
| 12/16/2012 11:54 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 12/16/2012 11.03 p.m. | E-mail | Patrick Hartley | XKon Legal, Dennis Hartley, Colling Earl, James Davidson | FMLA complaint | Work product |

| | | | | | |
|---|---|---|---|---|---|
| 12/16/2012 12:49 p.m. | E-mail | Patrick Hartley | Hhothead79@gmail.com | FMLA complaint | Work product |
| 12/16/2012 12:35 p.m. | E-mail | Patrick Hartley | Hhothead79@gmail.com | FMLA complaint | Work product |
| 12/16/2012 12:04 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 12/10/2012 5:18 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 12/10/2012 8:23 a.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 12/09/2012 1:00 p.m. | E-mail | Patrick Hartley | James Davidson | FMLA complaint | Work product |
| 12/09/2012 12:50 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint | Work product |
| 11/18/2012 2:17 p.m. | E-mail | Patrick Hartley | Patrick Hartley, Michael Castrillo | FMLA complaint | Work product |
| 11/09/2012 2:12 p.m. | E-mail | James Davidson | Patrick Hartley | Request for a conference call | Attorney-client privilege Work product |
| 11/09/2012 11:40 a.m. | E-mail | Patrick Hartley | James Davidson | Request for a conference call | Attorney-client privilege Work product |
| 11/09/2012 9:31 a.m. | E-mail | James Davidson | Patrick Hartley | Request for a conference call | Attorney-client privilege Work product |
| 11/06/2012 8:11 a.m. | E-mail | James Davidson | Patrick Hartley | Request for a conference call | Attorney-client privilege Work product |
| 11/02/2012 6:07 p.m. | E-mail | Patrick Hartley | James Davidson | Request for a conference call | Attorney-client privilege Work product |
| 11/02/2012 5:57 p.m. | E-mail | James Davidson | Patrick Hartley | Request for a conference call | Attorney-client privilege Work product |

| | | | | |
|---|---|---|---|---|
| 10/26/2012 9:31 a.m. | E-mail | Patrick Hartley | James Davidson | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 10/21/2012 4:32 p.m. | E-mail | Patrick Hartley | Casey Medack | Patrick Hartley rebuttal | Work product |
| 10/03/2012 5:44 p.m. | E-mail | Patrick Hartley | Collin Earl | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 09/12/2012 10:17 a.m. | E-mail | Patrick Hartley | XKon Legal | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 09/05/2012 4:36 p.m. | E-mail | Esther Abramson | Patrick Hartley | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 09/05/2012 3:46 p.m. | E-mail | Patrick Hartley | Esther Abramson | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 08/31/2012 8:50 a.m. | E-mail | Patrick Hartley | Hollie L. Wieland | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 08/31/2012 8:38 a.m. | E-mail | Patrick Hartley | Sarah McClenahan | Exhibit list, Patrick Hartley rebuttal | Attorney-client privilege Work product |
| 03/29/2012 5:09 p.m. | E-mail | Patrick Hartley | Sarah McClenahan | Time Warner signed response | Attorney-client privilege Work product |
| 03/29/2012 1:50 p.m. | E-mail | Patrick Hartley | Dennis Hartley | Time Warner signed response | Attorney-client privilege Work product |
| 03/29/2012 1:19 p.m. | E-mail | Sarah McClenahan | Patrick Hartley | Time Warner signed response | Attorney-client privilege Work product |
| 03/29/2012 12:58 p.m. | E-mail | Patrick Hartley | Sarah McClenahan | Time Warner signed response | Attorney-client privilege Work product |
| 01/22/2012 10:44 p.m. | E-mail | Patrick Hartley | Michael Castrillo | FMLA complaint draft | Work product |

7

## CERTIFICATE OF SERVICE

I hereby certify that on September 13, 2013, a true and correct copy of the foregoing

**DECLARATION OF NATHAN D. CHAPMAN IN SUPPORT OF DEFENDANT TIME**

**WARNER NY CABLE LLC'S REPLY IN SUPPORT OF MOTION TO COMPEL AND**

**FOR ATTORNEYS' FEES** was e-served upon the following via ECF/PACER:

      Walker G. Harman , Jr.
      THE HARMAN FIRM, P.C.
      200 West 57th Street, Suite 900
      New York, NY 10123

                            *s/ Nathan D. Chapman*
                            Nathan D. Chapman