IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No.: 13-cv-00158-RM-MJW

PATRICK HARTLEY,

    Plaintiff,

v.

TIME WARNER NY CABLE LLC,

    Defendant.

---

DEFENDANT TIME WARNER NY CABLE LLC'S RESPONSE IN
OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SCHEDULING
ORDER AND TO FILE A SECOND AMENDED COMPLAINT

---

## I.    INTRODUCTION

This Court should deny Plaintiff's untimely request to reinvent this litigation by adding (1) claims that he was aware of before he initiated this lawsuit and (2) factual allegations that he admits are **<u>patently false</u>**. For example, Plaintiff seeks to add a new claim under the Fair Labor Standards Act ("FLSA") based on his allegation that he was "never paid overtime." [D.E. 73-1 ¶ 14.] During his deposition, however, Plaintiff admitted this allegation is false:

> Q: And you were paid overtime while you were employed by Time Warner Cable, right?
> A: On occasion.
> Q: **So if somebody said that you were never paid overtime, that would be a false** statement**, correct?**
> A: Correct**.**

(Transcript of Deposition of Patrick G. Hartley ("Hartley Tr.") at 50:9-15.)[1]

Moreover, Plaintiff's Motion to Amend should also be denied because he cannot establish the "good cause" required by Rule 16(b) for his failure to comply with the Court-ordered deadline

---

[1] Excerpts of the transcript and relevant portions of supporting exhibits to the deposition of Plaintiff Hartley are attached as Exhibit 3 to the Declaration of Nathan D. Chapman ("Chapman Decl."), attached hereto as Exhibit A.

for amendments to the pleadings.. That is, pursuant to Rule 16(b), Plaintiff must show that he acted diligently and yet could not have amended his complaint by the Court's April 15 deadline for amending pleadings. Plaintiff cannot make that showing, as he was well aware of the factual basis for all but one of his new claims **before he even filed this lawsuit.** The only exception is Plaintiff's claim related to the termination of his employment, an event which Plaintiff admits he became aware of on February 12, 2013, **over two months** before the deadline to move for leave to amend. Given that Plaintiff was aware of the facts supporting his new proposed claims before the deadline to amend pleadings expired yet did not file a timely motion for leave to amend, he cannot show the "good cause" required by Rule 16(b).

Even assuming *arguendo* that Plaintiff could show "good cause" for his untimely amendment, Plaintiff's Motion should still be denied because he cannot meet the requirements of Rule 15(a). First, Plaintiff has unduly delayed in seeking leave to amend—filing the instant motion many months after he was aware of the basis for his proposed amendments and six weeks after he obtained counsel. Second, Plaintiff's amendment smacks of bad faith, as he waited until just before the close of discovery to assert claims he was fully aware of from the outset of litigation and asserts an FLSA claim predicated on blatant misrepresentations. Third, because discovery is now closed and dispositive motions are due September 30, 2013, ten days after this filing, TNY would be significantly prejudiced if Plaintiff were allowed to reinvent this litigation at this stage. Fourth, Plaintiff's attempt to re-file a time-barred sexual-orientation-discrimination claim is futile, as he asserts: (1) a claim he dismissed with prejudice just three weeks ago; and (2) claims that are not legally cognizable and preempted by the Colorado Anti-Discrimination Act ("CADA").

Because there are no legitimate grounds to grant Plaintiff's belated Motion, Plaintiff argues that his Motion should be granted because he was proceeding *pro se*. Assuming for the moment

2

that Plaintiff's claim of *pro se* status was genuine, and it was not,[2] any leniency provided to him based on that status "is intended merely to overlook technical formatting errors and other defects in . . . legal terminology and proper English."[3] *Pro se* status does not, however, relieve Plaintiff of "the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law."[4] Rather, Plaintiff is held to the "same standard as counsel licensed to practice law before the bar of this Court."[5]

For all of these reasons, Plaintiff cannot show "good cause" for his untimely amendment under Rule 16(a), nor can he meet Rule 15(a)'s requirements for amending his Complaint. Accordingly, Plaintiff's Motion to Amend must be denied.

