## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No. 01:13-CV-158-RM-MJW**

Plaintiff,

      Patrick G. Hartley,
      Individually and on behalf of others similarly
      situated

v.

      Defendant.
      Time Warner NY Cable, LLC, et al.

---

## PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S NOTICE TO THE COURT AND MOTION TO CONTINUE FILED JULY 8, 2013

---

COMES NOW, the Plaintiff, and in this memorandum will show that;

a). the proposed Motion to Continue to procure counsel for all affected parties serves judicial economy and the interests of justice:

b). tabling the Plaintiffs Motion for Class Certification (Docket #24) to be properly argued before the Court by members of the bar does the same.

### STANDARD OF REVIEW

"Continuances are granted when necessary to avert a miscarriage of justice but will be denied if sought merely for the purpose of delay. In ruling on a motion for a continuance, a court examines all the facts and circumstances of a case—in particular;

a). the applicant's good faith;
b). the purpose and necessity for the postponement;
c). the probable advantage that could result from the continuance;
d). and the possibility of prejudice to the rights of other parties.

Continuances are granted only if valid grounds exist that justify the postponement of the action. For example, a court will continue a case in which all the interested parties have not appeared in order to bring them into the action..." -Blacks Law Dictionary, at *continuance.*

ARGUMENT

Within the last few weeks, more of the members of the proposed class have come forward to offer their testimony and provide evidence which supports the Plaintiffs allegations in this action (Exhibit A-Q). All parties will likely wish to perform discovery and depositions regarding that testimony and supporting evidence, though the time for discovery is fast drawing to a close.

The attached affidavits from the proposed class members necessitates discovery on their related claims, and those parties wish to have their claims adjudicated by this Court. It would be a profound miscarriage of justice for their claims to be prejudiced, solely due to the lead Plaintiff being unrepresented in this Court.

In light of these facts, the Plaintiff, along with members of the proposed class, are actively seeking representation, which this new evidence makes more likely for them to procure. As such, the Plaintiff makes this good faith request of this Court to continue these proceedings solely for the purposes of procuring adequate representation for the proposed class.

This advantages all parties, including the Court, for several reasons. Most specifically, it *removes the pro se litigant* and replaces him with trained members of the Bar, who can both protect the rights of the various parties and interact with the Court in regular order. It furthers judicial economy by adjudicating these related claims, all regarding FMLA etc, with the same defendant, in one omnibus litigation instead of perhaps many dozens of separate  but precisely related claims, and removes the risk of prejudicing the rights of other parties both known and as-yet unknown.

The proposed continuance does not prejudice the rights of the Defendant for the outstanding reason that, instead of facing multiple lawsuits from multiple plaintiffs, while facing the difficulties inherit in dealing with an unrepresented party in the instant case, the claims can be properly heard at one time and significantly reduce their litigation expenses.

As the issue of class certification has only been argued before the Court by one, unrepresented, member of the class, the Plaintiff would suggest that it is nearly axiomatic that the issue has not been properly presented to the Court, and the Court would do well to hear from members of the Bar on the subject on behalf of the entire proposed class.

Respectfully submitted this _____ day of July, 2013.

_____
Patrick G. Hartley, Pro Se Plaintiff

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-964-6101

# CERTIFICATE OF SERVICE

A True and Correct copy of Notice to the court has been served on ___ day of July, 2013 via email to the following recipients:

Nathan Chapman
nchapman@wargofrench.com
Paul Sherman
psherman@wargofrench.com
Josh A. Marks
jam@bhgrlaw.com

Exhibit A - Affidavits

## UNITED STATES DISTRICT COURT – DISTRIC COURT OF COLORADO

Case: 13-CV-158-RM-MJW

Plaintiff,

    Patrick G. Hartley

V.

Defenndant

    Time Warner NY Cable, LLC, et al



# DECLARATION OF SERGIO ALCALA

1. I, Sergio Alcala, testify that while at I was part of the Time Warner QA (Quality Assurance) department I witnessed/heard Diane Weisenfluh excluding applicants for my position because she didn't want to hire anyone who had FMLA. Her exact words were "I don't want anyone with attendance problems or FMLA".

2. I, Sergio Alcala, testify that in January 2009 When I had come back from time off using FMLA I was pulled into a meeting with Farid Jabbour and Diane Weisnefluh. I was told if I planned to use FMLA that I will be put into another position since the QA department cannot support anyone taking time off on FMLA and that it would be unfair to my coworkers.

3. I, Sergio Alcala, testify that on various occasions I and other coworkers were told to "Try to find bad calls" for certain agents who had FMLA. She told us that they were directions given to her from various managers including Keron Singh, James McEwen and Megan Mc Gowen.

4. I, Sergio Alcala, testify that on many occasions I was threatened by Diane Weisenfluh if I took any of my FMLA complaints to Human Resources that I would lose. She said "I know everyone in HR so who do you think they'll believe".

5. I, Sergio Alcala, testify that I was told on various occasions by Diane Weisenfluh that if I continued to use FMLA that it would jeopardize my position and eventually y my job. I was told that taking time off for whatever reason was frowned upon. She would make many comments on other co-workers who had FMLA that "How can they expect to be promoted."

6. I, Sergio Alcala, provide the testimony in this Declaration of my own free will, that I am over the age of 18, and that the information is true and correct.

Date  6/27/2613

Sergio Alcala dstalcala@gmail.com 719-313-1393



# Statement of Stephanie Eddins

I, Stephanie Eddins, was employed with Time Warner Cable from June 2010 through January 2012.

I, Stephanie Eddins, due to not having enough time to breast pump for my new born child. I was having problems making it back to work from breaks or lunches

I, Stephanie Eddins, requested of my Supervisor, Michael Moore, to be allowed to go to Human Resources to discuss not having enough time to breast pump and was told by Michael Moore that I had to wait for my break or lunch to go to Human Resources.

I, Stephanie Eddins, on or about November, 2011, on my break, spoke with Jason Cross in Human Resources about needing additional time for breast pumping and attendance. Jason Cross told me he was understanding of my need for additional time and that he would enter in additional unpaid breaks. The breaks were never entered on my schedule.

I, Stephanie Eddins, once eligible for FMLA, was not educated on my rights under FMLA as required by the statute.

I, Stephanie Eddins, asked Heidi Thorn and Becky Strickland many times before leaving on short term disability in May 2011 about FMLA and was told that I didn't qualify at this time. When I spoke with Jason Cross on or about November 2011, He did not inform me of my rights under the FMLA.

I, Stephanie Eddins, missed work because of having to care for my new born children.

I, Stephanie Eddins, I was issued a corrective action for attendance issues related to the time constraints of breast-pumping and child-care needs, and eventually was given either the option of Resignation or Termination because of my attendance. I chose resignation as I was not made fully aware of my rights under FMLA.

_____        09/08/2012
**Stephanie Eddins**                    Date

I certify that the above **Statement of Stephanie Eddins** was signed by Stephanie Eddins and witnessed by:

Notary: April Thatcher                  Date: 09/08/2012

My Commission Expires: June 20, 2016

APRIL THATCHER
Notary Public
State of Colorado

My Commission Expires June 20, 2016



# AFFIDAVIT OF KEVIN KUHN

PERSONALLY came and appeared before me, the undersigned Notary, the within named Kevin S. Kuhn, who is a resident of El Paso County, State of Colorado, and makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

1. I, Kevin Stephen Kuhn, am over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I was employed with Time Warner Cable from 09/2006 through October 30th, 2012 as a Tier 1 CSR, Tier 3 CSR, Bridge / Resource Management Operations representative, then finally a Tier 3 CSR again, respectively.

