**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.: 13-cv-00158-RM-MJW

PATRICK HARTLEY,

      Plaintiff,

v.

TIME WARNER NY CABLE LLC,

      Defendant.

---

DEFENDANT TIME WARNER NY CABLE LLC'S MOTION FOR CONTEMPT

---

## I.      INTRODUCTION AND MOTION

Plaintiff Patrick G. Hartley ("Plaintiff") has defied and continues to defy this Court's Orders requiring him to produce documents responsive to Defendant Time Warner NY Cable LLC's ("TNY") discovery requests, as well as all communications between him and his former attorneys regarding the settlement of this action. On October 11, 2013, the Court issued an order requiring Plaintiff to fully respond to TNY's discovery requests and awarding TNY $2,500 in attorneys' fees and costs associated with prosecuting its motion to compel. On April 15, 2014, the Court granted TNY's second motion to compel and ordered Plaintiff and The Harman Firm, P.C. to turn over all settlement communications between them. As shown below, Plaintiff has (and continues to) willfully violate the Court's orders by refusing to produce documents that are unquestionably encompassed by the Court's aforementioned orders.

First, Plaintiff is willfully violating the Court's October 11 order because he admits he is still in possession of documents responsive to TNY's document requests that fall within the Court's October 11 Order, yet he has intentionally withheld those documents from production.

For example, before Plaintiff improperly terminated his April 29 deposition,[1] he admitted that he possesses social media messages that he has exchanged with third parties regarding his claims in this litigation – the very types of documents the Court ordered Plaintiff to produce in October last year.  In an obvious attempt to deprive TNY of the opportunity to depose him or third parties about the content of those communications, however, Plaintiff stated that he intended to withhold such communications until the very last day of discovery.

Second, Plaintiff is willfully violating the Court's April 15 Order directing him to produce all communications he had with his former counsel regarding settlement discussions. Indeed, Plaintiff does not dispute that his communications with his former counsel regarding the settlement included text messages, yet he has thus far refused to even search for such documents, much less produce them.

Accordingly, Plaintiff has knowingly and willfully violated the Court's October 11 and April 15 Orders and should be held in contempt for doing so.  Given that the previous (still-unpaid) monetary sanction has not deterred Plaintiff's misconduct, it is obvious that such sanctions will not convince Plaintiff to comply with the Court's orders or his discovery obligations.  Indeed, Plaintiff testified that notwithstanding his position that he never agreed to a settlement involving TNY's waiver of the $2,500 fee award, he does not believe he has any obligation to pay TNY that amount.   As set forth more fully below, therefore, the Court should dismiss Plaintiff's lawsuit with prejudice.

---

[1]  Plaintiff also abruptly discontinued his deposition after approximately 1 hour and 10 minutes of questioning, claiming that TNY had reached its seven hours under the Federal Rules of Civil Procedure, and thus hampering TNY's efforts to prepare for the May 20 evidentiary hearing in this matter and to obtain any testimony regarding the new claims Plaintiff alleged in his Second Amended Complaint.

## II.     RELEVANT PROCEDURAL HISTORY

### A.     Plaintiff's Previous Failure to Fully Respond to Discovery.

On July 3, 2013, TNY filed a motion to compel discovery, noting that Plaintiff had failed to fully respond to TNY's discovery.  [D.E. 58.]  Among the many deficiencies in Plaintiff's discovery responses noted in that motion was the fact that Plaintiff had failed to produce all written communications with third parties regarding the merits of his claim.  [*Id.* at 2, 10-12.] On August 13, 2013, the Court held a Telephonic Status Conference in which it required Plaintiff to sit for his deposition on September 3, 2013.  [D.E. 69 at 15-16.]  The Court further stated during that conference that it would allow Plaintiff until August 27, 2013 to respond to TNY's pending motion to compel.  [*Id.* at 9-10.]  In response to TNY's concern that many of the documents being withheld by Plaintiff would be necessary to properly depose him on September 3, the Court stated that it would "understand that, and if [TNY] need[s] to reopen . . . [Plaintiff's] deposition, that's fine."  [*Id.* at 16.]  On August 27, 2013, Plaintiff filed his response to TNY's motion to compel, claiming that he had supplemented and was "in the process of further supplementing" his document production to address the deficiencies identified by TNY.  [D.E. 76 at 2.]