## II.     RELEVANT FACTUAL BACKGROUND

**A.     Procedural Background.**

Plaintiff filed his initial Complaint on January 23, 2013 alleging: 1) Family and Medical Leave Act ("FMLA") retaliation; and 2) a CADA claim based on Plaintiff's sexual orientation.

---

[2] As discussed *infra*, discovery has revealed that Plaintiff should not be treated as *pro se* because his level of legal sophistication is far greater than he pretends and he regularly communicated with lawyers about his lawsuit both before and during the pendency of the suit. For example, **before filing his initial complaint**, Plaintiff solicited other employees to join this lawsuit, promising that he would "not leave anyone behind" and noting that they knew what he meant when he used the phrase "and others similarly situated." (Hartley Tr. at 260:22-261:4 & Ex. 30.) Yet, at the March 21, 2013 scheduling conference with the Court, Plaintiff feigned ignorance:

> THE COURT:      Okay. So, you're not seeking to certify a class under Federal Rule of Civil Procedure Rule 23; is that correct?
>
> MR. HARTLEY:    At this time, Your Honor, I'm not familiar with that rule off the top of my head. I apologize.

[D.E. 44 at 18:1-6.] Eight days later, however, Plaintiff filed a motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure. Additionally, Plaintiff submitted a sham privilege log on September 10, 2013, reflecting numerous e-mail exchanges with at least three attorneys throughout this litigation. [*See* D.E. 78.] This is further evidence of Plaintiff's bad faith.

[3] *Felix v. City & Cnty. of Denver*, 729 F. Supp. 2d 1243, 1246 n.1 (D. Colo. 2010) *opinion adhered to on reconsideration,* 08-CV-02228-MSK-KMT, 2011 WL 1085766 (D. Colo. Mar. 24, 2011) *aff'd,* 450 Fed. App'x 702 (10th Cir. 2011) and *aff'd,* 450 Fed. App'x 702 (10th Cir. 2011).

[4] *Id.*

[5] *Id.; see also Rolland v. Primesource Staffing, LLC*, 457 F. Supp. 2d 1221, 1228 (D. Colo. 2006) (Watanabe, J.) *aff'd,* 257 Fed. App'x 68 (10th Cir. 2007) (denying *pro se* plaintiff's motion to amend after deadline.)

[D.E. 1; D.E. 15.][6] On February 28, 2013, the parties held a scheduling conference pursuant to Rule 26(f). The parties then submitted a proposed scheduling order on March 14, 2013. [D.E. 21.] In that filing, Plaintiff described his claims as (1) violation of the FMLA based on TNY withholding Plaintiff's pay raises, failing to promote Plaintiff, and demoting Plaintiff; and (2) violation of CADA based on denied promotions and delayed pay raises due to Plaintiff's sexual orientation. [D.E. 21 at 2-3.] Entirely absent from Plaintiff's Complaint and the proposed scheduling order was any mention of off-the-clock work, unpaid overtime or retaliatory discharge. *Id.*[7]

Following a scheduling conference on March 21, 2013, the Court entered a scheduling order that set an April 15, 2013 deadline to move for leave to amend the pleadings, an August 30, 2013 deadline to complete discovery, and a September 30, 2013 deadline to file dispositive motions. [D.E. 23.] On April 17, 2013, two days **after** the deadline to amend had passed, Plaintiff served written discovery on TNY. (Chapman Decl. ¶ 4.) Plaintiff has not taken any other discovery.