3. In February, 2007, as a Tier 3 CSR agent, I reported to HR that a supervisor named Gary Pullen had received an e-mail from Gabriel Alexander, one of his agents at the time, in which Gabriel spelled Gary's name with 2 letter Rs. Gary Pullen then made the comment, "Only faggots spell Gary that way!". Gary was spoken with, but no other action was taken and he continued to supervise Tier 3.

4. In March of 2009 I was demoted from a Bridge and REM specialist and placed back into the Tier 3 customer service department. The reason given to myself by Farid Jabbour (HR Rep.), Scott Lorenz (Manager), and Richard Mendoza (Supervisor) at first was "due to seniority", stating I was the lowest man on the totem pole and someone needed to be cut from that department. When I informed Farid Jabbour that Daniel DeJesus had lower seniority than me, I was then informed it was due to scoring less on the employee annual review. A week later Richard Mendoza informed me he would get my Employee review done in another week or two. I did not seek further clarification from Farid Jabbour and speculated that perhaps it was due to my sexual orientation since no valid real reason was ever given.

5. Early 2010 I became medically ill. I requested a day off in 07/2010 2 weeks in advance as Pre-Planned sick time, which up until this time was always guaranteed off as long as more than 72 hour's notice was given. I was denied it and informed by my supervisor, Lucia Bueno, that the policy had changed and if there was not vacation/sick hours available for the department for the day, I could be denied. I spoke with Farid Jabbour who informed me "The policy did not change and I have the day off." After this off-the-cuff "change" made by the Tier 3 manager Joe Russ I decided to then get FMLA to protect me from the random whims of Supervisors and Managers.

DATED this the 13th day of May , 20 13

_____
Signature of Affiant

SWORN to subscribed before me, this 13 day May , 20 13

_____
NOTARY PUBLIC

My Commission Expires: 10-12-2014

1



# AFFIDAVIT OF KEVIN KUHN

PERSONALLY came and appeared before me, the undersigned Notary, the within named Kevin S. Kuhn, who is a resident of El Paso County, State of Colorado, and makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

1. I, Kevin Stephen Kuhn, am over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I was employed with Time Warner Cable from 09/2008 through October 30th, 2012 as a Tier 1 CSR, Tier 3 CSR, Bridge / Resource Management Operations representative, then finally a Tier 3 CSR again, respectively.

3. In November of 2010, after several attempts at filling the FMLA paperwork sent to my doctor by UNUM, they kept returning it requiring different sections to be filled out differently/specifically etc. due to getting no instructions or help from UNUM nor Time Warner Cable's HR department, I was approved for FMLA via UNUM, claim# 6615922. My claim stated my illness was a lifelong illness, so length needed for FMLA was listed as Lifetime.

4. In March of 2011 my shift changed and I switched from Lucia Bueno as my supervisor to Brian Abeyta (They are married.) I asked Brian to pull the hours available for FMLA so that I could make sure they matched the rolling 480's I had recorded. Brian then pulled me into an Emergency Coaching to inform me that since January 11th, 2011, I have NOT had FMLA, that it had expired. From 01/11/11 till 03/25/2011 I had 37 missed days of work. These were planned days off, including an entire week of pre-planned time off submitted and approved for by Lucia Bueno. Lucia had also been giving me monthly updates on the amount of time left.

DATED this the 13th day of _____ May _____, 2013

_____
Signature of Affiant

SWORN to subscribed before me, this 13 day May , 2013

_____
NOTARY PUBLIC

My Commission Expires: 10-12-2014

1

# AFFIDAVIT OF KEVIN KUHN



EXHIBIT
C 3

PERSONALLY came and appeared before me, the undersigned Notary, the within named Kevin S. Kuhn, who is a resident of El Paso County, State of Colorado, and makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

1. I, Kevin Stephen Kuhn, am over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I was employed with Time Warner Cable from 09/2006 through October 30th, 2012 as a Tier 1 CSR, Tier 3 CSR, Bridge / Resource Management Operations representative, then finally a Tier 3 CSR again, respectively.

3. In a meeting with Becky Strickland (HR) and Brian Abeyta (my current supervisor) it was stated I was not calling into UNUM from January 11,2011 - 03/25/2011, as per company policy. I provided 2 months of call records, 2/2011 and 3/2011, which showed me calling in everyday I took off. Becky Strickland informed me that because I could not provide 01/11 that the corrective action stood and I was now on a final written notice now. I was then informed that my FMLA has to be "renewed" every 6 months, which was never previously told me. I was also informed that supervisors receive e-mail notification anytime an agent calls UNUM showing approved/disapproved for that day. When asked why Lucia Bueno never informed me there was a problem, I was informed it would be looked into. As far as I know, nothing became of it.

4. I was informed by Brian Abeyta that until he told me otherwise, I was no longer to call off FMLA, even though UNUM stated I had hours, Brian stated my KRONOS punches showed more FMLA than 480 hours used. KRONOS punches for FMLA were only able to be entered by a Supervisor or above, which I stated to Brian and asked him for detailed record. He never provided this information to myself. Brian Abeyta was then moved to Tier 1 as a supervisor after this Shift Cycle.

DATED this the 13th day of ___May___, 20 13

_____
Signature of Affiant

SWORN to subscribed before me, this 13 day May, 20 13

_____
NOTARY PUBLIC

My Commission Expires: 10-12-2014

1



# AFFIDAVIT OF KEVIN KUHN

PERSONALLY came and appeared before me, the undersigned Notary, the within named Kevin S. Kuhn, who is a resident of El Paso County, State of Colorado, and makes this his statement and General Affidavit upon oath and affirmation of belief and personal knowledge that the following matters, facts and things set forth are true and correct to the best of his/her knowledge:

1. I, Kevin Stephen Kuhn, am over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I was employed with Time Warner Cable from 09/2006 through October 30th, 2012 as a Tier 1 CSR, Tier 3 CSR, Bridge / Resource Management Operations representative, then finally a Tier 3 CSR again, respectively.

3. 05/2011 – 10/2012 I applied for Tier 3 supervisor (3) times and was turned down each time with no reasoning given. I applied for Tier 3 supervisor mentor project 5 times, to wit I was denied each time with no Feedback given and none forthcoming when asked, just a promise to get it to me. In 08/2012 I applied and interviewed for the Bridge position that opened up. I was denied once again, with the reason that they found more qualified individuals, even though I was the spear-head in creating the Bridge department and developed all the tools and software they were using at the time. I stopped applying for any other position, for I was on FMLA and needed to remain on FMLA, and from previous experience have seen people passed over because of it.

4. My FMLA expired on 10/29/2012 and I had a Doctor's appointment to refill/resubmit paper work on 10/31/2012. On 11/1/2012 I received a call before my scheduled shift from Jason Cross. I was informed by Jason Cross that I was terminated from Time Warner Cable due to going over my allotted break time for the last 12 months. Stephanie Figeruoa/Leggs, my current supervisor, had gone through the last 12 months of Break, Lunch, IN/OUT punches, etc in KRONOS and I was found over the allotted 30 minutes per day. I informed Jason Cross that I had informed my previous supervisor Michael Williams via E-mail to wit he replied that yes, there was a problem with my punch records and he'd get back to me once it was fixed. Jason Cross then stated when I could come pick up my final paycheck and that I should go file for unemployment immediately.