On September 3, 2013, TNY took Plaintiff's deposition.  [Declaration of Nathan Chapman ("Chapman Dec.") ¶ 4.]  During that deposition, Plaintiff admitted that he had e-mails, text messages, and social media communications from various individuals concerning this case that he had never produced.  [Deposition of Patrick Hartley ("Hartley Tr.") 176:12-177:2; 181:2-

183:12; 183:20-22; 252:10-256:15; 264:17; 271:7-9; 275:10-276:3.[2]]  Plaintiff also admitted that

he had failed to fully respond to TNY's discovery request asking him to identify every e-mail

address he had used to communicate with anyone regarding this lawsuit.  [Hartley Tr. 176:12-

177:2; 269:9-20.]

On September 25, 2013, Plaintiff filed a Second Amended Complaint ("SAC"), in which

he added claims for failure to promote and wrongful termination in violation of Colorado public

policy and for failure to promote and wrongful termination in violation of Colorado's Lawful

Off-duty Activities Act.  [D.E. 83.]  Plaintiff's SAC also added claims for retaliation under the

Fair Labor Standards Act ("FLSA") and the Family and Medical Leave Act ("FMLA").  [*Id.*]

Because the amendment added additional claims to Plaintiff's lawsuit, Plaintiff's counsel agreed

that TNY would be entitled to re-depose Plaintiff on those new claims on December 16, 2013.

[Chapman Dec. ¶ 6.]

On October 11, 2013, the Court held a Telephonic Hearing on TNY's motion to compel.

[D.E. 94.]  During that hearing, the Court noted its concern that Plaintiff was continuing to reveal

new e-mail addresses and documents at his September 3rd deposition despite months of

discovery.  [*Id.* at 27-33.]  The Court went on to specifically warn Plaintiff that he has "a duty to

supplement [his] responses to discovery . . . ."  [*Id.* at 33-34.]  The Court then ordered Plaintiff to

supplement his discovery responses and document production by October 28, 2013.  [*Id.* at 34.]

Plaintiff thereafter produced over three thousand (3,000) additional pages of documents and over

5 GB of electronically-stored information.  [Chapman Dec. ¶ 5.]

---

[2] Excerpts from the deposition of Plaintiff Patrick Hartley are attached as Exh. 1 to the Chapman
Dec.

By subsequent order on November 4, 2013, the Court required Plaintiff to pay TNY $2,500 for its reasonable and necessary attorney fees in preparing the motion to compel. [D.E. 101 at 7.] Plaintiff was required to make this payment on or before November 29, 2013. [*Id.*] Plaintiff filed a motion for reconsideration of that order on November 18, 2013. [D.E. 103.] Plaintiff filed a motion to stay enforcement of the Court's November 4 order on November 27, 2013. [D.E. 104, 107.] Plaintiff's motion for reconsideration and motion to stay were never granted, yet Plaintiff has never paid TNY the $2,500 required by the Court's order.[3]

## B. Plaintiff's Refusal to Execute Settlement Agreement and the Court's Order Setting an Evidentiary Hearing on That Issue.

On December 12, 2013, TNY filed its opposition to Plaintiff's motion for reconsideration of the Court's November 4 Order. [D.E. 108.] In that opposition, TNY noted that though Plaintiff's asserted basis for reconsideration was meritless, it nonetheless was not seeking a contempt order against Plaintiff at that time because the parties had reached an agreement in principle to resolve the litigation. [*Id.*] Indeed, the following day, TNY filed a Notice of Settlement stating that the parties had reached a settlement of all issues between them and requesting thirty (30) days for the parties to finalize the settlement papers and file a notice of dismissal. [D.E. 109.] Plaintiff, however, subsequently refused to execute a settlement agreement, claiming that, despite his former counsel's claim to the contrary, Plaintiff never

---

[3] TNY has not yet filed a motion for contempt based on Plaintiff's failure to comply with the Court's November 4 Order because it believes Plaintiff agreed to a settlement which would obviate the need for him to remit the $2,500 payment. Plaintiff, however, maintains that he never provided his former counsel with authority to settle this action. When asked at his April 29 deposition why he has not paid the fee award if he believed no settlement had been reached, Plaintiff stated that he did not have to pay because he filed a motion for reconsideration. [Hartley Tr. at 324-25.]

agreed to settle this litigation.  [D.E. 133.]  The Court set an evidentiary hearing for May 20,

2014, to determine whether Plaintiff had, in fact, given his former counsel authority to settle this

action.  [D.E. 134.]