On July 18, 2013, TNY's counsel received a letter from attorney Walker Harman stating that Plaintiff had retained him as counsel. (Chapman Decl., Ex. 1.) Approximately one month later, on August 13, 2013, the Court held a scheduling conference during which Plaintiff's counsel refused to present Plaintiff for his noticed deposition on August 22, 2013, or any date in August, despite the August 30 discovery deadline. (August 13, 2013 Hearing Transcript ("August Tr.") at 12-14.)[8] The Court accommodated Plaintiff by extending discovery for the limited purpose of depositions until September 3, 2013. (*Id.* at 15.) Additionally, at the hearing, Plaintiff's counsel alluded to the fact that he was considering filing a motion to amend the Complaint, but did not offer a date certain for

---

[6] Plaintiff filed an amended complaint to substitute proper party defendant on January 30, 2013. [D.E. 15.] The operative complaint is thus the First Amended Complaint ("FAC").

[7] Plaintiff's only mention of the FLSA was a reference to the statute in his damages calculation based on "unnecessary delay on earned minimum raises." [D.E. 21 at 5 (item No. 9).]

[8] True and correct excerpts of the August Hearing Transcript are attached as Exhibit 2 to the Chapman Declaration.

4

filing. (*Id.* at 3.) The Court ordered Plaintiff to file any motion to amend by August 27, 2013. (*Id* at 10.) On August 27, 2013, Plaintiff filed the pending motion.

**B.**     **Plaintiff Was Aware of the Basis for His New Claims at the Outset of This Litigation.**

    1.     *Count One of the Proposed SAC:  FLSA Overtime Violation*.

Plaintiff's proposed Second Amended Complaint ("SAC") includes a new FLSA claim based on alleged unpaid overtime for time Plaintiff claims he spent booting up his computer before the start of his shift. [D.E. 73-1 at ¶¶ 14-18, 36-41.] While Plaintiff's Motion indicates that the SAC merely seeks to "clarify" his FLSA claim, Plaintiff admitted in his deposition that an overtime claim was not included in his First Amended Complaint:

> Q:     **Can you please tell me where it says that plaintiff worked off the clock?**
> A:     **I cannot.**
> Q:     Okay.  It does not say that, does it?
> A:     No.
> Q:     **Okay.  And can you show me in the complaint where it says that the defendant failed to pay you overtime?**
> A:     **No.**

(Hartley Tr. 38:18-39:1) (emphasis added).  In fact, Plaintiff admitted that his only *purported* FLSA claim in the operative complaint was a claim of delayed pay raises.  (Hartley Tr. 39:5-12.)

Plaintiff also admitted he was aware of the facts underlying his proposed new FLSA claim from the outset of this litigation, het he chose not to include that claim in his operative Complaint:

> Q:     . . . And you were aware of [unpaid overtime claim under the Fair Labor Standards Act] at the time you filed this complaint?
> A:     **I was, but I did not put it in the complaint.**

(Hartley Tr. 39:18-21 (emphasis added).)

2.  *Count Two of the Proposed SAC:  FMLA Retaliation.*

The operative complaint purports to allege a claim for FMLA retaliation based on denied promotions and delayed pay raises. [D.E. 15.] Plaintiff's proposed SAC adds entirely new claims that "the team he was supervising was taken away from him," and that TNY "scrutinizes" employees who take FMLA leave "more carefully than other employees." [D.E. 73-1 ¶¶ 20, 22-25.] In support of the latter claim, Plaintiff submits a declaration executed by Sergio Alcala. [D.E. 73-1 ¶ 20; 73-1 at p. 14.] Plaintiff has long been aware these purported facts, having listed Mr. Alcala as a witness **nearly six months ago** in the March 14, 2013 proposed Scheduling Order. [D.E. 21 at 11.][9] Moreover, Plaintiff admits that he and Mr. Alcala were discussing these purported FMLA issues as early as November 2012. (Hartley Tr. 252:11-22 & Ex. 28.)