DATED this the 13ᵗʰ day of _May_, 2013

_____
Signature of Affiant

SWORN to subscribed before me, this 13 day _May_, 20 13

_____
NOTARY PUBLIC

My Commission Expires: 10-12-2014

1



EXHIBIT
D

## UNITED STATES DISTRICT COURT
## DISTRICT COURT OF COLORADO

Case No: 13-CV-158-RM-MJW

Plaintiff,

Patrick G. Hartley, Individually and on behalf of those similarly situated.

v.

Defendant,

Time Warner NY Cable, LLC, et. Al.

# DECLARATION OF DENA CANNON

1. I, Dena Cannon, testify that I worked for Time Warner Cable from January 2011 through September 2012.
2. I, Dena Cannon, testify that while working for Time Warner Cable I was verbally harassed on the public call center floor for my personal Wiccan and Pagan beliefs by Manager Keron Singh and Supervisor Robin LeMaster.
3. I, Dena Cannon, testify that I took FMLA leave for my own personal health condition starting in January of 2012.
4. I, Dena Cannon, testify that I proved to Human Resources Representative Jason Cross that I was eligible for FMLA leave after he harassed me via email about not being eligible.
5. I, Dena Cannon, testify that I took short term disability for my worsening personal health condition.
6. I, Dena Cannon, testify that I was put on long term disability by Time Warner Cable and advised by Jason Cross that I would have a final written warning waiting for me upon returning to work. As a result of the corrective action I would face termination if I miss any work after returning to work.
7. I, Dena Cannon, testify that Time Warner Cable skipped levels of corrective action by threatening to issue a Final Written Warning for attendance, when their process calls for a verbal warning, a written warning, and then a final written warning.
8. I Dena Cannon, testify that I attempted to work with Time Warner Cable Human Resources Representative Jason Cross to work part time for Time Warner Cable and was informed that there were no options for part time work and that my attendance was affecting business needs.
9. I Dena Cannon, testify that Jason Cross called me and advised me that I have been put on Administrative Termination in September of 2012.

1

10. I, Dena Cannon, testify that I was one of over 300 employees performing the same job duties required by Time Warner Cable.

11. I, Dena Cannon, testify that Time Warner Cable began treating me differently and negatively after I began using my rights under the FMLA.

12. I, Dena Cannon, testify that I have been diagnosed with recurrent chronic kidney stone disease, diagnosis code 592.0.

13. I, Dena Cannon, testify that I have been diagnosed with adjustment disorder mixed with anxiety + depressed mood, diagnosis code 309.28.

Dena Cannon

Date: 6-30-13

Phone: 719-622-1111

2

# UNITED STATES DISTRICT COURT
# DISTRICT COURT OF COLORADO

Case No: 13-CV-158-RM-MJW

Plaintiff,

    Patrick G. Hartley, Individually and on behalf of those similarly situated.

v.



Defendant,

    Time Warner NY Cable, LLC, et. Al.

## DECLARATION OF JULIANA VAN TUIL

1. I, Juliana Van Tuil, fear retaliation and termination by Time Warner Cable for providing this statement.
2. I, Juliana Van Tuil, have been employed by Time Warner Cable for over 14 years with employment beginning August 03, 1998.
3. I, Juliana Van Tuil, was issued corrective action for attendance on days already approved for unpaid leave as provided under the Family and Medical Leave Act (FMLA).
4. Patrick G. Hartley, the Pro Se Plaintiff, saved me from termination by educating me on my rights under the FMLA.
5. I, Juliana Van Tuil, along with another Agent Jana Mason, reported to Time Warner Cable Human Resources that a Time Warner Cable supervisor, Gary Pullen, was speaking loudly and negatively on the call center floor about my use of FMLA time when I had applied for a position in his department within the company. I was not moved to that position. Gary Pullen has been terminated.
6. I Juliana Van Tuil have been given incorrect information by Time Warner Cable, Unum, and Sedgwick about my available FMLA time.
7. I, Juliana Van Tuil, have received incorrect information from Time Warner Cable's Human Resources staff about my use of FMLA while attempting to utilize, understand, and implement my rights under the FMLA.
8. I, Juliana Van Tuil, provide this statement of my own free will.

_____

                    Juliana Van Tuil

Date: 6-28-2013

                Phone: 719-510-0637



EXHIBIT
F

## AFFIDAVIT OF KATIE YOUNG

1. I, Katie Young, am over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I was employed with Time Warner Cable through 5/6/2012 as a Customer Care Representative.

3. On January 25, 2012, I Katie Young witnessed the following conversation between Patrick Hartley and Keron Singh:

> Patrick Hartley, "I got my raise."
> Kerong Singh, ""I knew you would.  I was just giving you a hard time about your hours."

4. I Katie Young had a conversation with my Supervisor, Laura Jacobo, about Patrick Hartley covering for our team while she was out on vacation.  Laura told me, "As long as I am a part of the hiring process, I will never promote Patrick Hartley to Supervisor"

Dated this 22 day of _May_, 2012.

_Katie Young_
Katie Young

STATE OF COLORADO   )
                    ) ss.
EL PASO COUNTY      )

The foregoing document was sworn to and subscribed by the Affiant, Katie Young, on this the _2nd_ day of _May_, 2012.

Witness my hand and official seal.
My Commission expires  _1-7-2015_

_Notary Public_
Notary Public





EXHIBIT
G-1

DISTRICT COURT OF THE UNITED STATES
DISTRICT OF COLORADO

CASE NUMBER: 13-CV-00158-RM-MJW

PLAINTIFF,
     PATRICK G. HARTLEY, PRO SE
     INDIVIDUALLY AND ON BEHALF OF THOSE SIMILARLY SITUATED

v.

DEFENDANT,
     TIME WARNER NY CABLE, LLC, et al.

# DECLARATION OF CHRISTOPHER MCKITRICK

I, Christopher McKitrick, testify that I have provided testimony in the public record about case 13-CV-158-RM-MJW.

I, Christopher McKitirick, testify that I was instructed via email to destroy evidence about the Pro Se Plaintiff in case 13-CV-158-RM-MJW.

I, Christopher McKitrick, testify that I informed the Pro Se Plaintiff of the instruction to destroy evidence about the Pro Se Plaintiff on April 13, 2013.

I, Christopher McKitrick, testify that on April 13, 2013 advised the Pro Se Plaintiff that I am willing to testify before the judge about witness tampering

I, Christopher McKitrick, testify that I was terminated on or around May 2, 2013 by Defendant's representatives Linda Williams, Megan Mc Gowen, and Farrid Jabbour because I had spoken about case 13-CV-158-RM-MJW by informing the Pro Se Plaintiff about the email I had received instructing me to destroy evidence about the Pro Se Plaintiff.

I, Christopher McKitrick declare that I am over the age of 18 and provide this statemet of my own free will.

_____
Christopher McKitrick
5/08/13
                 Date



## AFFIDAVIT OF CHRISTOPHER McKITRICK

1. I, Christopher McKitrick, and over the age of 18 and a resident of Colorado Springs, El Paso County, Colorado.

2. I am currently employed by Time Warner Cable and hold the title of Tier I Supervisor of Customer Care.

3. I, Christopher McKitrick, was told by Jason Cross, HR Generalist and former Time Warner Cable Recruiter, in regards to Patrick Hartley, that "I don't like his attitude, I don't like his mannerisms, and he just might never be promoted to supervisor."