In order to prepare for that evidentiary hearing, TNY notified Plaintiff that he should

supplement his document production with all communications related to the settlement of this

action and also served The Harman Firm, P.C. with a subpoena demanding the production of

those communications.  [*See generally* D.E. 136.]  Both Plaintiff and his former counsel refused

to produce those documents, arguing that they were protected by the attorney-client privilege.

[*Id.*]  Accordingly, TNY filed a Motion to Compel Production of Documents and Testimony

Related to Settlement Communications on March 18, 2014.  [*Id.*]  The Court granted TNY's

motion, held that Plaintiff had waived the attorney-client privilege with regard to all settlement

communications between him and his former counsel, and ordered Plaintiff and his former

counsel to produce all such communications to TNY by April 25, 2014.  [D.E. 150.]

On April 25, 2014, Plaintiff produced 76 pages of documents related to his settlement

communications with his former counsel.  [Chapman Dec. ¶ 7 & Exh. 2.]  Those documents

consist entirely of e-mail communications.  [*Id.*]  Plaintiff did not produce any text messages

despite the fact that such communications are referenced in the e-mails he produced.  [Exh. 2 to

Chapman Dec. at 17.]  Further, numerous pages in Plaintiff's production contain redactions,

which were never authorized by the Court.  [Exh. 2 to Chapman Dec. at 16, 63; Hartley Tr. at

326-27.]

### C.   During His Deposition on April 29, 2014 Plaintiff Admits That He Has Withheld Responsive Discovery.

On March 7, 2014, TNY deposed Dena Cannon, a plaintiff in a separate pending lawsuit

in this Court, *Eddins, et al. v. Time Warner NY Cable LLC*, No. 1:13-cv-02521-RM-RJW.

[Chapman Dec. ¶ 8.]  During that deposition, TNY learned that Cannon and Plaintiff had

exchanged social media communications regarding Plaintiff's lawsuit against TNY.  [Deposition

of Dena Cannon ("Cannon Tr.") at 19-23, 25-26, 31-32] [4]  Numerous other third parties were

also involved in those communications.  [*Id.*]

 On April 29, 2014, TNY deposed Plaintiff again.  [Chapman Dec. ¶ 4.]  During that

deposition, Plaintiff admitted that he had, in fact, exchanged e-mail and social media

communications with various persons, but that he had not produced those communications in

discovery.  [Hartley Tr. at 302-03.]  Plaintiff offered no justification for why he had ignored

Court's October 11 Order requiring him to produce all communications with third parties about

his case and specifically warning him that he had an obligation to supplement his discovery.

Instead, Plaintiff simply responded that he intended to produce those documents on the very last

day of discovery.  [*Id.*][5]  Plaintiff's anticipated last-day production would prevent TNY from

deposing him or anyone else about the content of those communications, which was no doubt

Plaintiff's motivation for defying the Court's October 11 Order.

 Plaintiff acknowledged during his deposition that the settlement-related e-mails he

produced on April 25 showed that he had exchanged text messages with his former counsel

regarding settlement.  [Hartley Tr. at 328-29.]  Plaintiff further confirmed that he may, in fact,

have exchanged text messages with his former counsel regarding settlement.  [*Id.*]  Plaintiff

admitted, however, that he had made no effort to search for any such settlement-related text

---

[4] Excerpts from the deposition of Dena Cannon are attached as Exhibit 3 to the Chapman Dec.

[5] In all likelihood, Plaintiff would never have disclosed the additional communications if TNY had not learned about their existence in a separate proceeding.

messages.  [*Id.*]  Plaintiff offered no legitimate reason why he had neglected to conduct a search for those text messages despite the Court's April 25 Order requiring him to produce all settlement-related communications.