3.  *Count Three of the Proposed SAC:  Retaliation For Filing This Action.*

Plaintiff also seeks to add a new claims alleging unlawful retaliation for filing this lawsuit under the FMLA and FLSA. Plaintiff alleges that he learned on February 12, 2013 -- *two months before the April 15 amendment deadline* -- that his employment with TNY would be terminated on or about August 16, 2013. [D.E. 73-1 ¶ 32, 53.] After this announcement, Plaintiff alleges he applied for ten call center positions, but did not receive any offers for these positions. [D.E. 73-1 ¶¶ 33, 54.] Plaintiff does not allege that he applied for these positions after the April 15 deadline. [*Id.*]

4.  *Counts Four and Five of the Proposed SAC: Failure to Promote and Wrongful Discharge in Violation of Public Policy and C.R.S. § 24-34-402.5.*

Plaintiff seeks leave to add state law wrongful discharge and failure to promote claims based on his allegation that he was denied promotions and terminated because of his sexual orientation in violation of Colorado public policy and C.R.S. § 24-34-402.5 (hereinafter "Section 402.5"). These claims are based on facts identical to those underlying Plaintiff's previous CADA claim, which

---

[9] In a typographical error, Alcala is referred to as "Sergio Alacanta" on the witness list. [D.E. 21 at 11 (witness no. 9).]

6

Plaintiff voluntarily dismissed from this action with prejudice just three weeks ago. [*See* D.E. 73 at 5; D.E. 72.] Thus, Plaintiff was obviously aware of these facts well before the deadline to amend pleadings expired in April.

### III. ARGUMENT AND CITATION TO AUTHORITY

A. **Plaintiff Must Satisfy Both the Rule 16 Good Cause Standard and the Rule 15 Requirements For Leave to Amend the Complaint.**

When a motion for leave to amend the pleadings is filed after the deadline set forth in the Court's scheduling order, the Court applies a two-step analysis. First, Plaintiff must satisfy Rule 16(b)'s rigorous "good cause" standard for seeking modification of the scheduling order deadline. *Colo. Visionary Aca. v. Medtronic, Inc.,* 194 F.R.D. 684, 687 (D. Col. 2000). If Plaintiff can establish "good cause," he then must also satisfy the requirements of Rule 15(a). *Id.*

This Court's March 21 Scheduling Order required any motion to amend the pleadings to be filed on or before April 15, 2013. [D.E. 23 at 9, 14.] Nevertheless, Plaintiff waited until August 27, 2013 to move for leave to amend the Complaint – **over four months** after the deadline set in the Scheduling Order. Accordingly, because Plaintiff seeks leave to amend the FAC after the deadline set in the Scheduling Order, he must satisfy **both** the "good cause" standard under Rule 16(b) and the requirements of Rule 15(a). *See, e.g., Marona Photography, Inc., v. Los Altos Boots, Inc.*, No. 12-CV-00163-WYD-MJW, 2012 WL 5631667, at *1 (D. Colo. Nov. 15, 2012) (Watanabe, J.) (employing two-step analysis under both Rule 16 and 15(a) when motion to amend filed after scheduling order deadline); *see also Sosa v. Airprint Sys., Inc.*, 133 F.3d 1417, 1419 (11th Cir. 1998) (only considering Rule 15(a) "would render scheduling orders meaningless and effectively would read Rule 16(b) and its good cause requirement out of the Federal Rules of Civil Procedure"). Plaintiff can satisfy neither Rule.

B.      **Plaintiff Cannot Satisfy the "Good Cause" Standard Under Rule 16(b).**

The Rule 16(b) "good cause" standard focuses on the diligence of the party seeking amendment. *Colo. Visionary Aca.,* 194 F.R.D. at 687. "Rule 16 erects a more stringent standard [than Rule 15(a)], requiring some persuasive reason as to why the amendment could not have been effected within the time frame established by the court." *Id.* Hence, Rule 16(b) does not focus on the bad faith of the movant or the prejudice to the opposing party. *Id.* Rather, it focuses on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment. *Id.* As a matter of law, a party has not exercised diligence when he omits allegations he was aware of before the amendment deadline. *Strope v. Collins*, 315 Fed. App'x 57, 61-62 (10th Cir. 2009) (denying *pro se* plaintiff's motion to amend). Here, Plaintiff's Motion must be denied because he was aware of **all** of the facts underlying his new claims long before the deadline for motions to amend the pleadings.