4. I, Christopher McKitrick, believe that Patrick Hartley would make an excellent supervisor. Patrick Hartley has met and far exceeded the requirements for Tier 1 Supervisor. Patrick Hartley has already shown through performance records that he is capable of the position.

5. I, Christopher McKitrick, believe that Patrick Hartley has not been promoted by Time Warner Cable's representatives because of personal bias against his sexual orientation.

6. I, Christopher McKitrick, opposed unlawful retaliation made by Time Warner Cable and its representatives.

Dated this 14th day of February , 2012.

_____
Christopher McKitrick

STATE OF COLORADO   )
                    ) ss.
EL PASO COUNTY      )

The foregoing document was sworn to and subscribed by the Affiant, Christopher McKitrick, on this the 14th day of February , 2012.

Witness my hand and official seal.
My Commission expires___1/11/16_____

STACY A. SANDERS
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires___1/11/16

_____
Notary Public



## Time Warner Cable Experience Letter

**Casey Smith** <livinfilm1@gmail.com>                                    Sat, Jun 29, 2013 at 2:54 PM
To: Patrick Hartley <patrickghartley@gmail.com>

Casey Smith (McKone)

719-322-1442, livinfilm1@gmail.com


EXHIBIT
H

5780 Astoria Way,

Colorado Springs , CO 80919

To Whom It May Concern,

     My time at Time Warner Cable was filled with negative feelings. While working there I felt that I had received many prejudice reactions from management staff. Upon completion of my training and during my transition to my regular team, my direct supervisor (Beth Mann,) made it clear numerous times how much she disliked pregnant people and felt that they should not be in the work place. She made this clear through verbal statements made at team meetings and through casual encounters with her throughout the day. It fell as no surprise that once I became pregnant she was very displeased; however I was not prepared for the retaliation that incurred. Shortly after becoming pregnant I had my first "BAD" call with a customer. I had acted inappropriately by arguing with the customer. My supervisor requested that it be immediately reviewed by our Quality Assurance Department for review. Normally the calls that are reviewed are selected randomly. It was reviewed and I received a "0" for the call. From there my supervisor went to the management team to request for my termination, which goes against the coaching policy. Upon debate with the management team I was placed on a final written meaning that if I had another "0" call I would be immediately terminated. Once her request for termination she then proceeds to attempt to have my schedule changed so that it matched up with hers, knowing that I needed my schedule the way it was so that I could pick up my stepson. I spoke with management about the request and agreed to keep it the same. A few weeks later I found out that I had lost the triplets that I had been carrying and was notified by the doctor that I would have to have an emergency "D and C" completed to remove the babies. I was devastated and immediately attempted to make contact with my supervisor, who I never herd back from. I ended up having to have another supervisor assist me with getting the time off request completed. After having the procedure I had to return to work immediately in my devastated state. During this time period I never herd from my supervisor.

     After some time had passed I was very relieved to be switching teams . I was nervous to work with a new supervisor and see if that person would be able to teach me how to better improve my performance. To my excitement I was placed on Tiphani Adams team. As I had hope she was very understanding and helped me to improve my performance. During this time there was a significant improvement from my previous scorecard and I was very pleased with the tools

she taught me. During this time I fell pregnant again and started to have a very ruff pregnancy. I was constantly in the hospital for threatened preterm labor and severe morning sickness. I missed a lot of work due to these illnesses. After some time Tiphani informed me that I should apply for FMLA. She assisted me in getting the paperwork and helping me make sure everything was complete and turned in correctly. Time Warner Cable continuously tried to deny my FMLA claim because the felt that the reasoning wasn't sufficient even though my doctor stated that I needed to be able to leave when necessary. After much struggle I got my forms approved. I was able to take the time I needed. Towards the end of my pregnancy is when things got rather severe. I was placed on strict bed rest and was informed that I was not able to return to work till after the baby was born. I turned in the papers from my doctor and notified HR. I had my baby 4 weeks early. I then received a letter stating that because I was placed on bed rest I would be expected to return to work in a week, however I had not been cleared to return till after 6 weeks. I notified HR through calls and voicemails however I never herd back from them. Once I had been cleared to return to work I had called to find out what all I needed to do to return but never herd back from them. I made numerous attempts to reach someone but was never successful. I even went down to the building but quickly found out that my badge no longer worked. Shortly after my son ended up hospitalized for 6 weeks. During this time I was still attempting to contact them to inform them of the situation. Yet again I never herd back from them. After this I had found out from a friend that all of my personal belongings including books and ultrasound photos had been thrown away and I would not be able to retrieve any of my belongings. After almost a year had passed I received a letter at my new address that I had been let go from Time Warner Cable and how to apply for Cobra Benefits if I wished.

While working there I had as well inquired about what the policy was for new mothers who would need to pump their milk for breast feeding babies. As I had intended to strictly breastfeed. However the information provided to m scared me. I learned that you would only have the regular 15 min breaks to pump and you would have to do so in the bathroom. I was very displeased to here this considering every breastfeeding mother knows that it takes 20 min per side to adequately keep your milk supply up and you would have to do so every 2-3 hours. Not to mention the fact that I was disgusted at the thought of preparing and pumping my babies milk in the bathroom. This is not the most clean place to be doing this and I would risk my child picking up germs. Because I never herd back from Time Warner Cable about my employment I never dealt with it personally but the information that the HR department provided me was very disheartening.

Sincerely ,

Casey Smith (McKone)



# Statement of Patrick Hartley

I, Patrick Hartley, spoke with former Time Warner Cable employee Stephanie Eddins about her experiences at Time Warner Cable and how Time Warner Cable treated her as a Mother of a new born and child.

I, Patrick Hartley, was told by Stephanie Eddins that she was having problems making it back to work from breaks or lunches due to not having enough time to breast pump for her new born child.

I, Patrick Hartley, was told by Stephanie Eddins that she had asked her Supervisor, Michael Moore, numerous time to be allowed to go to Human Resources to discuss her issue with not having enough time to breast pump and was told by Michael Moore that she had to wait for her break or lunch to go to Human Resources

I, Patrick Hartley, was told by Stephanie Eddins that she felt it unfair that she was only given the option of going to Human Resources on her lunch or breaks as she also needed to use that time to breast pump.

I, Patrick Hartley, was told by Stephanie Eddins that she did finally get to speak with Jason Cross in Human Resources about needing additional time for breast pumping and her attendance. Stephanie stated that Jason Cross was understanding of her needs and that he would enter in additional unpaid breaks to give Stephanie more time.  Stephanie Stated that these breaks were never entered.

I, Patrick Hartley, was told by Stephanie Eddins that she had been employed with Time Warner Cable for well over a year and was eligible for FMLA under Federal Law, but was not advised of her rights under FMLA by Jason Cross when she spoke to him about her issues with breast pumping and attendance.

I, Patrick Hartley, was told by Stephanie Eddins that she was on a Final Written Warning for Attendance. Stephanie told me that some of those absent days were because of needing to tend to her new born child.

I, Patrick Hartley, was told by Stephanie Eddins that she was given the option of Resignation or Termination because of her attendance.  Stephanie stated that at the time she decided to take resignation because she was not aware of her rights under the law.