### D.    Plaintiff's Abrupt Termination of His Deposition on April 29, 2014.

Approximately one hour into his deposition on April 29, Plaintiff suddenly refused to answer any more questions, claiming that TNY had deposed him for a combined total of seven (7) hours at that point and that TNY had no right to further depose him.[6]  [Hartley Tr. at 358-59.] Plaintiff had made no effort to notify TNY or confer regarding this matter before his deposition so that TNY could, if necessary, obtain an order from the Court.  Instead, Plaintiff waited until the one hour mark of his deposition to read a prepared statement of time spent on the record. [*Id.*]  TNY's counsel informed Plaintiff that his previous deposition was taken before he amended his complaint to add new claims and before Plaintiff had produced thousands of additional pages of discovery.  [*Id.*]  TNY's counsel further reminded Plaintiff that the Court had stated TNY could reconvene his deposition.  [*Id.*]  Notwithstanding TNY's attempt to convince Plaintiff to continue with his deposition, Plaintiff refused to do so without an explicit Court order.  [*Id.* at 360.]  Unfortunately, TNY and Plaintiff were unable to reach the Court at that time for an immediate decision, and Plaintiff terminated his deposition unilaterally. [Chap Dec. ¶ 10.]

## III.    ARGUMENT AND CITATION OF AUTHORITY

### A.    Legal Standard.

The Tenth Circuit has established that a party should be held in civil contempt where:  (1)

---

[6] Plaintiff contends that TNY deposed him on September 3, 2013 for five hours and 50 minutes.  [Hartley Tr. at 358-59.]  Thus, he claims that TNY was not entitled to depose him for more than one hour and ten minutes on April 29. [*Id.*]

a valid court order existed; (2) the responding party had knowledge of the order; and (3) the responding party disobeyed the order.[7] *F.T.C. v. Kuykendall*, 371 F.3d 745, 757 (10th Cir. 2004); *Reliance Ins. Co. v. Mast Constr. Co.*, 159 F.3d 1311, 1315 (10th Cir. 1998).  As shown below, Plaintiff has violated two separate orders of this Court and should, therefore, be held in contempt.[8]

**B.    Plaintiff Should Be Held in Contempt of the Court's October 11, 2013 Order.**

There is no dispute that the Court issued an Order on October 11, 2013 requiring Plaintiff to produce all responsive documents to TNY's discovery, including all e-mail and social media communications between Plaintiff and third parties regarding his claims in this litigation.  There is also no dispute that Plaintiff was aware of that order.  Further, Plaintiff admitted that he has violated that order because he admitted during his deposition that he has e-mail and social media communications with Dena Cannon and other individuals regarding this litigation.  Indeed, Plaintiff stated that he intended to produce those documents only on the last day of discovery. (Hartley Tr. at 302-03.)  Clearly, Plaintiff's intent was to ensure that TNY would not have the benefit of such documents when preparing for and taking Plaintiff's deposition.  In any event,

---

[7] 28 U.S.C. § 636(e) sets out the procedure by which a magistrate judge may exercise its contempt authority.  That section states that the magistrate judge shall "forthwith certify the facts to a district judge and may serve or cause to be served, upon any person whose behavior is brought into question under this paragraph, an order requiring such person to appear before a district judge upon a day certain to show cause why that person should not be adjudged in contempt by reason of the facts so certified. The district judge shall thereupon hear the evidence as to the act or conduct complained of and, if it is such as to warrant punishment, punish such person in the same manner and to the same extent as for a contempt committed before a district judge."

[8] Based on the representations of Plaintiff's former counsel, TNY believes it has an enforceable settlement agreement with Plaintiff.  If, however, Plaintiff is not held to the parties' settlement agreement, then Plaintiff has no legitimate basis for failing to pay the $2,500 fee awarded by the Court.  In such case, Plaintiff should also be held in contempt of the Court's November 4 Order.

regardless of Plaintiff's intent, he has willfully violated the Court's October 11 Order.