      1.     *Plaintiff cannot show "good cause" because he was aware of the facts underlying his new FLSA overtime claim before he brought this lawsuit*.

Plaintiff's new FLSA claim is based on the false allegation that Plaintiff was "never" paid overtime for time he claims to have spent booting up his computer before his shift. [D.E. 73-1 ¶¶ 14-18, 36-41.] Plaintiff admitted in his deposition, however, that he was, in fact, paid overtime and that he was aware of **all** of the facts underlying this frivolous claim before he filed this action; he simply did not include them in his original filing. (Hartley Tr. at 38:18-39:1; 39:18-21; 42:21-43:1 (Plaintiff believed he had not been paid overtime before the April 15 amendment deadline); 46:7-9 (same before January 2013); 50:9-15 (admitting received overtime).)

Even if the Court considered allowing Plaintiff to add allegations that are demonstrably false, Plaintiff has not exercised diligence as a matter of law. Indeed, Plaintiff's delay in seeking to

amend his Complaint precludes a finding of good cause under Rule 16, as it runs afoul of the rule that a party must show some persuasive reason as to why the amendment could not have been effected within the time frame established by the court. *See Marona Photography, Inc.*, 2012 WL 5631667, at *1-2 (no good cause where plaintiff moved to amend three months after deadline and was either aware of facts underlying new claims at time filed complaint or would have become aware of facts before deadline had he exercised diligence). Here, Plaintiff has not even attempted to provide the Court with a reason, let alone good reason, for his delay. Instead, Plaintiff relies exclusively on the irrelevant argument that his former *pro se* status should excuse his failures. *See Felix*, 729 F. Supp. 2d at 1246 n.1; *Primesource Staffing, LLC*, 457 F. Supp. 2d at 1228. Accordingly, Plaintiff's Motion to Amend should be denied.

2. *Plaintiff was aware of the facts underlying his new FMLA claims before he brought this lawsuit*.

Plaintiff also seeks leave to add new claims for violation of the FMLA based on allegations that "the team he was supervising was taken away," and that "supervisors more closely scrutinized employees who took FMLA leave." [D.E. 73-1 ¶¶ 20, 22-25.] However, Plaintiff alleges that his "team" was "taken away" in September 2011, **over a year before Plaintiff initiated this action**. [D.E. 73-1 ¶¶ 24-25.] Similarly, Plaintiff's new FMLA claim that "supervisors more closely scrutinized employees who took FMLA leave" is based on information received from Sergio Alcala at least three months before he filed his complaint. [D.E. 73-1 ¶ 20; Hartley Tr. at 252:11-22 & Ex. 28; D.E. 21 at 11.] Thus, it is undisputed that Plaintiff was aware of the facts underlying his new FMLA claim well in advance of the April deadline to amend. Again, Plaintiff's lack of diligence destroys any possible showing of "good cause."

Plaintiff also claims that he was denied job positions after learning his position was eliminated, and that all other employees either received a job offer at TNY or chose employment at another company. [D.E. ¶¶ 33-35.] However, Plaintiff has not alleged any facts indicating he applied for these positions after the April 15 amendment deadline; nor does he contend that he was unaware of the basis for this claim before the amendment deadline. Further, Plaintiff's allegation that some of his colleagues successfully found employment at another company is irrelevant to Plaintiff's allegations of retaliation by TNY. Because Plaintiff fails to show good cause as to why he did not bring these claims in a timely manner, his motion to add these claims should be denied. *See Strope*, 315 Fed. App'x at 61-62 (denying motion to amend).