_____          9/7/2012
**Patrick Hartley**                          Date

I certify that the above **Statement of Patrick Hartley** was signed by Patrick Hartley and witnessed by:
Notary: _Stacy A Sanders_____          Date: _9/7/12_____
My Commission Expires: _____1|11|16_____

_Stacy A. Sanders_
**STACY A. SANDERS**
**NOTARY PUBLIC**
**STATE OF COLORADO**
My Commission Expires 1 | 11 | 16



# **Statement of Patrick Hartley**

I, Patrick Hartley, was requested by Supervisor Linda Evans and Manager Tim Gieseman to fill in as acting supervisor while Linda Evans was on vacation.

I, Patrick Hartley, while covering for Linda Evans, was approached by Julie Van Tuil about two Final Written Warnings that she had been issued in regards to her attendance. She brought the concern to me that the Final Written Warnings were not valid as the absent days had been approved under FMLA.

I, Patrick Hartley, worked with Julie Van Tuil and compared the approved dates for FMLA absences from UNUM with the dates on the Final Written Warnings. We discovered that most of the days Julie had been written up for were showing approved by UNUM and approved under FMLA.

I, Patrick Hartley, advised Julie Van Tuil to bring this to the attention of management and as a result, Management overturned the corrective action.

I, Patrick Hartley, witnessed that because of these Final Written Warnings issued to Julie Van Tuil, Julie had lost her seniority ranking and was not given a bonus check.

I, Patrick Hartley, witnessed that Management did remove the Final Written Warnings leaving Julie Van Tuil with no corrective action or write ups at this time. Julie also was issued a check to cover the amount that was lost as a result of not receiving her bonus due to the error from Time Warner Cable.

I, Patrick Hartley, was told by Julie Van Tuil that she and another agent, Jana Mason, went to Human Resources to complain that Gary Pullen, former Tier 3 Supervisor for Time Warner Cable, had been openly discussing Julie's FMLA on the floor with Julie's current supervisor, Linda Evans. Gary Pullen was questioning the attendance of Julie Van Tuil because she had recently interviewed for a position as a Tier 3 Customer Service Representative. Gary Pullen's employment with Time Warner Cable has since been terminated.

I, Patrick Hartley, state that above information was provided by Julie Van Tuil and is not hear say.

I, Patrick Hartley, was told by Supervisor Linda Evans, that Jason Cross had lost the personal information including Social Security Numbers, Addresses, and Contact information of two of Linda's agents. Linda also stated that one of the agents almost lost their insurance as a result of Jason Cross losing the personal information. Linda stated that she was not sure if Jason Cross had ever found the missing personal information.

_Patrick Hartley_       **Date** _9/7/2012_

**Patrick Hartley**       **Date**

I certify that the above **Statement of Patrick Hartley** was signed by Patrick Hartley and witnessed by:

Notary: _Stacy A Sanders_     Date: _9/7/12_

My Commission Expires: _1/11/16_

STACY A. SANDERS
NOTARY PUBLIC
STATE OF COLORADO
My Commission Expires 1/11/16



## STATEMENT OF PATRICK G. HARTLEY, PLAINTIFF

I, Patrick G. Hartley, being duly sworn, dispose that to the best of my knowledge and ability, I verify that the following conversation happened between myself, Patrick G. Hartley, and Defendants Supervisor, Christopher McKitrick around 330 PM on April 13, 2013 outside at the bottom of the southwest stairs located at Time Warner Cable, 2221 E Bijou, Colorado Springs, CO 80909.

Patrick: hey man, hows it going?

Chris: good, how have you been?

Patrick: good, so whats been going on with you?

Chris: not much, what about you?

Patrick: well, i've entered litigation against Time Warner Cable and I submitted your affidavit in the record.

Chris: cool. i'm glad you kept doing this. they told me to delete stuff about you.

Patrick: what? care to elaborate?

Chris: i got an email telling me to delete all the information from my desktop about you.

Patrick: oh my god, really? what did it say?

Chris: it told me to delete all the information from my desktop about "Patrick Hartley"

Patrick: did you delete the information?

Chris: yes, from the desktop, but i saved it on the network drive.

Patrick: oh chris, thank you for telling me. can you send me a message on Facebook detailing this?

Chris: can't they track that?

Patrick: well, actually, when it comes to Facebook, you don't have permission to give out private messages. if they want information from a social media site, they have to subpoena the special media site. if someone send you a private message, only you and that person are authorized to view that message. they'd have to subpoena them to get access to authorized users on their network.

Chris: oh well i'll do that then. Jason's been trying to get me to resign.

Patrick: really? how so?

Chris:  he's been offering me paid time off to resign, up to 3 weeks.

Patrick:  ha, that's hilarious.  so he's been trying to get you to quit?

Chris: ya.  he's such a fucking asshole, i hate Jason.

Patrick:  man, i totally understand.  that's why i brought this case, because of people like him.  so do you still have the email?  when did they send it?

Chris:  i'm gonna have to check, it was about 4-5 weeks ago.

Patrick:  wow, ok, well, cool, i gotta get back to work.  if you can find that email and message me on facebook or wherever.

Chris:  well cool man, keep me posted

Patrick:  for sure man, i appreciate you coming forward and telling me this information, i'm gonna go document this.  thanks again

Chris:  sure thing, anything i can do to help you know i'm here for ya.

Patrick: Thanks


I, Patrick G. Hartley, swear that the above conversation is true and correct to the best of my knowledge and ability.

_____

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906
719-200-8241
719-964-6101

Scribed and sworn before me on this __15__ day of April, 2013 by the affiant personally known to me.

Notary Public: _Anna H Williams_

My Commission Expires: _Feb. 22, 2017_

ANNA G WILLIAMS
NOTARY PUBLIC
STATE OF COLORADO
NOTARY ID 20134010766
MY COMMISSION EXPIRES FEBRUARY 22, 2017

December 28, 2012



To Whom It May Concern:

The following is a summary of my experience working as a contractor for Time Warner Cable from February to December of 2011. It details some very unfair treatment, including sexual harassment, that I would like acknowledged.

I began working for Time Warner Cable as a contractor through Apple One Employment Services in February or 2012. I was hired as the executive assistant to Megan Mc Gowen, director of Customer Care for the Colorado Springs, CO call center. I interviewed with Jason Cross, who was working as the recruiter at that time, and Megan Mc Gowen, for whom I would be working. I was told by Apple One that it was a "temp to perm" assignment (I believe that was the terminology they used) and that after 90 days they had the option to hire me permanently if they felt I was a good fit. I had recently moved to Colorado after undergoing some difficult personal events, including the death of my mother, and was excited to start over in Colorado by working for what I thought was a really good company.

After 90 days I followed up with Apple One, my employer. I was told that they had heard nothing but good things about me and to just keep plugging away, doing a good job. During this time a TWC employee named Andrew Johnston, who worked as an analyst in the business measures department, befriended me. I thought he was a nice guy and we developed a friendly rapport. I noticed he would occasionally say things that seemed a little out of place, saying things like, "you look good today", come up and rub my shoulders, etc., but unfortunately I brushed it off.