**C.    Plaintiff Should Be Held in Contempt of the Court's April 15, 2014 Order.**

There is also no dispute that the Court issued an order on April 15, 2014, requiring Plaintiff to produce to TNY, on or before April 25, 2014, all "settlement communications between the Pro Se Plaintiff and his former attorneys The Harman Firm, P.C." [D.E. 150 at 4.] Plaintiff cannot dispute that he had knowledge of that order as he was e-mailed a copy of that order on the same day. (Chapman Dec. ¶ 9 & Exh. 4.) Indeed, in partial response to the order, Plaintiff produced various responsive e-mails to TNY. (Chapman Dec. ¶ 7.) Plaintiff failed, however, to search for or produce *all* settlement-related communications. An e-mail produced by Plaintiff confirms that Plaintiff and his former counsel exchanged text messages regarding the settlement. [Exh. 2 to Chapman Dec. at 17.] Plaintiff further confirmed at his deposition that he had, in fact, exchanged text messages with his former counsel. [Hartley Tr. at 328-29.] Despite this, Plaintiff admitted that he made no effort whatsoever to search for or produce any text messages discussing the settlement. [*Id*.] Plaintiff also improperly redacted e-mails in his April 25 production. As such, Plaintiff has willfully violated the Court's April 15 Order requiring him to produce *all* settlement-related communications between Plaintiff and his former counsel.

**D.    The Court Should Dismiss Plaintiff's Complaint with Prejudice as a Consequence for His Failure to Obey the Court's Orders.**

As shown, Plaintiff has willfully violated two of the Court's discovery orders. Pursuant to Federal Rule of Civil Procedure 37(b)(2)(A), the Court may impose the following sanctions for a failure to comply with a discovery order:

(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;

(ii) prohibiting the disobedient party from supporting or opposing designated claims or

defenses, or from introducing designated matters in evidence;
        (iii) striking pleadings in whole or in part;
        (iv) staying further proceedings until the order is obeyed;
        (v) dismissing the action or proceeding in whole or in part;
        (vi) rendering a default judgment against the disobedient party; or
        (vii) treating as contempt of court the failure to obey any order except an order to submit
to a physical or mental examination.

Thus, Rule 37(b)(2)(A)(vii) authorizes the Court to hold a plaintiff in contempt for failure to abide by its discovery orders, while Rule 37(b)(2)(A)(iii) and (v) further permit a court to strike a plaintiff's complaint and dismiss his lawsuit as a sanction for that party's failure to comply with a discovery order.  *See Ehrenhaus v. Reynolds*, 965 F.2d 916, 921-22 (10th Cir. 1992) (affirming dismissal of complaint where record showed plaintiff willfully and intentionally refused to comply with court's orders regarding discovery); *Martinez v. Nash Finch Co.*, No. 11-cv-02092-MSK-KLM, 2012 WL 7827605, at *2-3 (D. Colo. Nov. 30, 2012) (recommending dismissal of pro se plaintiffs' claims due to failure to comply with two discovery orders); *Darris v. Bertolas*, No. 09-cv-00571-PAB-KMT, 2010 WL 1856167, at *2-4 (D. Colo. Apr. 5, 2010) (dismissing pro se plaintiff's complaint where record showed willful failure to respond to discovery); *Schaal v. Fender*, No. 06-CV-01748-MSK-MJW, 2010 WL 364705, at *6-8 (D. Colo. Feb. 1, 2010) (accepting recommendation that *pro se* plaintiff's complaint be dismissed where plaintiff's failure to respond to discovery prejudiced defendant and interfered with judicial process); *O'Neil v. Burton Group*, No. 2:09-CV-862-DBP, 2013 WL 441347, at *2-3 (D. Utah. Feb. 5, 2013) (dismissing plaintiff's complaint with prejudice for failure to abide by discovery orders).

In considering whether to grant such terminating sanctions, the Tenth Circuit has instructed that a district court should ordinarily consider the following factors: "(1) the degree of

actual prejudice to the [movant]; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions." *Norouzian v. Univ. of Kan. Hosp. Auth.*, 438 F. App'x 677, 679 (10th Cir. 2011) (unpublished) (*quoting Ehrenhaus*, 965 F.2d at 921). "These factors do not constitute a rigid test; rather, they represent criteria for the district court to consider prior to imposing dismissal as a sanction." *Ehrenhaus*, 965 F.2d at 921.