    3.    *Plaintiff was aware of the facts underlying his new claims for violation of Colorado Public Policy and Section 402.5 well before the deadline to amend.*

Plaintiff seeks leave to add new state law claims for denied promotions and wrongful discharge in violation of Colorado public policy and Section 402.5 based on his sexual orientation. [D.E. 73-1 at 57-67.] Plaintiff admits, however, that the facts and circumstances giving rise to these claims "involve similar, if not the same, proof and defenses" as the time-barred CADA claim Plaintiff voluntarily dismissed with prejudice only three weeks ago. [D.E. 73 at 5; *see also* D.E. 45.] Additionally, Plaintiff knew as early as February 12, 2013 his position with TNY would end on August 16, 2013. [D.E. 73-1 ¶¶ 32, 53.] As Plaintiff was on notice in February 2013 that his position would be eliminated, his attempt to add his wrongful discharge claim seven months later, without providing notice to TNY of his intention to add this claim, is prejudicial and untimely. For all of these reasons, Plaintiff cannot show that he acted with diligence with respect to any of his new proposed claims, all of which could have been raised with the Court prior to April 15, 2013 as

required to establish good cause under Rule 16. *Colo. Visionary Aca.,* 194 F.R.D. at 687. Plaintiff's Motion to Amend must therefore be denied.

C. **Plaintiff's Motion to Amend Also Fails Under Rule 15.**

Plaintiff also cannot meet the Rule 15(a) requirements for leave to amend, under which courts consider: 1) whether the request is unduly and inexplicably delayed; 2) whether the request is offered in good faith; 3) whether the party had sufficient opportunity to state a claim and failed; and 4) whether the amendment will result in undue prejudice. *Las Vegas Ice & Cold Storage Co.*, 893 F.2d 1182, 1185 (10th Cir. 1990). Further, as the Tenth Circuit has held, "**[u]ntimeliness alone may be a sufficient basis for denial of leave to amend . . . [P]rejudice to the opposing party need not also be shown.**" *Id.* (emphasis added)*; Durham v. Xerox Corp.*, 18 F.3d 836, 840-41 (10th Cir. 1994). Plaintiff's proposed amendment is untimely, in bad faith, prejudicial to TNY, and futile, and should therefore be denied under Rule 15(a).

    1. *Plaintiff's New Claims Are Untimely.*

As discussed above, Plaintiff knew all of the facts underlying his proposed new claims **before he filed his initial complaint** and, with respect to the facts related to the termination of his employment, before the deadline for motions to amend the pleadings. Standing alone, this is grounds for denial of Plaintiff's Motion to Amend. *See Las Vegas Ice & Cold Storage Co.*, 893 F.2d at 1185 (affirming denial of motion to amend pursuant to Rule 15 where factual basis of amendment was known at time complaint was filed); *Durham*, 18 F.3d at 840-41 (denying motion to amend complaint to add additional claim three months after scheduling order deadline).

    2. *Plaintiff's Delay Establishes Bad Faith.*

Plaintiff's delay is more than simple inaction, it is bad faith. Plaintiff knew the factual basis underlying his new claims during the entirety of this litigation and elected to sit on them until a

mere **three days** before the close of discovery. There is simply no question that adding five new claims at the end of discovery with dispositive motions due a mere ten days after TNY's opposition to this Motion is due shows bad faith on Plaintiff's part. *See Ferguson v. Roberts*, 11 F.3d 696, 706 (7th Cir. 1993) (request to amend complaint made in bad faith as timing of request suggested it was designed to postpone trial); *Wimm v. Jack Eckerd Corp.*, 3 F.3d 137, 140 (5th Cir. 1993) (request to add claims nine months after filing and at eve of dispositive motion practice made in bad faith).

3. *Plaintiff's Request to Amend is Prejudicial to TNY.*

Plaintiff's untimely amendment would significantly prejudice TNY. Discovery is now closed, and dispositive motions are due September 30. Were the Court to allow Plaintiff's new claims, TNY would have to re-litigate this matter with respect to claims that Plaintiff chose not to allege at the outset, claims that are demonstrably false, and claims that are preempted by CADA. For example, Plaintiff could have asserted his wrongful discharge theory in February, when he learned that his position was being eliminated. Instead, Plaintiff waited until discovery was nearly over to notify TNY of this claim, depriving TNY of the opportunity to take discovery on this issue. *See Farricker v. Penson Dev'p. Inc.*, 513 Fed. App'x 46, 48-49 (2d Cir. 2013) (denial of motion to amend proper as defendant would be prejudiced by expending additional time and expense to respond to claim that should have been included in initial complaint).