Around July of 2011, I was told by Jason Cross that the position had opened up in the requisition and now was the time to apply for it. I did, and began the interview process. I interviewed first with Mr. Cross, Stefani Martuscello, another executive assistant, and Tammy Kibbler, an H.R. assistant. They asked me a series of form questions which was pretty awkward considering I had already worked with them for several months. I then interviewed with Ms. Mc Gowen (which made technically the third time I interviewed for the job.) I followed up with Mr. Cross after the interviews by instant message. He told me that I was what they were looking for, and said that I was doing a good job. I also followed up with Ms. Mc Gowen, who said an offer letter was being prepared as we spoke, she was just trying to negotiate a higher rate of pay for me since I had a college degree and it was only fair that I made at least as much as Ms. Kibbler, who did not. Being new in town, on my own and needing health insurance and paid time off, I had been keeping my eyes open for other opportunities and was actually offered another job with an outside company. But at that point I had already been at Time Warner Cable for 6 months and wanted continuity in my career. Plus, I still believed that this was a good company to work for, so I turned the other offer of employment down. I flat out asked

Ms. Mc Gowen if this was a sure thing and she said that yes, it was, I could expect an offer letter the following week.

Approximately one week later, when I had not yet received the offer letter I had been promised, I again followed up with Ms. Mc Gowen. She told me that she had now heard all "non customer-interfacing positions" were on a freeze. I don't recall the exact words of the conversation, but I let it be known that I was upset and that I felt lied to. I had turned down another job offer after she had told me flat out that this was a sure thing. She appeared flustered and picked up the phone, seemingly calling someone to follow up. I spoke to Apple One about this, and was told that they still had heard nothing but good things about me, and they had no reason to believe this was anything but the occasional pains of process when dealing with a large corporation.

In the mean time, Mr. Johnston had begun saying very inappropriate things to me, mostly on instant messaging. His comments would become steadily worse, he would comment on the way I looked, the way I walked, asked me questions about my personal life, etc. This is in no way a comprehensive summary of his comments, but he said things like he thought I had a "sweet rack", "I have heard men around here say they would give it to you so good and you don't even know it", that I was "perfectly curvy". He referenced the size of his penis. He suggested revealing costumes I should wear for Halloween.

You might read this and wonder why I didn't do anything, at least tell him to stop. I should've reported it right away, but since he had been my friend and his comments would just grow increasingly worse, it sort of crept up on me and I didn't really understand the gravity of what was happening. Plus at that point I was still a contractor and frankly, concerned about the security of my job. Being that I had moved out here on my own, my mother was dead, and I had left my significant other, and the fact that jobs were simply not easy to come by, I needed the job and was afraid of doing anything to jeopardize it. My predecessor had been let go after a short time pretty much, I was told, because they didn't like her. Besides, I was still led to believe that there was a simple hold up and that the plan was still to make me permanent. I figured I would just keep record of his statements, and then after I was hired on permanently I would have more stable ground to do something if he didn't cut this out. And a few times he would apologize, say that he knew he was crossing the line and would stop. Then in a matter of days he would be back again, saying inappropriate things to me, his comments becoming a little more graphic each time. Plus, I still had to work with him, interact with him. I had to get reports from him for manager meetings, for example. I figured it was better to swallow my pride and stay on his good side for the time being. And I did actually speak to Ms. Mc Gowen about the harassment. I told her what had happened and she said, flat out that yes, this was harassment. She said that I could report it to HR but said that this sort of thing had happened before with him (yet this terrible behavior had apparently gone unpunished by Time Warner Cable since it was happening to me) and that he would deny it. Basically, it was insinuated that nothing would be done about it even if I did report it.

In the mean time, now after having been there 8 months, interviewed for the position three times, been told verbally that I had it, yet still having received no offer, I followed up with Mr. Cross again. He said that he "didn't want to bullshit me", that they were restructuring a lot of positions and that he wasn't sure when he would be able to offer the job to me on a permanent basis. He did say that was still the plan though. And again, I had already been with Time Warner Cable for nearly a year and wanted continuity in my career. Plus I had been told by Mr. Cross and Ms. Mc Gowen that it still was the intention to make me permanent. I went and spoke with Becky Strickland, HR Manager, about my predicament. She told me not to take it personally, but that I was viewed as "expendable" by the company and that they saw things strictly on a headcount basis. That it was cheaper for them to keep me as a temp and not have to pay benefits. She said that Mr. Cross and Ms. Mc Gowen probably meant well, but at this point she didn't see the position becoming permanent. She suggested I come up with an "exit strategy" since it was important to me to find permanent employment. At that point I was openly crying and was talked into seeing this as a means to an end for a difficult situation. So I then met with Ms. Mc Gowen and Ms. Strickland, and we mutually decided to end my contract at the end of the year. I felt relief that this precarious work experience was going to end, panic at maybe not being able to find anything else, and frankly, disgust at having been strung along for such a long time.

A couple of weeks after being advised by Ms. Strickland to come up with an "exit strategy", I learned that she had been let go, and that an interim VP, Linda (I do not recall her last name) was going to come in her place. At first I was optimistic. I figured clearly TWC realized something was amiss in the HR department and they were finally taking steps to fix it. I immediately asked to meet with Linda, who agreed. I told her of my predicament – all of it, including the sexual harassment, who assured me she would look into it and try to make it right. When she followed up with me, she told me that she found no record of my position ever having even been open in the requisition, that as far as she could tell it was "somewhere out in space". At that point I had been there for almost a year, and now told that there essentially never was a permanent position for me. She said she "couldn't believe" Ms. Strickland had suggested I come up with an "exit strategy". Yet when I offered to retract my resignation, she refused, saying it was easier for them to let my contract expire. Coming from a legal background, I assumed there was a way to retrieve the inappropriate instant messages sent to me by Mr. Johnston, but when I contacted IT, I was told that it was a company-wide policy not to store them on the server, and I should've saved them manually, which no one had ever told me was possible. I addressed these problems with Farid Jabbour as well, who was also within the H.R. department. He said that he had heard I started off as a very attractive candidate but that I "went to the dark side". I detailed my experiences to him and he said that I might want to enroll in some kickboxing classes to get my frustrations out.

Any company, regardless of size, is only as good as the way it treats its employees, even contractors. And there is simply no excuse for the way I was treated, and I can only imagine how many others have similar experiences. This was by far the worst work experience I have ever had. I have tried to keep emotion out of this statement, but I'm sure you can imagine that after I was strung along for several months, sexually harassed,

and then tossed aside without a care, there were negative psychological ramifications to that. I consider myself an intelligent and hard-working employee, but it absolutely affected my performance my last few months there. I was completely stressed out, could not concentrate, plus towards the end I tried not to leave my cubicle at all so I wouldn't run into Mr. Johnston. I could not believe a word any of the upper management, including my direct boss Ms. Mc Gowen, said. After I left, I actually had to undergo counseling. Plus, since Time Warner Cable does not store instant messages on its server and a lot of what I am saying is from instant messages and verbal conversations, I cannot prove what I have said. And from what I have experienced, the TWC employees responsible for my mistreatment do not have the scruples or good moral character to admit wrongdoing.

I do, however, want to ensure this does not happen to anyone else. So I prepared this letter so my experience would at least be on the record. I do not take any of what I have just stated lightly: in fact frankly, if I were able to produce the instant messages Time Warner Cable would likely be the subject of a lawsuit, and unless some serious changes have been made in the year since I worked there, it would be of your benefit to take a serious look into the toxicity of this work environment, particularly the activities of Jason Cross and the HR department in general.