As to the first factor, TNY has been prejudiced by Plaintiff's refusal to engage in good faith in the discovery process. This case is now over a year old and yet, because of Plaintiff's bad faith and dilatory tactics, TNY has been unable to obtain the discovery necessary to defend against Plaintiff's claims. This protracted delay has resulted in the expenditure of resources pursuing collateral issues rather than addressing the merits of Plaintiff's case. *See Gomez v. Dillon Companies, Inc.*, No. 09–cv00676–REB–KLM, 2010 WL 1644610, at * 3 (D. Colo. Apr. 22, 2010) (delay and expense caused by plaintiff's failures that blocked defendant's ability to conduct complete discovery, delayed resolution of case, and forced defendant to incur significant attorney fees and costs in effort to obtain discovery satisfied first factor); *Armstrong v. Swanson*, No. 08–cv–00194–MSK–MEH, 2009 WL 1938793, *4 (D. Colo. July 2, 2009) (finding "significant prejudice" to defendants where plaintiff failed to respond to communications and participate in discovery, which prolonged litigation and deprived defendants "of a prompt opportunity to have the claims against them adjudicated"). Further, Plaintiff's failure to search for and produce settlement-related text communications has prevented TNY from adequately preparing for the May 20 evidentiary hearing.

12

For substantially the same reasons, the Court should find that Plaintiff's actions have interfered with the judicial process. "[I]f a party 'could ignore court orders . . . without suffering the consequences, then the district court cannot administer orderly justice, ...'" *EBI Securities Corp.*, 219 F.R.D. at 647 (internal quotation marks and citation omitted); *see also Armstrong*, 2009 WL 1938793, at *4 (finding prejudice to judicial system where plaintiff's neglect forced Magistrate Judge to adjudicate motion to compel, issue Order to Show Cause, and entertain several motions to extend deadlines due to plaintiff's failure to participate in discovery).

The Court should also find that Plaintiff is culpable for his misconduct. It is undisputed that, despite the Court's October 11 order requiring him to produce all communications with third parties regarding his claims, Plaintiff possesses additional documents responsive to TNY's discovery request that he refuses to produce until the close of discovery. Plaintiff offers no reasonable basis for withholding those documents. Instead, it is evident that Plaintiff's refusal to comply with the Court's order is the product of his own gamesmanship. Specifically, it appears that the reason Plaintiff is withholding those documents is because he does not want to offer TNY the opportunity to depose him or any third parties about the contents of those communications. It is also undisputed that Plaintiff has not searched for or produced any text messages between himself and his former counsel related to the settlement of this action despite the Court's April 15 Order. Regardless of Plaintiff's intent in ignoring the Court's Orders, it is clear that his failure to comply was knowing and willful. *See M.E.N. Co. v. Control Fluidics, Inc.*, 834 F.2d 869, 872–73 (10th Cir.1987) (defining willful failure as "any intentional failure as distinguished from involuntary noncompliance. No wrongful intent need be shown.") (internal quotation marks and citation omitted). Thus, the third factor also favors dismissal. See *EBI*

*Securities Corp. Inc. v. Hamouth*, 219 F.R.D. 642, 647-48 (D. Colo. 2004) (dismissal appropriate where parties were aware of obligation to respond to discovery requests pursuant to court order, but failed to do so "[c]onsistent with their dilatory and uncooperative conduct throughout this action . . .").

The Court has warned Plaintiff in the past that he cannot withhold discoverable documents and that he has a responsibility to timely supplement his document production.  [D.E. 94 at 33-34.]  Moreover, "[t]he Federal Rules of Civil Procedure, as well as local rules of court, give ample notice to litigants of how to properly conduct themselves."  *Hal Commodity Cycles Management Co. v. Kirsh*, 825 F.2d 1136, 1139 (7th Cir.1987).  Further, TNY warned Plaintiff that it would seek dismissal of his claims for failure to comply with the Court's orders. [Chapman Dec. ¶ 11 & Exh. 5.]  These warnings and guidance are more than sufficient to satisfy the fourth *Ehrenhaus* factor.  *See Smith v. City and County of Denver*, No. 07-cv-00154-WDM-BNB, 2009 WL 485163, *3 (D. Colo. Feb. 26, 2009) (finding defendants' warning to plaintiff during deposition and in motion to dismiss was adequate); *Gross v. General Motors LLC*, No. 08–3236, 441 F. App'x 562, 565 (10th Cir. Oct. 6, 2011) (constructive notice sufficient to satisfy notice element of the *Ehrenhaus* factors); *Ecclesiastes 9:10–11–12, Inc. v. LMC Holding Co.*, 497 F.3d 1135, 1150 (10th Cir. 2007) (highlighting possibility of dismissal was sufficient to provide constructive notice).  Accordingly, this factor also favors dismissal.