4. *Plaintiff's Public Policy, § 402.5, and FLSA Retaliation Claims Are Futile.*

Plaintiff's request for leave to add new state law claims for violation of Section 402.5 and Colorado public policy based on denied promotions and wrongful discharge should be denied because it is futile. First, Plaintiff's failure to promote claim under Section 402.5 is futile because the only actionable adverse action under the statute is termination of employment. *See* Colo. Rev. Stat. Ann. § 24-34-402.5 ("[i]t shall be a discriminatory or unfair employment practice for an

employer to **terminate** the employment of any employee . . .") (emphasis added); *see also Anderson v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 521 F.3d 1278, 1288 (10th Cir. 2008) (affirming denial of motion to add non-cognizable claim as futile).

Additionally, Plaintiff's claim that TNY denied him promotions and terminated his employment "because he is gay" in violation of Colorado Public Policy and C.R.S. § 402.5 is preempted by CADA. [D.E. 73-1 ¶ 59.] Specifically, the public policy exception to at-will employment is not cognizable as a matter of law when the underlying facts would state a claim under CADA. *Smith v. Colo. Interstate Gas Co.*, 777 F. Supp. 854, 858 (D. Colo. 1991) (granting motion to dismiss where CADA provides remedy for wrongful discharge claim); *Gatuma v. Encore Elec., Inc.,* No. 12-cv-01611, 2012 WL 5354935, at *3, 5 (D. Colo. Sept. 21, 2012) (granting Rule 12 (b)(6) motion to dismiss wrongful discharge claim barred by CADA and noting "for practical purposes, a claim for wrongful discharge predicated on a public policy of non-discrimination is indistinguishable from a statutory CADA claim of discrimination").[10] Plaintiff's claim necessarily implicates CADA, which bars discrimination on the basis of sexual orientation and establishes the exclusive remedy for such claims. *See, e.g.,* Colo. Rev. Stat. § 24-34-402. Indeed, Plaintiff's initial Complaint included a time-barred discrimination claim under CADA, which Plaintiff dismissed with prejudice. [*See* D.E. 71-72.] Thus, Plaintiff's public policy claim is nothing more than an improper attempt to end-run CADA's comprehensive remedial scheme and reinstate a time-barred discrimination claim. Because CADA preempts such claims, Plaintiff's proposed amendment would be futile and therefore should be denied. *See Endahl v. Vinnell Corp.,* No. 04-cv-00429-

---

[10] *See also Ferris v. Bakery, Confectionery, and Tobacco Union, Local 26*, 867 P.2d 38, 45 (Colo. Ct. App. 1993) (holding that CADA creates a comprehensive remedial scheme to deal with unlawful discrimination in employment); *Gamble v. Levitz Furn. Co.*, 759 P.2d 761, 766 (Colo. Ct. App. 1988) (public policy claim based on wrongful discharge barred by CADA); *Smith*, 777 F. Supp. at 858 (same); *Novey v. Heartland Fin., Inc.*, No. 06-cv-00031, 2008 WL 687361, at *1 n.2 (D. Colo. Mar. 11, 2008) (wrongful discharge claim barred by CADA).

MSK-PAC, 2006 WL 57496, at *10 & n. 5 (D. Col. Jan. 10, 2006) (CADA preempted public policy claim despite plaintiff's failure to allege CADA; "[t]o hold otherwise would permit the employee **to avoid any statutorily-created limitation on the remedy** by surrendering the statutory claim and suing in tort.") (emphasis added).