Regards,


Elizabeth "Lisa" Thompson



Patrick Hartley <patrickghartley@gmail.com>

---

## telephone conversation with Meg Pittman on 12/28/2012
1 message

**Patrick Hartley** <patrickghartley@gmail.com>                         Sat, Dec 29, 2012 at 9:37 PM
To: Patrick Hartley <patrickghartley@gmail.com>

yesterday meg pittman, time warner cable employee customer service rep, called me today concerned about threats of corrective action, up to and including termination, for her attendance.

i first assisted meg with understanding her rights under FMLA in early 2012, when i helped he get in contact with UNUM to get the process started for her own personal health condition

she expressed concern on how time warner cable was handling her FMLA, stating that the process was very confusing between time warner cable, UNUM, and her Doctors.

Meg later stated over text message that no time warner cable representatives have only provided a letter on FMLA and have given no assistance to helping meg understand her rights under FMLA, and helping her understand her rights is the responsibility of the employer, as per the FMLA.

Meg is worried she won't have insurance if she is terminated and will then not be able to address her own personal health condition.





Patrick Hartley <patrickghartley@gmail.com>

# Facebook Conversation 120212

1 message

**Hartley, Patrick** <patrick.hartley@twcable.com>
To: Patrick G Hartley <patrickghartley@gmail.com>

Sun, Mar 3, 2013 at 12:23 PM

• Conversation started December 2, 2012





EXHIBIT
7

10:50am

**Patrick Hartley**

Hi. Sorry to hear about everything that happening to all of you. I'm working on it still, but i do need statements from each of you explaining in detail what your FMLA retaliation was and on what basis you believe the discrimination occurred.

• December 2, 2012



7:49pm

**Dena Cannon**

Thanks Patrick....we are working on statements for you.....its just taking some time since we have other problems now that Sergio has been fired. They targetted him, now I'm targeting them.

• December 5, 2012



7:55pm

**Patrick Hartley**

Yes we will

• December 6, 2012



10:44pm

3/3/13                     Gmail - Facebook Conversation 120212

**Kevin Kuhn**

Sorry been avoiding facebook for awhile, I will get you that, not because I need anything from that piece of shit company, but because I do not want them hurting others who are sick. Not a coincidence I got fired less than 24 hours after my fmla ran out I'm sure.

• December 9, 2012



•

11:56am

**Patrick Hartley**

kevin, that does sound odd. how could you have ran through attendance time tables of days and days only 24 hours after you ran out of FMLA time.

I wanna clarify, jason cross was involved in all of your attendance issues with TWC?



•

1:13pm

**Kevin Kuhn**

Jason Cross was the only one I dealt with, I did not have any attendance issue, they actually terminated me for going 43 minutes over the allotted break time in the last year. The really odd part is they had my check printed and ready to walk me out the day they called me up and told me I was terminated. So it was like they were just waiting for it. Before Jason Cross, Gary Pullen had already gave me a verbal warning, in January 2012, which Jason mentioned during the phone call, but unlike other employees of Time Warner Cable whose stuff drops off after 6 months, they said it didnt and I was no longer employed. Before that it was UNUM claiming I did not call in, and a lot of stuff the year before involving UNUM and Beck Strickland. When I sought help with making heads or tails of why it took Brian Abeyta and Lucia Bueno 3-4 months before they told me that I was not covered under FMLA per UNUM, instead I was put on a written warning for 37 Occurrences (Which up until I sought help I was under the impression it was all FMLA related, including a week of pre-planned FMLA which Lucia never mentioned to me.) There just has been so much that company has done to me it's hard to piece it all together in a coherent time line. The clincher that royally messed me up is when TWC hired Michael Williams from Delaware / Comcast as a supervisor, and he basically did not care about the scorecards, our bonuses, or even being there to assist. When the shift changed I ended up under Stephanie Figuero who doesnt like me already because about 2 or 3 years earlier I got Roberto Figurero fired for offering me Meth. I know they're related, just not sure how. Anyway I'll type up something much more than this and more time-lined. ttyl



•

3:29pm

**Patrick Hartley**

i'm sorry to hear that kevin. thank you for getting me this information.

Sergio and Dena, both of you had issues with Jason Cross, correct?

kevin, i am interested in your experience with becky strickland, as i complained to her that James and Keron were

making comments about my FMLA and how and when i came to work. i never got any resolution from it because Becky was terminated.

• December 9, 2012



11:47pm

**Dena Cannon**

Patrick, yes we did have problems with Jason Cross....Sergio and I are trying to write something up....we don't have exact dates but were doing our best. As for me, Jason is using fmla that was taken by me in Dec of 2011/Jan of 2012 as a consequence even though I was covered. He said that as soon as I return to work I will have a final written warning....I should note that I previously only had a verbal from Chris McKitrick regarding my handle time and that's all. I know Chris was tracking my absences because I saw his folder on his desk before I left for disability in late Feb of this year. But he never presented any write ups for it and I haven't been back since then so I don't know how I jumped from a verbal to a final in the course of my absence. So Jason is definetely doing something wrong and attacking people with fmla. They are targeting people and using thier new attendance policy to trap and get rid of people.

• December 10, 2012



7:44pm

**Patrick Hartley**

I'm not even sure the new attendance policy is corporate approved yet. i heard that Tier 1 and Tier 3 were trying it out first..



8:00pm

**Dena Cannon**

Well, I was told by Jason Cross that it was final. And they used it against Sergio, so they're saying one thing and doing another....typical TWC.

• December 13, 2012



6:50pm

**Patrick Hartley**

kevin, how can the new attendance policy, which isn't even official by corporate until January 1, 2013, be retroactively applied to your attendance from a year ago?

that just doesn't make sense.



6:53pm

**Kevin Kuhn**

You do know that TWC follows exactly 0 logic right? Apparently being 0-60 seconds late back from a break and/or logging in is considered a problem, and being in the last year 43 minutes of "lateness" between breaks and lunches and logging out etc constitutes Immediate termination. I'm not saying it's right, just saying that's what they told me. I put that as the reason for my termination on my Unemployment, and I got my unemployment because TWC didnt deny it, which I'd think would constitute valid proof that they're insane.



6:55pm

**Patrick Hartley**

yea, isn't giving you unemployment money the same thing as the company saying, "you did nothing wrong and you violated no policies" that's what i've been told by unemployment offices in new orleans.

the whole thing is strange. very strange.

because i believe if you violated company policy, the company is not obligated to pay, but they are obligated to pay If you were terminated without violation of company policy



7:01pm

**Kevin Kuhn**

I'm almost done typing up the documentation for Nov 2010 till I was terminated in 2012, pretty much the entire span on my FMLA. I was on FMLA btw for having 2 tumors in my brain, then FMLA for the insanity that followed due to all the chemotherapy and radiation / medication I had to be put on after surgery. I didnt share that with many people obviously, but I did not need to HIPPA regulations and all. I honestly think they wanted me gone because I fought Becky and management when I first got on FMLA and I won. My FMLA expired Oct. 29,2012 unless the DR renewed it, which did not happen. My Official date of Termination was Oct 30th 2012, but I had Oct 31st off due to pre-planned off time, so they called me Nov 1st before work and informed me I was let go (They being Jason Cross). They do not follow policy because they have NO clue what the actual policies are. Just an FYI though, HR/Managers cannot terminate an employee without Corporate HR's approval, which takes 2 - 3 weeks, meaning they were planning on Oct 30th because they knew my FMLA end date was then. I know the wait period from when I use to be Resource Management / Bridge for 2 years before being forced back to T3 with the false promise once budget opened back up I'd be put back to bridge. I could seriously write a novel of misconduct from TWC including all the "Sensitive" stuff I knew when I was REM/Bridge. I'll hit you up in a few days with the completed document of my own issues.