It is also clear that lesser sanctions will not ensure Plaintiff's compliance with his discovery obligations or the orders of this Court.  Indeed, the Court previously sanctioned Plaintiff $2,500 (which he has never paid) for failing to comply with his discovery obligations, yet Plaintiff remains undeterred.  There is no reason to suspect that Plaintiff will reform his

14

conduct if ordered to pay another fine.[9]  Thus, the only efficacious remedy for Plaintiff's

ongoing misconduct is dismissal of his claims.  *Smith v. McKune*, 345 F. App'x 317, 320 (10th

Cir. 2009) (dismissing *pro se* plaintiff's complaint with prejudice due to multiple failures to

abide by court's discovery orders); *Armstrong*, 2009 WL 1938793 at *5 (finding lesser sanctions

are insufficient where plaintiff repeatedly failed to comply with discovery obligations);

*Hobratschk v. Perretta*, No. 99-1293, 2000 WL 313530, *2 (10th Cir. Mar. 28, 2000) ("[T]he

imposition of lesser sanctions is not mandatory.") (internal quotations marks and citation

omitted).

Accordingly, the Court should dismiss Plaintiff's Complaint with prejudice as a sanction

for violating the Court's October 11 and April 15 Orders.

## IV.    CONCLUSION

For the above-stated reasons, the Court should hold Plaintiff in civil contempt of its

October 11 and April 15 Orders and dismiss Plaintiff's Complaint with prejudice.

Respectfully submitted, this 6th day of May, 2014.

   s/ *Nathan D. Chapman*
Nathan D. Chapman                        Josh A. Marks
Paul G. Sherman                          BERG HILL GREENLEAF & RUSCITTI LLP
WARGO & FRENCH LLP                       1712 Pearl Street
999 Peachtree Street, NE                 Boulder, CO 80302
26th Floor                               Tel: (303) 402-1600
Atlanta, Georgia 30309                   Fax: (303) 402-1601
Tel: (404) 853-1500                      Email: jam@bhgrlaw.com
Fax: (404) 853-1501
Email: nchapman@wargofrench.com
        psherman@wargofrench.com

---

[9] Indeed, Plaintiff maintains that he lacks the means to pay the $2,500 fee the Court has already awarded.
[*See* D.E. 103.]  Monetary sanctions are essentially meaningless if the plaintiff lacks the resources to pay
them.  *See Smith*, 345 F. App'x at 320 (holding that dismissal was appropriate where plaintiff was
proceeding *in forma pauperis* and could not pay monetary sanction).

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1, I hereby certify that during Plaintiff's deposition on April 29, 2014, I attempted to confer with him regarding his bad faith refusal to continue his deposition and his failure to comply with the Court's orders requiring the production of documents relevant to his claims and all documents related to "settlement communications" between Plaintiff and his former counsel.  Plaintiff refused to answer any further questions during his deposition, stated he would not produce any responsive documents until the close of discovery, and said he had not searched for and would not produce any text messages between him and his former counsel regarding the settlement of this action.  I further certify that on May 1, 2014, I sent Plaintiff written correspondence via e-mail regarding these same disputed matters in light of Plaintiff's refusal to speak with Defendant's counsel by telephone.


　　　　　　　　　　　　　　　　　　　　 s/ *Nathan D. Chapman*　　　
　　　　　　　　　　　　　　　　　　　　Nathan D. Chapman

16

## CERTIFICATE OF SERVICE

I hereby certify that on May 6, 2014, a true and correct copy of Defendant's **MOTION**

**FOR CONTEMPT** was e-served upon the following via ECF/PACER and United States mail:

Patrick G. Hartley
3930 Hickory Hill Drive
Colorado Springs, CO 80906

I further certify that copies of all unreported decisions cited in the foregoing, if any, were

provided to Plaintiff by United States mail.


  *s/ Nathan D. Chapman*
Nathan D. Chapman