Finally, Plaintiff's FLSA retaliation claim is futile. Plaintiff asserted the FLSA claims for the first time on August 27, 2013. [D.E. 73.] Yet, he claims actions pre-dating this filing were retaliatory. By definition, such activities could not have been in retaliation to claims not yet filed.

     5.    *Plaintiff's Alleged Pro Se Status is Irrelevant*.

Recognizing that the proposed amendment fails to satisfy both the requirements of Rule 16(b) and Rule 15(a), Plaintiff asks this Court to excuse his dilatory conduct because he was proceeding *pro se* at the time he filed the operative Complaint. As this Court has repeatedly held, however, any leniency provided to a *pro se* plaintiff "is intended merely to overlook technical formatting errors and other defects in . . . legal terminology and proper English." It does not relieve Plaintiff of "the duty to comply with the various rules and procedures governing litigants and counsel or the requirements of the substantive law." *Felix*, 729 F. Supp. 2d at 1246 n.1; *Rolland*, 457 F. Supp. 2d at 1228 (Watanabe, J.) (denying *pro se* plaintiff's motion to amend).

Moreover, discovery has revealed that Plaintiff's level of sophistication is far from what he has represented to this Court. For example, on December 28, 2012, before filing his initial complaint, Plaintiff solicited other employees to join his lawsuit against TNY, promising that he "would not leave anyone behind," and joking that they knew what Plaintiff meant when he used the phrase "similarly situated." (Hartley Tr. at 260:22-261:4 & Ex. 30.) Yet, at this Court's March 21, 2013 scheduling conference, Plaintiff feigned ignorance. [DE 44 at 18:1-6.] At the same conference, the Court asked Plaintiff if he was pursuing a class action, so that it could set

appropriate deadlines. [*Id.* at 18:7-13.] Plaintiff represented that he was not. [*Id.* at 18:9-17.] A mere **eight days later**, however, Plaintiff filed a motion for class certification. [D.E. 24-25.]

Plaintiff also claims that he was not assisted by counsel until July 2013. Yet his sham privilege log reveals he had numerous communications with attorney James Davidson regarding the "summary of the case" in the days leading up to the April 15, 2013 amendment deadline. (Chapman Decl., Ex. 4.) Further, **Plaintiff fails to explain why he waited an additional six weeks to file his Motion after he retained counsel**. That circumstance, standing alone, shows a lack of diligence and thus precludes his belated amendment.

Plaintiff's blatant misrepresentations, veiled communications with counsel, and decision to sit on his new proposed claims until a mere three days before discovery ended and months after the amendment deadline completely belie any argument that he should be given leniency based on his initial *pro se* status. In short, Plaintiff's alleged *pro se* status is a red-herring and does not excuse Plaintiff's lack of diligence and the absence of good cause.

## IV. CONCLUSION

For the foregoing reasons, TNY respectfully asks this Court to deny Plaintiff's motion for leave to amend the complaint in its entirety.

Respectfully submitted, this 20th day of September, 2013.

  s/ *Nathan D. Chapman*
Nathan D. Chapman
Paul G. Sherman
WARGO & FRENCH LLP
999 Peachtree Street, NE
26th Floor
Atlanta, Georgia 30309
Tel: (404) 853-1500
Email: nchapman@wargofrench.com
      psherman@wargofrench.com

Josh A. Marks
BERG HILL GREENLEAF & RUSCITTI LLP
1712 Pearl Street
Boulder, CO 80302
Tel: (303) 402-1600

Email: jam@bhgrlaw.com
*Counsel for Defendant Time Warner NY Cable LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2013, a true and correct copy of the foregoing **DEFENDANT TIME WARNER NY CABLE LLC'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE SCHEDULING ORDER AND TO FILE A SECOND AMENDED COMPLAINT** was e-served upon the following via ECF/PACER:

Walker G. Harman , Jr.
THE HARMAN FIRM, P.C.
200 West 57th Street, Suite 900
New York, NY 10123

    s/ *Nathan D. Chapman*

Nathan D. Chapman