7:05pm

### Patrick Hartley

wow.. yea, its called a business case when they want to terminate an employee. every termination goes through one guy in Charlotte or New York, i don't remember his name. i'm sorry that this happened. at least you have unemployment!



7:07pm

### Kevin Kuhn

It's not like they could of denied it. I have e-mails sent to Michael Williams over and over and over again the 6 months he was "Supervisor" before he left for NY telling him my punches were wrong, hell they had me logging in 27 minutes EARLY on a Friday, which as anyone who knows me knows that's never going to happen. He said yea there was a problem in his reply and he'd look into it, but nothing was done. I had all my proof ready incase they did try to deny me. My only concern now is lack of Medical Insurance, especially since even going into the doctor without is roughly 1200$/visit
Heh, oh well



7:47pm

### Dena Cannon

Hey Kevin, you know that they are fighting unemployment for Sergio right ? We called to get an update and they said Time Warner had responded but wouldn't elaborate. Why would they fight him and not you when its similar circumstances? I just don't understand....Sergios unemployement is tied up and Sergio is completely down in the dumps. It just seems they have targeted him every step of the way.



8:32pm

### Kevin Kuhn

I'm going to call him and no he did not inform me of that but I'm assuming because I threatened a lawsuit when I went head to head with Becky in 2012. Let Sergio know I'll call him after 9p tonight



10:46pm

### Patrick Hartley

I'm sorry sergio, i hope it works out for you. finger's crossed

Seen by everyone

Patrick Hartley

Business Class Network Support 1

Business Class Support Time Warner Cable

PAC West Division

**866-772-4948**

support@la.twcbc.com

---

This E-mail and any of its attachments may contain Time Warner Cable proprietary information, which is privileged, confidential, or subject to copyright belonging to Time Warner Cable. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout.



Patrick Hartley <patrickghartley@gmail.com>

## Kevin Kuhn Conversation

1 message

**Hartley, Patrick** <patrick.hartley@twcable.com>                    Sun, Mar 24, 2013 at 11:21 AM
To: Patrick G Hartley <patrickghartley@gmail.com>

- March 5, 2012





4:48pm

**Kevin Kuhn**

Hey Hows things going? Just curious how things are working out for you and TWC? I just got turned down for Bridge, the department/position I created and made for the TWC, because I was not meeting the qualifications they needed, and I've come to the conclusion they are bais. I don't know if you know this about me but I too am Family, aka Gay, and I'm beginning to think it's holding me back from promotions etc. I try very hard to keep my home life my home life, and my work life my work life, but I can't think of any other reason. Anyway, would you mind having a talk or discussion? If not it's cool, you don't owe me jack, but I need to figure this out. Either way, thanks for your time.

- September 2, 2012



3:03pm

**Patrick Hartley**

hey. are you available tuesday night around 7pm?

- September 2, 2012



6:45pm

**Kevin Kuhn**

Unfortunately not. This is my last week 330 till midnight, then itl be 9am till 530

- September 3, 2012



9:29pm

**Patrick Hartley**

my email is patrickghartley@gmail.com

Patrick Hartley

Business Class Network Support 1

Business Class Support Time Warner Cable

PAC West Division

866-772-4948

support@la.twcbc.com

---

This E-mail and any of its attachments may contain Time Warner Cable proprietary information, which is privileged, confidential, or subject to copyright belonging to Time Warner Cable. This E-mail is intended solely for the use of the individual or entity to which it is addressed. If you are not the intended recipient of this E-mail, you are hereby notified that any dissemination, distribution, copying, or action taken in relation to the contents of and attachments to this E-mail is strictly prohibited and may be unlawful. If you have received this E-mail in error, please notify the sender immediately and permanently delete the original and any copy of this E-mail and any printout.



Patrick Hartley <patrickghartley@gmail.com>

## Conversation with Tamera lucero
1 message

**patrick hartley** <patrickghartley@gmail.com>                     Fri, Aug 10, 2012 at 4:47 PM
To: patrickghartley@gmail.com

Tamera told me today that Gary pullen made comments about julie van tull and her attendance. Julie is on fmla.
Temera told me that julie and another agent, Jana mason, complained to HR about the unfair attendance
reference made by Gary pullen involving fmla

EXHIBIT

N

## Patricia Durham





May 24

### Patricia Durham

I was fired December 15 2011 when my daughter was sick and fighting for her life. Fmla only covered me to be out 1 day every two weeks, that wasnt enough at the time so I missed some days, always had doctors notes and all necessary documents but they fired me anyway. Thank god my daughter survived and came through, but I have struggled severely since. I hope you get what you are asking for, Lord knows I didn't.



May 24

### Patrick Hartley - from Victim to Advocate

Statute of Limitations for FMLA violations is 2 years. In my case, i have filed a motion to certify my case as a class action. if you would like to provide a statement, please send it to patrickvtwc@gmail.com

I am so sorry that happened to you. The correct thing to do would have been to suggest to you to have your doctor re-certify for additional days, as FMLA can be back dated as well. Issues with sick family members are never easy.

EXHIBIT

P

Blumberg No. 5208

**Sherry Cowling** they may not want him as sup if he is goingto fight for us underdogs and age to your list
14 hours ago · Unlike · 1



**Shawander Daniel** Im ready for the yes
14 hours ago via mobile · Unlike · 1



**Bill Balfour-Grice** Your doing the right thing Patrick!! I'm proud for you!!!
13 hours ago · Unlike   1

**Suzanne Bolden** well, my wrongful termination is still under investigation.....they said they fired me for call avoidance....telling the customer that wanted to make a pymnt, that the system was down and to call back, and because I didn't troubleshoot with a customer that called in and having issues with tv for 2 weeks...get this....he was in an outage, how can I fix the inside if the outside isn't working.......and I heard there was an email sent out, telling the reps to tell the customers that the system is down, don't have access to billing and to callback....go figure....whats that all about...regardless of how it happened.....God just used TWC to move me to a better place in life.....thank you TWC for 6 years and Adelphia for 5 years.......
11 hours ago · Unlike · 1



**Valerie Laster** I already spoke with an atty and he told me I was wrongfully dismissed and have grounds for a law suit...do you guys want to do a suit and have one atty rep everyone?
10 hours ago · Unlike · 1



**Suzanne Bolden** yeah.....even though i wasn't out on fmla, mine was active....
10 hours ago · Unlike · 1



**Valerie Laster** they "laid me off" immediately after my car accident; the first time they fired me while I was on my hospital bed after emergency surgery
10 hours ago · Unlike · 1



**Suzanne Bolden** you know there was never enough people to stand up to twc....they would always complain, but when it was time to speak up, no one would say anything, but i would...and would always have to defend myself in hr...and not having support made it worse....
10 hours ago · Unlike · 1



**Valerie Laster** I could use about $50,000
10 hours ago · Unlike · 1



**Suzanne Bolden** well, whats the cost of the lawyer, cause i don't have any money for one....i was hoping pro bono
10 hours ago · Unlike · 1



**Valerie Laster** Well if we can get enough people to have a class action suit, it very well pay off...I'm in
10 hours ago · Unlike · 1



**Valerie Laster** no way would bro bono get it....we would probably have to speak with an employment lawyer and go from there. They may only charge us if we win
10 hours ago · Unlike · 1



**Valerie Laster** will be back, have to wash the color out of my hair...
10 hours ago · Unlike   1

